IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF HIS MOTION TO DISMISS COUNTS ONE & TWO
<u>OF THE INDICTMENT AS FACIALLY OVERBROAD</u>**

# TABLE OF CONTENTS

I. Background ................................................................................................................ 1

II. Argument ................................................................................................................ 1-

    A. Counts One and Two (18 U.S.C. §§ 371 and 951) is Unconstitutionally Overbroad Because it Prohibits a Substantial Amount of Protected Speech ............................... 1-

        i. 18 U.S.C. § 951 Generally ....................................................................... 1-4

        ii. First Amendment Jurisprudence Generally ............................................. 4-5

        iii. Standing ................................................................................................. 6-7

        iv. § 951 is Facially Overbroad .................................................................. 7-10

        v. Partial Invalidation May be Warranted ................................................ 11-13

III. Conclusion ............................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002)..................................................................4

*Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987)..........................................6

*Bond v. United States*, 564 U.S. 211 (2011).................................................................................6

*Boos v. Barry*, 485 U.S. 312 (1988)............................................................................................ 11

*Brandt v. Village of Winnetka*, 2007 WL 844676 (N.D. Ill. 2007) ..............................................6

*Broadrick v. Oklahoma*, 413 U.S. 601 (1973)......................................................................passim

*Brockett v. Spokane Arcades*, 472 U.S. 491 (1985).................................................................... 13

*Carey v. Brown*, 447 U.S. 455 (1980)...........................................................................................9

*Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) .................................................9

*Coates v. Cincinatti*, 402 U.S. 611 (1971)................................................................................... 12

*Commodity Trend Service, Inc. v. Commodity Futures Trading Comm'n*,
149 F.3d 679 (7th Cir. 1998) ....................................................................................................... 13

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) .............................................................................. 11

*Ex parte Siebold*, 100 U.S. 371 (1879)........................................................................................ 13

*Hill v. Colorado*, 530 U.S. 703 (2000).........................................................................................5

*Hooper v. California*, 155 U.S. 648 (1895)................................................................................ 11

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ...................................................................... 11

*Massachusetts v. Oakes*, 491 U.S. 576 (1989) ......................................................................... 6, 7

*McDonnell v. United States*, 136 S. Ct. 2355 (2016)...................................................................8

*Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789 (1984)................5

*Mills v. Alabama*, 384 U.S. 214 (1966)........................................................................................9

*Montgomery v. Louisiana*, 136 S. Ct. 718 (2016) .................................................................. 13

*Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012) .................................................................. 12

*Movies, Inc. v. Conlisk*, 345 F. Supp. 780 (N.D. Ill. 1971) .................................................... 11

*Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047 (N.D. Ill. 1995) ........................... 6

*New York v. Ferber*, 458 U.S. 747 (1982) ................................................................................ 7

*Pepper v. United States*, 562 U.S. 476 (2011) ........................................................................ 11

*SEIU, Local 3 v. Mt. Lebanon*, 446 F.3d 419 (3rd Cir. 2006) .................................................. 7

*Showtime Entertainment, LLC v. Mendon*, 769 F.3d 61 (1st Cir. 2014) .................................. 5

*Skilling v. United States*, 561 U.S. 358 (2010) ................................................................. 11, 12

*Thayer v. City of Worchester*, 755 F.3d 60 (1st Cir. 2014) ...................................................... 5

*Thornhill v. Alabama*, 310 U.S. 88 (1940) ............................................................................ 7-8

*United States v. Alvarez*, 567 U.S. 709 (2012) ...................................................................... 11

*United States v. Bozarov*, 974 F.2d 1037 (9th Cir. 1992) .................................................... 6, 7

*United States v. Booker*, 543 U.S. 220 (2005) ....................................................................... 12

*United States v. Butina*, 18 CR 218 (D.D.C. 2019) ............................................................ 9-10

*United States v. Campa*, 529 F.3d 980 (11th Cir. 2008) .......................................................... 3

