IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| Plaintiff, | ) | 18 CR 611 | |
| | ) | Judge Ronald A. Guzman | |
| v. | ) | | |
| | ) | | |
| JI CHAOQUN | ) | | |
| | ) | | |
| Defendant. | ) | | |

### DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

Defendant, **Ji Chaoqun,** by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to Rule 7 of the Federal Rules of Criminal Procedure, the Due Process and Effective Assistance of Counsel clauses of the Fifth and Sixth Amendments to the Constitution of the United States, as well as other authority cited herein, respectfully requests that, should the Court deny Mr. Ji's contemporaneously filed motion to dismiss counts one through five of the Indictment, to alternatively require the government to provide a bill of particulars furnishing the information requested herein.

In support of this motion, Mr. Ji, through counsel, respectfully submits the following:

**I.    Background**

1.    On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32.

2.     More specifically, count one of the indictment, which alleged a violation of 18 U.S.C. § 371, began by stating that Ji Chaoqun was a citizen of the People's Republic of China who arrived in the United States on August 28, 2013 on a visa. *Id*. at p. 1. After briefly describing the nature of the People's Republic of China's Ministry of State Security ("MSS"), Intelligence Officer A, and the United States' Army's Military Accessions to Vital National Interest ("MAVNI") program, the indictment stated that, absent a lawful exception, individuals who agreed to operate within the United States subject to the direction and control of a foreign government were required to provide prior notification to the Attorney General. *Id*. at p. 1. The indictment next, after describing Companies A, B, and C (companies which offered services such as background reports on individuals), stated that on or about September 25, 2018, Ji Chaoqun conspired with Intelligence Officer A, and others known and unknown to the grand jury to commit an offense against the United States, namely, knowingly acting in the United States as an agent of the People's Republic of China, without prior notification to the Attorney General as required by law, in violation of 18 U.S.C. § 951(a). *Id*. at p. 1.

3.     Count one continued, describing the alleged conspiracy to include that in 2013 and 2014, Mr. Ji traveled from Chicago to Beijing to meet with Intelligence Officer A (*id*. at p. 3); during the trips where Mr. Ji met with Intelligence Officer A, the purpose of those meetings was to discuss and plan Mr. Ji's role as an agent of the People's Republic of China (*id*. at p. 3; Mr. Ji communicated with Intelligence Officer A by email and text message (*id*. at p. 3); Intelligence Officer A instructed Mr. Ji to obtain from Companies A, B, and C background reports of multiple individuals in order to circumvent restrictions set by Companies A, B, and C on purchases made outside of the United States (*id*. at p. 3); Mr. Ji in fact purchased and obtained background reports requested by Intelligence

2

Officer A of certain naturalized United States citizens who were born in Taiwan or China and worked in the United States at companies in the science and technology industry, including cleared United States defense contractors (*id.* at p. 3); Mr. Ji emailed the background reports to Intelligence Officer A in a manner that disguised the true nature of the reports and that Intelligence Officer A was the intended recipient (*id.* at pp. 3-4); Mr. Ji was provided money by Intelligence Officer A as compensation and to reimburse him for expenses incurred in obtaining the background check reports (*id.* at p. 4); Mr. Ji joined the United States Army as a means to obtain United States citizenship via the MAVNI program and to gain access to sensitive and classified information for the People's Republic of China (*id.* at p. 4); and that Mr. Ji concealed, hid and caused to be concealed, misrepresented, and hid, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy. *Id.* at p. 4.

4.    The indictment next alleged specific overt acts undertaken in furtherance of the conspiracy, including that: between December 9, 2013 and July 6, 2014, Mr. Ji traveled between Chicago and Beijing on multiple occasions (*id.* at p. 4); Mr. Ji and Intelligence Officer A met in China on December 18, 2013 (*id.* at p. 4); Mr. Ji and Intelligence Officer A met in China on January 10, 2014 (*id.* at p. 5); from August 25, 2015 through August 31, 2015, Intelligence Officer A and Mr. Ji exchanged text messages in which Intelligence Officer A directed Mr. Ji to send Intelligence Officer A the background reports (*id.* at p. 5); Mr. Ji purchased the background reports from Companies A, B, and C on August 30, 2015 while in the United States (*id.* at p. 5); Mr. Ji made the background check information available to Intelligence Officer A in an email addressed to a third party on August 30, 2015 (*id.* at p. 5); Mr. Ji purchased a background report from Company A while in the United States on September 18, 2015 (*id.* at p. 5); and that Mr. Ji made the background check

information available to Intelligence Officer A in an email addressed to a third party on September 18, 2015 (*id.* at p. 5).