*United States v. Duran*, 596 F.3d 1291 (11th Cir. 2010) ................................................. passim

*United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) ................................................... 3, 4, 9

*United States v. Latchin*, 554 F.3d 709 (7th Cir. 2009) ........................................................... 3

*United States v. McIntosh*, 833 F.3d 1163 (9th Cir. 2016) ...................................................... 6

*United States v. Peace Information Center*, 97 F. Supp. 255 (D.D.C. 1951) ........................ 13

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................................................ 8

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980)...........9

*United States v. Turner*, 13 CR 572 (N.D. Ill. 2014)........................ 2, 3

*United States v. Walden*, 411 F.2d 1109 (4th Cir. 1969)......................9

*United States v. Williams*, 553 U.S. 285 (2008) .......................... 1, 4, 5

*United States v. Ying Lin*, 2018 WL 3416524 (E.D.N.Y. 2018) ........... 3, 4

*Viereck v. United States*, 318 U.S. 236 (1941 ................................ 13

*Virginia v. Hicks*, 539 U.S. 113 (2003) ..................................... 4, 5, 12

**Statutes**

18 U.S.C. § 371 ...........................................................................1

18 U.S.C. § 951 ....................................................................passim

18 U.S.C. § 1001 .........................................................................1

18 U.S.C. § 1343 .........................................................................1

22 U.S.C. § 611 ......................................................................... 12

**Rules**

Fed. R. Crim. P. 12 .....................................................................1

**Other Authority**

28 C.F.R. § 73.1(a).......................................................................2

U.S. Const. amend. I ...................................................................4

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS COUNTS ONE & TWO OF THE INDICTMENT AS FACIALLY OVERBROAD

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to Rules 12 of the Federal Rules of Criminal Procedure, the Freedom of Speech, Due Process, Double Jeopardy, and Effective Assistance of Counsel clauses of the First, Fifth, and Sixth Amendments to the Constitution of the United States, as well as other authority cited herein, respectfully submits this Memorandum of Law in support of his motion to dismiss counts one and two of the indictment as facially overbroad.

## I. Background

On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32. Through this memorandum and accompanying motion, Mr. Ji, through counsel, respectfully requests that the Court dismiss count court two of the indictment, which charges a violation of 18 U.S.C. § 951, as facially overbroad.

## II. Discussion

### A. 18 U.S.C. § 951 is Unconstitutionally Overbroad Because it Prohibits a Substantial Amount of Protected Speech.

### i. 18 U.S.C. § 951 Generally

As will be discussed herein, "[t]he first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008). Thus, an

1

overview of § 951 is in order.

To begin, 18 U.S.C. § 951 requires proof that the defendant (1) acted; (2) as an agent of a foreign government; (3) that he did so knowingly; and (4) that he so acted in the Northern District of Illinois during the time period alleged in the indictment. *United States v. Turner*, 13 CR 572 (N.D. Ill. 2014) (Bucklo, J.) (Dkt. # 211); 18 U.S.C. § 951(a).

An agent is an individual who agrees to operate within the United States "subject to the direction and control of a foreign government or official." 18 U.S.C. § 951; 28 C.F.R. § 73.1(a). § 951(d)(1)-(4) exempts from the notification requirement duly accredited diplomatic or consular officers so recognized by the Department of State, certain officially or publicly acknowledged foreign representatives, and any person engaged in a legal, commercial transaction. This exemption is further narrowed by § 951(e).