5.  Count two of the indictment, which charged a violation of 18 U.S.C. § 951, began by reincorporating paragraph one of count one, which, as described above, generally only defined the MSS, Intelligence Officer A, the MAVNI program, and Companies A, B, and C. *Id.* at pp.1-2. It then alleged that from on or about August 28, 2013 to on or about September 25, 2018, at Chicago, in the Northern District of Illinois and elsewhere, Ji Chaoqun did knowingly act as an agent of a foreign government, namely the People's Republic of China, without prior notification to the Attorney General as required by law; in violation of 18 U.S.C. § 951(a). *Id.* at p. 6.

6.  Counts three through five of the indictment alleged wire fraud in violation of 18 U.S.C. § 1343. *Id.* at pp. 7-13. After reincorporating paragraph 1(a)-(e) of count one, which described Mr. Ji's arrival in the United States, the MSS, Intelligence Officer A, and the MAVNI program, count three described the process through which an individual can obtain an F-1 visa. An F-1 visa permits a foreign national to study in the United States. *Id.* at p. 7. Before applying for an F-1 visa, a student had to be accepted by a Student and Visitor Exchange Program ("SEVP") approved school. *Id.* After acceptance, the student has to register in the Student and Exchange Visitor Information System ("SEVIS"). The SEVP-approved school issues a Form I-20, "Certificate of Eligibility for Nonimmigrant Student Status – For Academic and Language Students." After the student receives this form and is registered in SEVIS, the student had to apply at a U.S. Embassy or Consulate for a student F-1 visa. *Id.* The student was required to present the Form I-20 to the consular officer during the visa interview. *Id.* Count three alleged that Ji Chaoqun was issued an F-1 visa on August 28, 2013 and arrived in the U.S. on that visa for the purpose of attending IIT in Chicago. *Id.*

7. The indictment continued, stating that the Optional Practical Training ("OPT") was temporary employment directly related to an F-1 visa-holder's major area of study that could be completed before and/or after completion of the studies for up to one year. *Id.* An F-1 visa-holder who received a science, technology, engineering, and mathematics degree could extend participation in the OPT program for up to an additional two years. *Id.* A student had to submit a Form I-983 Training Plan for STEM OPT students in order to apply for the STEM OPT extension. *Id.* at p. 8.

8. Next, count three described that the Standard Form 86 was a security clearance application form used by the U.S. government in conducting background investigations of persons under consideration for national security positions and for individuals requiring eligibility for access to classified information. *Id.*

9. Count three then alleged that on or about May 20, 2016 and continuing until on or about September 25, 2018, Mr. Ji devised and intended to devise, and participated in, a scheme to defraud the United States Army of money and property by means of materially false and fraudulent pretenses, representations, promises, and the concealment of material facts. *Id.*

10. In describing the scheme, count three alleged that it was part of the scheme that:

- On or about May 20, 2016, Mr. Ji signed and submitted an enlistment contract in order to join the United States Army as a means to obtain United States citizenship (*id.*);

- On June 6, 2016, Mr. Ji submitted an SF-86 as part of the background investigation to enlist in the United States Army. In Section 20B of the SF-86, Mr. Ji stated that in the past seven years he did not have any contact with a foreign government or its representatives, inside or outside of the United States, while knowing that he had in fact communicated with Intelligence Officer A, including meeting with Intelligence Officer A in China (*id.* at pp. 8-9);

- In order to maintain his lawful employment status in the United States, which was necessary for Mr. Ji's successful enlistment into the United

States Army, to be paid by the United States Army, and to obtain United States citizenship through the MAVNI program, on or about November 28, 2016, Mr. Ji extended his F-1 visa via the OPT program by submitting a form I-983 Training Plan stating that he was employed by Company D in Chicago when he knew he did not work for Company D (*id.* at p. 9);