This statute criminalizes "*any* affirmative conduct undertaken as an agent of a foreign government." *United States v. Duran*, 596 F.3d 1291 (11th Cir. 2010) (emphasis added). The relevant legislative history concerning § 951 was recently described by the Eleventh Circuit in *Duran*, *id.* at 1291 n. 4:

> The earliest form of § 951 was enacted on June 15, 1917, shortly after the United States entered World War I. It was part of "[a]n Act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes." Act of June 15, 1917, ch. 30, 40 Stat. 217 (codified as amended at 18 U.S.C. § 951 (1948)). In fact, the predecessor to § 951 is found in Title VIII, § 3 entitled: "Disturbance of foreign relations." *Id.* at 226. Legislative history suggests that the 1917 Act was a war-time act to protect the United States from subversive elements that could threaten America's war effort. This is because, in its Congressional Reports, Congress labeled the act, "To Punish Espionage and Enforce the Criminal Laws of the United States," H.R. Rep. No. 65–30, at 1 (1917), and "Espionage Bill," H.R. Rep. No. 65–65, at 1 (1917) (Conf. Rep.); H.R. Rep. No. 65–69, at 1 (1917) (Conf. Rep.).

Further, as touched upon above, "[t]he limited legislative history [of § 951] persuasively suggests that Congress chose to separate § 951 [from FARA] and treat it as a catch-all statute that would cover all conduct taken on behalf of a foreign government." *Id.* at 1295. For that reason § 951 does not require "espionage or traditional notions of spying and subversive activity." *Id.* at 1291.

Unsurprisingly then, § 951 has been held to set forth a general intent crime, *United States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008), and does not require proof that the defendant knew of the notice requirement. *See United States v. Dumeisi*, 424 F.3d 566, 591 (7th Cir. 2005) ("[k]nowledge of the requirement to register is not an element of § 951"). Rather, the *mens rea* element simply requires the defendant knew "he had not notified the Attorney General before acting in the United States as a foreign agent." *Turner, supra*.

The broad sweep of § 951 creates an arguably substantial, even inconceivable number of possibilities under which those engaged in ostensibly legal conduct on behalf of a foreign government could be convicted. *Id*. For example, accepting phone calls or cash from a foreign government has been held sufficient "for the jury to conclude that [the defendant] took acts of *some kind* on behalf" of a foreign government. *United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) (emphasis added) (upholding a conviction where the defendant accepted money and placed 39 telephone calls to a foreign intelligence agent). Courts have also examined whether there was continued communication, training, or instructions between the defendant and a foreign government to establish the legal sufficiency of a § 951 conviction. *See Dumeisi*, 424 F.3d at 566; *see also United States v. Ying Lin*, 2018 WL 3416524 (E.D.N.Y. 2018). And although not even required, evidence of an individual sending a foreign government information is generally conclusive evidence of a § 951 violation. *Dumeisi*, 424 F.3d at 566 (American citizen convicted for sending phone records

3

and summaries of public speeches of Iraqi opposition group to Iraqi government). Moreover, such information need not be classified or even related to the United States government (*id.*) because § 951 criminalizes acting as an agent of a foreign government and thus the contents of any transmission are generally irrelevant—it is the act coupled with a lack of prior notification that is illegal. *See e.g., Ying Lin, supra* at * 4-5 (upholding an indictment where an airline employee smuggled luggage to China despite no evidence of the contents of the luggage).

### ii. First Amendment Jurisprudence Generally

The First Amendment to the United States Constitution commands that "Congress shall make no law . . . abridging the freedom of speech." Perhaps the most significant and troublesome manner through which the government can violate this fundamental freedom is through the imposition of criminal penalties. *See Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("imposing criminal penalties on protected speech is a stark example" of the government violating the Freedom of Speech Clause). It is no surprise then that "[t]he Constitution gives *significant* protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Id.* (emphasis added). Indeed, given the critical importance of the right at stake, "[t]he possible harm to society in permitting some unprotected speech to go unpunished is outweighed by the possibility that protected speech of others may be muted . . . ." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973).

To safeguard this fundamental right, the Supreme Court has long recognized that under the "First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292; *Virginia v. Hicks*, 539 U.S. 113, 118-19 (2003) (a law is unconstitutionally overbroad if it "punishes a substantial amount of protected speech

4

in relation to [its] plainly legitimate sweep"). "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. The second step is to determine whether the law, as construed, "criminalizes a substantial amount of protected expressive activity." *Id.* at 297. Indeed, it is not idly that the *Williams* court referred to "expressive activity"—overbreadth challenges apply to laws that impermissibly sweep in a substantial amount of either speech itself or conduct. *See Broadrick*, 413 U.S. at 612.