- On January 9, 2017, Mr. Ji signed and submitted a Form I-20 stating that he was employed by Company D in Chicago when he knew that he did not work for Company D (*id.*);

- In April 2017, Mr. Ji began working for the United States Army Reserves and he was paid for his work (*id.*);

- On December 6, 2017, Mr. Ji was interviewed as part of the background investigation for his application to enlist in the United States Army, during which he stated that he was residing in the United States on an F-1 visa, and submitted in support, among other things, his January 9, 2017 Form I-20, which fraudulently listed his employment at Company D (*id.*);

- On December 6, 2017, Mr. Ji answered "no" to the following written questions: "have you, a relative of yours, or an associate of yours, ever been a member, supporter, or representative of any of the organizations listed below?" after which the MSS was listed, when Mr. Ji knew that Individual A was a representative or supporter of the MSS (*id.* at p. 10);

- And that Mr. Ji concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme, and acts done in furtherance of the scheme. *Id.*

11.  Count three then alleged the execution of a wire communication in the form of an electronic funds transfer of $417.78 on May 3, 2017, for Mr. Ji's work with the United States Army; the foregoing in violation of 18 U.S.C. § 1343. *Id.* at p. 11.

12.  Count four alleged a separate wire fraud execution of a January 3, 2018 electronic funds transfer of $278.52 that also represented payment for Mr. Ji's work with the United States Army. *Id.* at p. 12.

13.  Count five alleged a separate wire fraud execution of a June 1, 2018 electronic funds transfer of $335.22 that also represented payment for Mr. Ji's work with the United States Army. *Id.*

at p. 13.

14.     Finally, count six began by reincorporating paragraph 2(d) of count three, which described the SF-86 form. *Id*. at p. 14. It then stated that the United States Department of Army was conducting a background investigation of Mr. Ji as part of his desire to enlist, which process included Mr. Ji completing an SF-86 Form. *Id*. It then stated that whether Mr. Ji had any contacts with a foreign government or its representatives within the previous seven years was material to its background investigation. *Id*.

15.     The indictment then alleged that on June 6, 2016, at Chicago, in the Northern District of Illinois and elsewhere, Ji Chaoqun knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the United States Department of the Army, an agency within the executive branch of the U.S. government, when in Section 20B of the SF-86 Form he answered "no" to the following question: "have you or any member of your immediate family in the past seven years had any contact with a foreign government, its establishment (such as an embassy, consulate agency, military service or security service, etc.) or its representatives, whether inside or outside the U.S.?" when in fact, as Mr. Ji knew that answer was false, in violation of 18 U.S.C. § 1001(a)(2). *Id*. at p. 15.

## II.     Discussion

### A.  Law Applicable to 18 U.S.C. § 951

16.     18 U.S.C. § 951 requires proof that the defendant (1) acted; (2) as an agent of a foreign government; (3) that he did so knowingly; and (4) that he so acted in the Northern District of Illinois during the time period alleged in the indictment. *United States v. Turner*, 13 CR 572 (N.D. Ill. 2014) (Bucklo, J.) (Dkt. # 211); 18 U.S.C. § 951(a).

17. An agent is an individual who agrees to operate within the United States "subject to the direction and control of a foreign government or official." 18 U.S.C. § 951; 28 C.F.R. § 73.1(a). § 951(d)(1)-(4) exempts from the notification requirement duly accredited diplomatic or consular officers so recognized by the Department of State, certain officially or publicly acknowledged foreign representatives, and any person engaged in a legal, commercial transaction. This exemption is further narrowed by § 951(d).