To elaborate, if a law "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," *id.* at 615, then it is invalid "until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." *Id.* at 613; *see also Hicks*, 539 U.S. at 118-19 (same). Any overbreadth must be both "real" and "substantial" in order to be constitutionally deficient. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Although "substantial" overbreadth is not readily reduced to a mathematical formula, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800-01 (1984).

The First Circuit has held that the party challenging a statute carries the burden of demonstrating "substantial" overbreadth as judged by a prima facie standard. *See Thayer v. City of Worchester*, 755 F.3d 60, 72 (1st Cir. 2014) *reversed on other grounds, Thayer v. City of Worchester*, 135 S.Ct. 2887 (2015); *Showtime Entertainment, LLC v. Mendon*, 769 F.3d 61, 71 (1st Cir. 2014).

5

### iii. Standing

As the "First Amendment needs breathing space," *Broadrick*, 413 U.S. at 611-12, the First Amendment doctrine of substantial overbreadth is an exception to the general rule that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may be unconstitutionally applied to others. *Massachusetts v. Oakes*, 491 U.S. 576, 581 (1989). Thus, any party accused of violating an overbroad statute has standing to bring such a challenge. *Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 574 (1987) ("an individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face" when raising a First Amendment overbreadth challenge); *Bond v. United States*, 564 U.S. 211, 226 (2011) (Ginsburg, J., concurring) ("[this defendant], like any other defendant, has a personal right not to be convicted under a constitutionally invalid law"); *United States v. McIntosh*, 833 F.3d 1163, 1173 (9th Cir. 2016) (citing *Bond* for the same principle); *United States v. Bozarov*, 974 F.2d 1037, 1040 (9th Cir. 1992) ("[a] defendant in a criminal proceeding in entitled to insist that his conduct be judged in accordance with a rule that is constitutionally valid"); *Brandt v. Village of Winnetka*, 2007 WL 844676, * 12 (N.D. Ill. 2007) (Pallmeyer, J.) ("[b]roadly written laws have the potential to chill the expressive activity of parties not before the court; thus, an exception to general standing rules arises in the context of the First Amendment subjecting some laws to facial challenges even if their application in the case under consideration may not be constitutionally objectionable") (internal citations omitted); *Nat'l Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1091 (N.D. Ill. 1995) (Coar, J.) ("overbreadth analysis, and its accompanying relaxation of the standing requirement, is unique to First Amendment issues").

The foregoing compels the conclusion that in bringing an overbreadth challenge, Mr. Ji is not limited to arguing that his own alleged conduct was protected. *See, e.g., SEIU, Local 3 v. Mt. Lebanon*, 446 F.3d 419, 423 (3rd Cir. 2006). Rather, he may allege that other conduct, not within the facts of his case, would render the statute facially overbroad and unconstitutional. *Id.; see also Oakes*, 491 U.S. at 584 ("[a]n overbroad statute is not void ab initio, but rather voidable, subject to invalidation notwithstanding the defendant's unprotected conduct out of solicitude to the First Amendment rights of parties not before the court"); *Bozarov*, 974 F.2d at 1040 ("[t]he government also contends that [defendant] is not entitled to bring a facial challenge to the [statute] because doing so requires him to raise the claims of third parties . . . . [w]e reject this argument"). This is because the traditional rule set forth in *New York v. Ferber*, 458 U.S. 747, 767 (1982) that a person "to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court" does not apply to First Amendment overbreadth challenges. This principle is rational, given that the overbreadth doctrine affords expanded "jus tertii" standing to challenge a statute not only because a litigant's "own rights of free expression are violated, but because . . . the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick*, 413 U.S. at 612.