18. § 951 criminalizes "*any* affirmative conduct undertaken as an agent of a foreign government." *United States v. Duran*, 596 F.3d 1291 (11th Cir. 2010) (emphasis added). The relevant legislative history regarding § 951 was recently described by the Eleventh Circuit in *Duran*, *id.* at 1291 n. 4:

> The earliest form of § 951 was enacted on June 15, 1917, shortly after the United States entered World War I. It was part of "An Act To punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes." Act of June 15, 1917, ch. 30, 40 Stat. 217 (codified as amended at 18 U.S.C. § 951 (1948)). In fact, the predecessor to § 951 is found in Title VIII, § 3 entitled: "Disturbance of foreign relations." *Id.* at 226. Legislative history suggests that the 1917 Act was a war-time act to protect the United States from subversive elements that could threaten America's war effort. This is because, in its Congressional Reports, Congress labeled the act, "To Punish Espionage and Enforce the Criminal Laws of the United States," H.R. Rep. No. 65-30, at 1 (1917), and "Espionage Bill," H.R. Rep. No. 65-65, at 1 (1917) (Conf. Rep.); H.R. Rep. No. 65-69, at 1 (1917) (Conf. Rep.).

Moreover, "[t]he limited legislative history [of § 951] persuasively suggests that Congress chose to separate § 951 [from FARA] and treat it as a catch-all statute that would cover all conduct taken on behalf of a foreign government." *Id.* at 1295. For that reason § 951 does not require "espionage or traditional notions of spying and subversive activity." *Id.* at 1291.

19. Unsurprisingly then, § 951 has been held to set forth a general intent crime, *United*

*States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008), and does not require proof that the defendant knew of the notice requirement. *See United States v. Dumeisi*, 424 F.3d 566, 591 (7th Cir. 2005) ("[k]nowledge of the requirement to register is not an element of § 951"). Rather, the *mens rea* element simply requires the defendant knew "he had not notified the Attorney General before acting in the United States as a foreign agent." *Turner*, *supra*.

20.     The broad sweep of § 951 creates an arguably substantial, even inconceivable number of possibilities under which those engaged in ostensibly legal conduct on behalf of a foreign government could be convicted. *Id*. For example, accepting phone calls or cash from a foreign government has been held sufficient "for the jury to conclude that [the defendant] took acts of *some kind* on behalf" of a foreign government. *United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) (emphasis added) (upholding a conviction where the defendant accepted money and placed 39 telephone calls to a foreign intelligence agent). Courts have also examined whether there was continued communication, training, or instructions between the defendant and a foreign government to establish the legal sufficiency of a § 951 conviction. *See Dumeisi*, 424 F.3d at 581; *see also United States v. Ying Lin*, 2018 WL 3416524 (E.D.N.Y. 2018). And although not even required, evidence of an individual sending a foreign government information is generally conclusive evidence of a § 951 violation. *Dumeisi*, 424 F.3d at 566 (American citizen convicted for sending phone records and summaries of public speeches of Iraqi opposition group to Iraqi government). Moreover, such information need not be classified or even related to the United States government (*id.*) because § 951 criminalizes acting as an agent of a foreign government and thus the contents of any transmission are generally irrelevant—it is the act coupled with a lack of prior notification that is illegal. *See e.g., Ying Lin, supra* at * 4-5 (upholding an indictment where an airline employee smuggled

luggage to China despite no evidence of the contents of the luggage).

**B. Law Applicable to Fed. R. Crim. P. 7(f)**

21.     Rule 7(f) of the Federal Rules of Criminal Procedure authorizes district courts to require a bill of particulars in order to "furnish the defendant further information respecting the charge stated in the indictment when necessary to the preparation his defense, and to avoid prejudicial surprise at trial." *United States v. United States Gypsum Co.*, 37 F. Supp. 398, 401 (D.D.C. 1941); *see also United States v. Trie*, 21 F. Supp. 2d 7, 21 (D.D.C. 1998) (acknowledging that federal courts should order a bill of particulars when necessary to "prevent unfair surprise at trial"); *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987); *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars may also be necessary to protect the defendant from being tried twice for the same offense. *United States v. Roya*, 574 F.2d 386, 391 (7th Cir. 1978).