### iv. § 951 is Facially Overbroad.

§ 951 is unconstitutionally overbroad as it prohibits and chills a substantial amount of protected activity. As discussed, § 951 is a "catch-all statute," with a "broad sweep," criminalizing *any* act of a foreign agent without prior notification. It contains no organic safeguard provisions— certainly not with respect to protecting speech *i.e.* there are no exceptions for "activities that in

7

ordinary circumstances constitute an exercise of freedom of speech." *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940). Suffice to say, § 951 undoubtedly qualifies as a statute that "creates a criminal prohibition of alarming breadth." *United States v. Stevens*, 559 U.S. 460, 461 (2010).

§ 951 effectively criminalizes a limitless category of actions. Whether the *actus reus* is political or apolitical, subversive or benign, well-intentioned or seditious, personal or public, expressive or not, and so on, as long as it is an "act," it is subject to prosecution under § 951. Nor does the statute draw a distinction between lawful and unlawful acts; again, it applies to all acts so long as they were undertaken at the direction or control of a foreign official or government.

Moreover, the statute does not delineate between acts undertaken at the direction of a foreign official that have an official purpose, or are personal in nature. *See McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016) (acknowledging how the lack of adequate notice subjecting individuals to punishment "for the most prosaic interactions" weighs on a vagueness challenge). For example, a foreign official could request of a friend traveling to the United States to procure an American-made Fender Telecaster for use in the official's personal band, or imagine if, in his spare time, the friend and the official are involved in international human rights organizations, and the official asks his traveling friend to engage with a local organization while visiting. The friend is guilty of violating § 951, assuming he failed to register with the Attorney General. Nor, even for bona fide foreign agents, does the statute impose a required nexus between the "action" performed in the United States and one's status as a foreign agent.

The statute is also silent as to degree or quantum of direction or control a foreign official must exercise—mere suggestion or innuendo arguably suffices—and who even qualifies as an "official" is open to debate. All the while, the statute disregards the long-settled, foundational principle of

8

criminal jurisprudence of punishing only those acting with a guilty mind, imposing a mental state that could be gratuitously described as "ostensible," protecting perhaps only those whose prior notice to the Attorney General got lost in the mail. And for this offense, defendants face up to ten years' imprisonment in a Bureau of Prisons facility—the same as felons caught in possession of a firearm.

To counsel's knowledge, the only prior facial overbreadth challenge to § 951 was brought by the defendant in *United States v. Butina*, 18 CR 218, Dkt. # 52 (D.D.C. 2019).[1] Prior to ruling, that motion was withdrawn, and the defendant subsequently pled guilty to the charges against her. *See id.* at Dkt. # 67. In that motion, the defendant gave a number of examples of speech and expressive conduct that falls within the ambit of § 951, including: an unregistered foreign journalist working in the United States at the behest of an officer from their state-controlled news agency,[2] an unregistered, American college student dating the son or daughter of an ambassador to the United States attending a peaceful protest rally at "the direction" of the ambassador,[3] the same student

---

[1] In *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980), the defendants raised two constitutional challenges to their § 951 conviction. First, they argued that the reporting requirement violated their privilege against self-incrimination as Vietnamese agents because compliance would have forced them to confess participation in illegal espionage activities. *Id.* at 920. The Court rejected this argument, noting that registration requirements only implicate the Fifth Amendment if they are directed at a class of persons suspected of illegal activities. *Id.* § 951, however, contains a neutral registration requirement, and thus does not violate the Fifth Amendment. *Id.* (citing *United States v. Walden*, 411 F.2d 1109 (4th Cir. 1969)). The defendants second contention was that the word "agent" was impermissibly vague and overbroad. *Id.* at 920. The Fourth Circuit rejected this argument in one sentence, stating the word agent in this context "is a readily understandable term which provides adequate notice of the conduct proscribed by statute." *Id.*

[2] In this example, § 951 would further implicate the fundamental right to freedom of the press. *See Mills v. Alabama*, 384 U.S. 214, 219 (1966); *see also Dumeisi*, 424 F.3d at 579 (affirming the district court's decision only as a result of it repeatedly instructing the jury that under § 951, the defendant "should not, and legally could not, be convicted simply for publishing unpopular or even despicable opinions" in a newspaper article as the predicate act").