22.     When a bill of particulars is necessary to achieve these purposes, one must be ordered even when doing so would require "the furnishing of information which in other circumstances would not be required because [it is] evidentiary in nature." *United States Gypsum Co.*, 37 F. Supp. at 403; *see also United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (holding that when a bill of particulars is required "it will be required even if the effect [includes] disclosure of evidence or . . . theories") (internal quotations omitted). In fact, "[i]t is not uncommon for the government to be required to disclose the names of some potential witnesses in a bill of particulars . . . where this information is necessary or useful in the defendant's preparation for trial." *Will v. United States*, 389 U.S. 90, 99 (1967); *see also United States v. Knowles*, 2 F. Supp. 2d 1135, 1141 (E.D. Wis. 1998) (Adelman, J.) ("[i]n some cases, a bill of particulars can establish clarity to an otherwise barebones indictment . . . . [f]or example, the defendant can obtain the names of the "unindicted co-

conspirators" referred to in an indictment as this information is necessary to clarify the parameters of the charged conspiracy"). The necessity of a bill of particulars remains and is in no way obviated where a bill of particulars is requested to describe a defendant's own conduct. *See, e.g., United States v. Delatorre*, 438 F. Supp. 2d 892, 899 (N.D. Ill. 2006) (ordering a bill of particulars where necessary to identify defendant's own criminal conduct); *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 942 (N.D. Ill. 2001) (ordering a bill of particulars to provide further details of defendant-physician's own fraud scheme), *rev'd on other grounds*, 502 F.3d 700 (7th Cir. 2007). These principles also hold firm even when—and at times as a result of—the fact that the government has produced a voluminous amount of discovery. *See, e.g., United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("[t]he line that distinguishes one defendant's request to be apprised of necessary specifics about the charges against him from another's request for evidentiary detail is one that is quite difficult to draw. It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars").

23. Given that a bill of particulars is so often necessary to ensuring that the accused be afforded many of the most basic rights enshrined in the Constitution, statutory provisions authorizing courts to grant such a bill should be "liberally interpreted." *United States v. O'Connor*, 237 F.2d 466, 476 (2d Cir. 1956). To that end, the 1966 amendment to Rule 7(f), eliminating the requirement that a bill of particulars was to be ordered only after cause had been shown, was "designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Advisory Committee Notes 39 F.R.D. 69, 170; *see also United States v. Jeffers*, 532 F.2d 1101, 1113 (7th Cir. 1976); *United States v. Lovecchio*, 561 F. Supp. 221, 225 (M.D. Pa. 1983). That amendment

had the effect of "increas[ing] the instances in which [bills] are granted, thus contributing to the desirable decline in the sporting theory of criminal justice." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971) (internal citations and quotations omitted). Accordingly, when a court is unsure of whether or not to order a bill of particulars, defendants should be given "the benefit of the doubt." *United States v. Thevis*, 474 F. Supp. 117, 124 (N.D. Ga. 1979).

### C. The Necessity of a Bill of Particulars

24.     Here, a narrow bill of particulars is necessary so as to permit Mr. Ji to be adequately apprised of the scope of the government's allegations against him, to afford him the opportunity to adequately prepare his defense, to avoid unfair surprise at trial, and so that the indictment will preclude a second prosecution for the same offense in violation of the Double Jeopardy Clause. The necessary particulars include, but are not limited to, the following:

### i. Count One (18 U.S.C. § 371)

a. Identify any and all other individuals the government considers to be members of the alleged conspiracy, or "co-conspirators," further identifying with specificity their involvement or role in the conspiracy;

b. Identify the nature and scope of the conspiratorial agreement above and beyond that contemplated by the substantive offense, including its object, any and all overt acts or series of acts Mr. Ji or others are alleged to have carried out in furtherance of the conspiracy, the manner and means through which Mr. Ji or others are alleged to have carried out the conspiracy, further including the date, time, location, and circumstances of such acts;

c. and identify with specificity the manner and means, including the date, time, location, and circumstances through which Mr. Ji is alleged to have concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

### ii. Count Two (18 U.S.C. § 951)

a. Identify with specificity any and all "acts" Mr. Ji is alleged to have performed

as an unregistered foreign agent, including the date, time, location, and circumstances of such act;

b.  Identify any and all foreign officials under whose "direction and control" Mr. Ji is alleged to have acted;

c.  Identify with specificity the manner and means through which any and all foreign officials directed and controlled Mr. Ji's alleged actions, including the date, time, location, and circumstances of such act;

d.  and identify with specificity the factual grounds supporting the assertion that Mr. Ji "knowingly" acted as an unregistered foreign agent.