[3] *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) ("premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints"); *Carey v. Brown*, 447 U.S. 455, 467 (1980) ("[p]ublic-issue picketing . . . an exercise of . . . basic constitutional rights in their most pristine and classic form . . . has always rested on the highest rung of the hierarchy"

simply making a dinner reservation, helping with an English translation, or predicting which candidate might win an upcoming election, if directed by the ambassador, an unregistered foreign visitor attending a civic or human rights event and writing to a foreign official about how to improve similar issues in their own country, if directed to do so by that official, the grandson of a foreign official in the United States who sought out friends at the direction of his grandparent, an unregistered Vatican City priest traveling to the United States and engaging in political activities related to capital punishment and communicating with the Holy See about his progress, where said actions were undertaken at the direction of a foreign official, and an unregistered foreign student learning about foreign policy in the United States and writing a report to a foreign official/guest lecturer on said topic. *See id.* at pp. 7-9.

Counsel would add to the list an unregistered foreign tourist traveling to the United States who procured a unique, American-made gift for an old friend who happened to be a foreign official, such as discussed above, an unregistered foreign flight attendant sending pictures back to his or her spouse during a layover where the spouse was a foreign official, a visiting Mexican-citizen participating in a state-organized protest of United States immigration policy, an unregistered foreign religious figure sent by a foreign official to study the impact American life and culture has had on the practice of his or her faith in this country, or even a bona fide foreign agent purely vacationing in the United States after an express directive from his or her superiors to take some time off work, and so on.

### v. Partial Invalidation May be Warranted.

In lieu of wholesale invalidation, the Court has the option of authoritatively construing the statute to remove any constitutional infirmity. As the Supreme Court has recently reaffirmed, "[i]t has long been our practice . . . before striking a federal statute . . . to consider whether the prescription is amenable to a limiting construction." *Skilling v. United States*, 561 U.S. 358, 405-06 (2010); *see also Movies, Inc. v. Conlisk*, 345 F. Supp. 780, 785 (N.D. Ill. 1971) ("[t]here is no novelty in relying on authoritative construction to save deficient statutory provisions"). In fact, federal judges have a duty to consider the propriety of such a construction. *See, e.g., Boos v. Barry*, 485 U.S. 312, 331 (1988) ("if [the] general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction"); *Hooper v. California*, 155 U.S. 648, 657 (1895) ("[t]he elementary rule is that every reasonable construction must be resorted to in order to save a statute from unconstitutionality"). This principle is logical, given that if a court has the power to enjoin all applications of a statute, it also has the power to enjoin only the unconstitutional applications of the statute. *See Dombrowski v. Pfister*, 380 U.S. 479, 491 (1965).

And while not an everyday occurrence, imposing an authoritative construction on an otherwise unconstitutional statute is a power that federal courts have exercised with some regularity. *See, e.g., Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (invalidating the Armed Career Criminal Act's residual clause after previous failed constructions); *United States v. Alvarez*, 567 U.S. 709, 738 (2012) (Breyer J., Kagan J., concurring) (proposing limiting construction for Stolen Valor Act, whereas majority invalidated the Act as a whole); *Pepper v. United States*, 562 U.S. 476, 500 (2011) (invalidating provisions of the Sentencing Reform Act limiting information to be considered

11

at sentencing after remand from appeal); *Skilling*, 561 U.S. at 408-09 (limiting 18 U.S.C. § 1346 to proscribe only bribes and kickbacks); *United States v. Booker*, 543 U.S. 220 (2005) (famously holding that the United States Sentencing Guidelines are henceforth advisory); *Moore v. Madigan*, 702 F.3d 933, 942 (7th Cir. 2012) (striking down the Illinois Unlawful Use of Weapons and Aggravated Unlawful Use of Weapons statute, while staying the mandate to allow the Illinois Legislature to rewrite the state gun laws).