### iii.  Counts Three, Four, and Five (18 U.S.C. § 1343)

a.  Identify any and all other individuals the government considers to be members of the alleged scheme, or "co-schemers," further identifying with specificity their involvement or role in the alleged scheme;

b.  Identify with specificity the manner and means through which Mr. Ji "devised and intended to device, and participated in" the alleged fraud scheme, including the date, time, location, and circumstances;

c.  and identify with specificity any and all overt acts or series of acts Mr. Ji or others are alleged to have carried out in furtherance of the alleged scheme; further including any and all false statements Mr. Ji is alleged to have made in furtherance of the alleged scheme; further including the manner and means through which Mr. Ji is alleged to have concealed, misrepresented and hid, and caused to be concealed, misrepresented and hidden, the existence and purpose of the scheme, and acts done in furtherance of the scheme, including the date, time, location and circumstances.

### iv.  Count Six (18 U.S.C. § 1001(a)(2))

a.  Identify with specificity the factual grounds supporting the assertion that the alleged false statements were "material" to the United States Department of Army's background investigation;

b.  identify any and all "other" material false statements Mr. Ji is alleged to have made in relation to the United States Department of Army's background investigation, including the date, time, location and circumstances of any such statement; and

c.  identify with specificity the factual grounds supporting the assertion that Mr.

Ji knew the statement to be false.

25.    The government has brought only a small number of § 951 prosecutions nationwide since the 1966 amendments to Rule 7. Nonetheless, as recounted above, and detailed further in Mr. Ji's motion to dismiss counts one and two of the indictment, a bill of particulars furnishing the information requested above is undeniably necessary given the practically unlimited reach of § 951, the vague manner in which it is drafted, and the limited information provided in the indictment.

26.    Moreover, count two of the indictment charging a substantive violation of § 951, in its specificity, did not allege *any* act that Mr. Ji allegedly carried out as an unregistered agent in the over five year period between August 28, 2013 to on or about September 25, 2018; rather, it alleged the bare fact that he acted as a foreign agent. Thus, as the indictment is currently written, Mr. Ji is forced to prepare a defense to virtually every action he took in the United States from August 28, 2013 until September 25, 2018. *See Duran*, 596 F.3d at 1292 (holding § 951 criminalizes "*any* affirmative conduct undertaken as an agent of a foreign government"). By anyone's measure, the indictment could hardly be said to constitute sufficient notice enabling counsel and Mr. Ji to effectively prepare a defense, avoid unfair surprise, or create a bar to future prosecutions.

27.    The indictment also failed to allege sufficient detail with respect to Mr. Ji's alleged actions beyond count two's failure to allege any specific actions in the first instance. It provided insufficient detail as to how, when, or any circumstances surrounding Mr. Ji's purported "agreement" to operate as an agent of the People's Republic of China supporting the conspiracy charge, whether he agreed with a foreign official, which official, or a foreign government, the nature, degree, or any circumstances of the direction and control exercised by the foreign government or official, etc. Nor did it contain sufficient specificity—not just direct but inferable even—supporting

the bare assertion that Mr. Ji acted "knowingly." But ultimately, given the expansive period in which the conduct is alleged to have occurred within—over five years for counts one and two—coupled with the unusual level of generality accompanying the allegations, the furnishing of a bill of particulars is critical to allowing Mr. Ji and counsel to effectively prepare the defense. And while avoiding repetition, counsel respectfully reiterates that the indictment's Rule 7 deficiencies are exacerbated by § 951's own deficiencies; namely, its substantial overbreadth and impermissible vagueness. Suffering from the same pleading defects, the fraud and false statement charges do not fare any better.

## III.    Conclusion

28.    To apprise Mr. Ji of the scope and nature of the charges against him, allow him and counsel to effectively prepare a defense to those charges, and to create a record so as to protect Mr. Ji from being placed in jeopardy twice over, and for all of the other reasons stated herein, counsel respectfully requests that the Court order the government to produce a bill of particulars as requested herein.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on December 6, 2019, I electronically filed the foregoing **Defendant's Motion for a Bill of Particulars** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com