There are a number of appropriate limiting constructions that the Court could entertain for § 951. First, as discussed in *Duran*, 596 F.3d at 1294 n. 4, the legislative purpose of § 951—an Act passed shortly after the United States entered World War I, was to target and punish individuals engaged in particularly deep-rooted forms of espionage and subversion. Identifying foreign operatives engaging in activities harmful to the interests of the United States is an undeniably appropriate governmental interest—counsel and Mr. Ji do not dispute the propriety of proscribing such conduct with an appropriately tailored statute, as § 951 could offer were it so limited. *See, e.g., Hicks*, 539 U.S. at 119 ("there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law") (citing *Broadrick*, 413 U.S. at 615). The Court could likewise consider restricting the statute's reach to certain categories of acts, as opposed to any and all acts, such as otherwise unlawful acts, political acts, acts inherently detrimental to American interests, acts undertaken to give other countries an economic, military, political,[4] scientific, etc. advantage over the United States, and so on. It could equally

---

[4] It is worth noting that 22 U.S.C. § 611 *et seq.* ("FARA"), was drafted to avoid some of the same overbreadth concerns that § 951 contains. *See* 22 U.S.C. § 611(o) ("[t]he term 'political activities' means any activity that the person engaging in believes will, or that the person intends to, in any way influence any agency or official of the Government of the United States or any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States or with reference to the political or public interests, policies, or relations of a government of a foreign country or a foreign

consider imposing a First Amendment catch-all exemption, and arguably most appropriately, address perhaps the most significant problem with § 951—the lack of any meaningful *scienter* requirement.

Regardless, the fact remains that § 951 is a criminal statute that imposes severe penalties on those who violate its far-reaching and ill-defined field of proscriptions; and in the process, sweeps in and chills a substantial amounted of protected speech and expressive conduct. If Congress wished to target traditional espionage, economic espionage, theft of trade secrets, and the like, it can do so with specificity—but it may not do so through a statute with a substantially broad sweep (*Duran*, 596 F.3d at 1291) that lacks "reasonable specificity." *See Coates v. Cincinatti*, 402 U.S. 611, 614 (1971). Accordingly, whether the Court chooses to invalidate it wholesale or impose a narrowing construction, the result here is the same—dismissal of counts one and two are constitutionally mandated. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 724 (2016) (citing *Ex parte Siebold*, 100 U.S. 371, 376-77 (1879) ("[a] conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment")).

---

political party"); *Viereck v. United States*, 318 U.S. 236, 241 (1941); *cf. United States v. Peace Information Center*, 97 F. Supp. 255, 262 (D.D.C. 1951) ("[t]he [FARA] statute under consideration neither limits nor interferes with freedom of speech. It does not regulate expression of ideas. Nor does it preclude the making of any utterances. It merely requires persons carrying on certain activities to identify themselves by filing a registration statement"). Thus, the Court would need to remain cognizant of the fact the Congress apparently intended § 951 to have a broader reach, in which case, partial invalidation would prove impermissible. *See, e.g., Commodity Trend Service, Inc. v. Commodity Futures Trading Com'n*, 149 F.3d 679, 690 n. 4 (7th Cir. 1998) ("[p]artial invalidation may not be possible, however, if the legislature would not have passed the law without the unconstitutional element") (citing *Brockett v. Spokane Arcades*, 472 U.S. 491, 504 (1985)).

13

## III. Conclusion

For the reasons discussed herein, Mr. Ji, through counsel, respectfully requests that the Court dismiss counts one and two of the indictment.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on December 6, 2019, I electronically filed the foregoing **Memorandum of Law in Support of Defendant's Motion to Dismiss Counts One and Two of the Indictment** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

    s/ Damon M. Cheronis
    Damon M. Cheronis
    Law Office of Damon M. Cheronis
    140 S. Dearborn Street Suite 411
    Chicago, Illinois 60603
    (312) 663-4644
    damon@cheronislaw.com