IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
COUNTS ONE THROUGH FIVE OF THE INDICTMENT**

## TABLE OF CONTENTS

I. Background ...................................................................................................................1-2

II. Discussion ............................................................................................................... 2-11

    A. Motion to Dismiss for Failure to State an Offense
       and/or on Multiplicity Grounds ...................................................................... 2-3

    B. Motion to Dismiss Counts One and Two as Facially Overbroad ................................. 3-5

    C. 18 U.S.C. § 951 is Unconstitutionally Vague as Applied
       To Ji Chaoqun.................................................................................................... 5-7

    D. Motion to Dismiss Counts Three Through Five
       For Failure to State an Offense...................................................................... 7-11

        i. Scheme to Defraud.................................................................................. 8-9

        ii. Money or Property ...............................................................................9-11

III. Conclusion ............................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*Cleveland v. United States*, 531 U.S. 12 (2000) ...................................................................9-10

*Iannelli v. United States*, 420 U.S. 770 (1975) ..........................................................................2

*Kolender v. Lawson*, 461 U.S. 352 (1983) ................................................................................6

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ...............................................................5

*McNally v. United States*, 483 U.S. 350 (1987) ..................................................................... 10

*Pinkerton v. United States*, 328 U.S. 640 (1946) ......................................................................2

*Rewis v. United States*, 401 U.S. 808 (1971) ........................................................................ 11

*Thornhill v. Alabama*, 310 U.S. 88 (1940) ..............................................................................6

*United States v. Azad*, 809 F.2d 291 (6th Cir. 1986) ...............................................................9

*United States v. Braverman*, 317 U.S. 49 (1953) ......................................................................2

*United States v. Broce*, 488 U.S. 563 (1989) ...........................................................................2

*United States v. Brown*, 726 F.3d 993 (7th Cir. 2013) ............................................................2

*United States v. Chacko*, 169 F.3d 140 (2d Cir. 1999) .............................................................8

*United States v. Duran*, 596 F.3d 1291 (11th Cir. 2010) ........................................................5

*United States v. O'Brien*, 391 U.S. 367 (1968) ........................................................................5

*United States v. Sachakov*, 812 F. Supp. 2d 198 (E.D.N.Y. 2011) ..........................................9

*Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005) ............................................................6

**Statutes**

18 U.S.C. § 371 .................................................................................................................passim

18 U.S.C. § 951 .................................................................................................................passim

18 U.S.C. § 1001 ..................................................................................................................passim

18 U.S.C. § 1343 ..................................................................................................................passim

**Rules**

Fed. R. Crim. P. 7 .......................................................................................................... 1, 11

Fed. R. Crim. P. 12 ...............................................................................................................1

**Other Authority**

28 C.F.R. § 73.1...................................................................................................................3

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS
## COUNTS ONE THROUGH FIVE OF THE INDICTMENT

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to Rules 7 and 12 of the Federal Rules of Criminal Procedure, the Freedom of Speech, Due Process, Double Jeopardy, and Effective Assistance of Counsel clauses of the First, Fifth, and Sixth Amendments to the Constitution of the United States, respectfully submits the following reply in support of his motion to dismiss counts one through five of the indictment.

## I.      Background

On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32.

On December 6, 2019, Mr. Ji, through counsel, moved to dismiss counts one through five of the indictment on the following grounds: (1) count one (18 U.S.C. § 371) is legally deficient because it fails to state an offense; (2) counts one (18 U.S.C. § 371) and two (18 U.S.C. § 951) are multiplicitous; (3) counts one (18 U.S.C. § 371) and two (18 U.S.C. § 951) must be dismissed because 18 U.S.C. § 951 is unconstitutionally overbroad; (4) counts one (18 U.S.C. § 371) and two (18 U.S.C. § 951) must be dismissed because 18 U.S.C. § 951 is unconstitutionally vague as applied to Mr. Ji; (5) counts one (18 U.S.C. § 371) and two (18 U.S.C. § 951) fail to adequately inform Mr. Ji of the nature and cause of the accusation; and (6) counts three through five (18 U.S.C. § 1343) are legally deficient because they fail to state an offense. Dkt. # 67-71.

1

On January 27, 2020, the government filed its response in opposition. Dkt. # 77. Counsel

hereby submits this reply on behalf of Mr. Ji in order to clarify and address the arguments raised by

the government in its response.

II.     **Discussion**

   **A.  Motion to Dismiss for Failure to State an Offense and/or on Multiplicity Grounds.**

   Counsel and Mr. Ji first moved to dismiss count one, an alleged violation of 18 U.S.C. § 371

*i.e.* a conspiracy to fail to register as a foreign agent, on the grounds that this count fails to state an

offense—a conspiracy—or framed differently, that the conspiracy and the substantive offense are one

and the same given the uniqueness of a § 951 charge, and thus are multiplicitous.

   In response, the government first submitted:

> This argument is factually inaccurate as Count One alleges that defendant agreed to
> assist Intelligence Officer A *and* others known and unknown, including the PRC, by
> covertly serving as an agent of the PRC while residing in the United States. Dkt. No.
> 32 at 1-2 (emphasis added). Nevertheless, *Pinkerton* governs because Count One
> alleges the conspiracy, that defendant agreed with Intelligence Officer A and others
> to act as an agent of the PRC; while Count Two alleges the substantive offense that
> defendant did, in fact, act as an agent of the PRC. *Pinkerton*, 328 U.S. at 643-44. Dkt.
> # 77 p. 6.

   Regardless of whether the government is in fact alleging an agreement between the People's

Republic of China generally, and/or others known and unknown to the grand jury[1], the fact remains

that the conspiracy and the substantive offense remain co-extensive. In particular, the government

overlooks—and fails to reconcile—that proof of a § 951 violation requires not just *action* as a foreign

agent without prior notification, but that the defendant *agreed* to so act. In fact, § 951 directly defines

"agent of a foreign government" as an individual "who *agrees* to operate within the United States

---

[1] Counsel specifically requested that the government be required to furnish who else it is specifically alleging
was a member of the conspiracy as part of Mr. Ji's motion for a bill of particulars. Dkt. # 72. Given the
government's argument here, requiring the government to specify this information is all the more necessary.

subject to the *direction or control of a foreign government official*," subject to enumerated exceptions. 18 U.S.C. § 951(d) (emphasis added).[2]

For a conspiracy, the "gist" of the crime of conspiracy "is the agreement." *United States v. Braverman*, 317 U.S. 49, 53 (1953). In fact, "[i]n a conspiracy charge, the term 'agreement' is all but synonymous with the conspiracy itself, and as such has great operative force." *United States v. Broce*, 488 U.S. 563, 570 (1989). And as the Seventh Circuit has recently described, "[a]bove and beyond the substantive offense, a conspiracy is "the extra act of agreeing to commit a crime." *United States v. Brown*, 726 F.3d 993, 997 (7th Cir. 2013). Thus, because of the "general congruence of the agreement and the completed substantive offense," *Iannelli v. United States*, 420 U.S. 770, 782 (1975), the government's charging scheme amounts to a "Wharton's Rule" violation—it has failed to allege a criminal agreement in addition to that contemplated by the substantive offense and thus failed to allege a § 371 violation. Or said differently, as the government has charged the "same offense" in count one as a violation of § 371 and count two as a violation of § 951, count one must be dismissed as unconstitutionally multiplicitous.

**B. Motion to Dismiss Counts One & Two as Facially Overbroad.**

Mr. Ji, through counsel, next moved to dismiss counts one and two of the indictment as facially overbroad, in violation of the First Amendment's Free Speech Clause.

In response, the government first focused on the fact that § 951 contains a "commercial exemption," as codified in § 951(d)(4), which exempts "any person engaged in a legal commercial transaction" from the definition of "agent of a foreign government." 28 C.F.R. § 73.1(f) defines "legal commercial transaction" as it is used in § 951 as "any exchange, transfer, purchase or sale, of

---

[2] In light of this statutory language, the government was simply incorrect when it later suggested that "contrary to defendant's assertion, Section 951(a) does not require proof of an agreement." Dkt. # 77 p. 7.

any commodity, service or property of any kind, including information or intellectual property, not prohibited by federal or state legislation or implementing regulations."

While this and other limited exemptions exist, the fact remains that, in relevant part, § 951 nonetheless effectively criminalizes a limitless category of actions. Whether the *actus reus* is political or apolitical, subversive or benign, well-intentioned or seditious, personal or public, expressive or not, and so on, as long as it is an "act," it is subject to prosecution under § 951. Nor does the statute draw a distinction between lawful and unlawful acts; again, it applies to all acts so long as they were undertaken at the direction or control of a foreign official or government.

Moreover, the statute does not delineate between acts undertaken at the direction of a foreign official that have an official purpose, or are personal in nature. *See McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016) (acknowledging how the lack of adequate notice subjecting individuals to punishment "for the most prosaic interactions" weighs on a vagueness challenge). In the Fender Telecaster example, instead of purchasing the American-made guitar, if the foreign official's friend or agent could simply be picking it up for safe transport, inspecting its quality, or countless other actions aside from purchase, the commercial exemption does not apply, and the foreign official's friend would arguably be subject to prosecution.

Aside from quarreling with other examples on similar grounds, the government offers no additional contestation. It does not dispute the fact that the statute is also silent as to degree or quantum of direction or control a foreign official must exercise, or that it imposes an at-best "ostensible" *mens rea* requirement. Nor, aside from citation to the commercial exemption, did the government offer any disagreement regarding the indisputably broad reach of § 951. As counsel noted, statute criminalizes "*any* affirmative conduct undertaken as an agent of a foreign

4

government." *United States v. Duran*, 596 F.3d 1291 (11th Cir. 2010) (emphasis added). As the

Eleventh Circuit described the relevant legislative history in *Duran*:

> The earliest form of § 951 was enacted on June 15, 1917, shortly after the United
> States entered World War I. It was part of "[a]n Act to punish acts of interference
> with the foreign relations, the neutrality, and the foreign commerce of the United
> States, to punish espionage, and better to enforce the criminal laws of the United
> States, and for other purposes." Act of June 15, 1917, ch. 30, 40 Stat. 217 (codified
> as amended at 18 U.S.C. § 951 (1948)). In fact, the predecessor to § 951 is found in
> Title VIII, § 3 entitled: "Disturbance of foreign relations." *Id.* at 226. Legislative
> history suggests that the 1917 Act was a war-time act to protect the United States
> from subversive elements that could threaten America's war effort. This is because,
> in its Congressional Reports, Congress labeled the act, "To Punish Espionage and
> Enforce the Criminal Laws of the United States," H.R. Rep. No. 65–30, at 1 (1917),
> and "Espionage Bill," H.R. Rep. No. 65–65, at 1 (1917) (Conf. Rep.); H.R. Rep. No.
> 65–69, at 1 (1917) (Conf. Rep.).

Further, as discussed before, "[t]he limited legislative history [of § 951] persuasively suggests

that Congress chose to separate § 951 [from FARA] and treat it as a catch-all statute that would cover

all conduct taken on behalf of a foreign government." *Id.* at 1295. For that reason § 951 does not

require "espionage or traditional notions of spying and subversive activity." *Id.* at 1291.

It follows, then, that given the fact that "conduct" or "acting" has long been recognized to

receive First Amendment protection, *see United States v. O'Brien*, 391 U.S. 367, 376 (1968), § 951 is

facially overbroad, should be held unconstitutional, and counts one and two dismissed.

## C. 18 U.S.C. § 951 is Unconstitutionally Vague as Applied to Ji Chaoqun.

Counsel and Mr. Ji next moved to dismiss counts one and two on the grounds that § 951 is

unconstitutionally vague as applied to Mr. Ji. In response, the government argues that § 951 does in

fact provide adequate notice of the proscribed conduct, as it contains specified exemptions, its

language is clear and unambiguous, and that the defense is seeking to politicize the prosecution.

First, as to the latter point, counsel specifically stated before: the defense is not at all

5

questioning the government's motivations. *See* Dkt. # 70 p. 8. The fact nonetheless remains that this is a case of political importance, and vague laws, such as § 951, invite one of the precise dangers Due Process is meant to guard against—it leaves individuals from countries the United States is currently at odds with unduly susceptible to criminal charges. *See Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983); *Thornhill v. Alabama*, 310 U.S. 88, 97-98 (1940) (a vague statute's continued operation "readily lends itself to harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure"). Indeed, "[i]t is not the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion." *Wernsing v. Thompson*, 423 F.3d 732, 754 n. 4 (7th Cir. 2005) (quoting *Thornhill*, 310 U.S. at 97).

Counsel did previously note, and again, the government did not dispute—that § 951 contains an unquestionably broad sweep—even with its embedded exemptions. The proscribed conduct includes apolitical, lawful, and well-intentioned acts, just the same as their counterparts. "Personal" as opposed to "official" acts undertaken at the direction of a foreign government may also be criminal absent notification to the Attorney General. § 951 further lacks a First Amendment safeguard designed to protect any conceivable lawful political expression of a non-citizen. No appropriate nexus to the official business or machinations of a foreign government or official is described, let alone who constitutes a "foreign official" in the first instance. The statute is also silent as to degree or quantum of direction or control a foreign official must exercise—presumably mere suggestion or innuendo suffices. And perhaps most importantly, the statute lacks any meaningful *scienter* requirement. These concerns are all the more heightened given the statute imposes a *proactive* duty to register with the Attorney General.

It is further noteworthy that although the government chose to do so with every other charge contained in the indictment, in alleging count two, it, at most, incorporated certain definitions from paragraph one of count one and then recited the elements of § 951, with said offense having occurred sometime within an expansive five-year period. In other words, despite elaborating as to the acts constituting the § 371 charge, wire fraud, and false statements, the government was silent as to what conduct did or did not constitute a violation of § 951. And nearly all of the alleged overt acts from the § 371 charge were apolitical, otherwise lawful acts. In any event, the amount of details the government included in the indictment is of little, if any consequence in assessing whether or not § 951 is constitutionally vague, as a detailed indictment is not capable of saving an unconstitutional statute. The § 951 charge fails Due Process on the grounds that it fails to provide Mr. Ji the constitutionally required notice of the nature of the charge against him.

In any event, based on the foregoing, and the reasons more fully described in Mr. Ji's initial memorandum, in addition to being unconstitutionally overbroad, § 951 is unconstitutionally vague in that it fails to provide adequate notice to ordinary people of the conduct it proscribes, and is standardless such that it invites arbitrary enforcement. Thus, dismissal of counts one and two are required.

**D.  Motion to Dismiss Counts Three Through Five for Failure to State an Offense.**

Finally, Mr. Ji, through counsel, moved the Court to dismiss counts three through five of the indictment, which charge violations of 18 U.S.C. § 1343, on the grounds that they fail to state an offense. Specifically, counsel and Mr. Ji alleged that the government, in turn, failed to allege a "scheme to defraud," and further, that the indictment failed to allege "money or property" as the object of the fraud scheme, as those terms are defined within § 1343.

7

### i. Scheme to Defraud

As part of the first argument, counsel noted that the indictment's reference to lies to immigration are not and could not logically be considered as part of the alleged scheme, leaving the "scheme" comprised of only the following:

- Mr. Ji signing an enlistment contract (*id.* at p. 8 ¶ 4);
- Mr. Ji making a false statement on a SF-86, a form pertinent to the U.S. Army's background investigation (*id.* at ¶ 5);
- Mr. Ji in fact working for the United States Army Reserves (*id.* at p. 9 ¶ 7); and
- Mr. Ji making additional false statements during an interview in connection with the background investigation (*id.* at pp. 9-10).

The government disagreed, arguing that Mr. Ji's alleged lies were "central" and "critical" to the alleged scheme to defraud the Army. The point the government overlooks is that, in order to defraud the United States Army, and commit a violation of United States law, one necessarily must be present in the United States—just as one must maintain basic life functions, social interactions, etc. There is simply not a plausible nexus between the alleged steps necessary to maintain physical presence in the United States and the alleged scheme, at least one that does not test the absolute outer limits of relevancy.

Second, the government argued that the alleged false statements were not simply "false statements," but "critical to his scheme to defraud." Of course, count six alleged that precise act as in fact being a false statement made in violation of 18 U.S.C. § 1001. The point is, absent proof of a "scheme" above and beyond simple false statements, the § 1343 counts fail as a matter of law. As counsel noted, "there is a fundamental difference between a scheme to defraud and a false statement made to influence the action of a federally insured institution." *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999). A simple false statement does not constitute a scheme—"a false statement is at the foundation of a violation of [e.g.] 18 U.S.C. § 1001; while the scheme to defraud and the

8

use of the mails are essential for conviction under the mail fraud statute." *United States v. Azad*, 809 F.2d 291, 296 (6th Cir. 1986). Indeed, "[a] defendant can make an isolated false statement without participating in a scheme to defraud," just as "a defendant can attempt to execute a scheme to defraud without consummating that scheme by making false statements." *United States v. Sachakov*, 812 F. Supp. 2d 198, 209 (E.D.N.Y. 2011) (Weinstein, J.). Because the government has not alleged anything more, counts three through five must necessarily be dismissed for failing to alleged a scheme.

### ii. Money or Property

Next, counsel argued that the indictment in essence alleged four potential objects of the charged fraud scheme: (1) to maintain lawful status in the United States; (2) enlistment in the United States Army; (3) to be paid by the United States Army; and (4) to obtain United States citizenship. *See* Dkt. # 32, p. 9 ¶ 6. None of those objects properly implicate money or property rights of the government as the object of the fraud scheme, and thus, dismissal is further required.

In response, the government conceded that "the government is not deprived of money or property by issuing a visa or citizenship as a result of fraud for purposes of the wire fraud statute." Dkt. # 77 p. 16. It nonetheless argued that the minimal funds of approximately $1,000 alleged in the execution section of each count in fact constituted "money" within the meaning of the wire fraud statute, and thus the counts contained a proper object. *Id.*

Counsel initially recognized that the indictment does claim the purpose of the fraud scheme was "to be paid by the United States Army." But as the Supreme Court recognized in *Cleveland v. United States*, 531 U.S. 12 (2000), the "intangible right" at issue here—service in the United States Army—is much more akin to the sovereign rights of "allocation, exclusion, and control" that fall

9

under the sovereign's right to regulate; that is, it relates to the sovereign's right to build, maintain, and control the contemporary militia in order to effectively wage wars and maintain national security. The federal fraud statutes reach only those frauds or swindles of governmental agencies that have as its object the government's interest as property-holder. *See, e.g., McNally v. United States*, 483 U.S. 350 (1987); *Cleveland*, 531 U.S. at 18 ("the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property") (internal quotations omitted). This principle holds both in the case of issuance of liquor licenses and army employment, despite the fact that both relate "to an expected stream of revenue." *See id.* Indeed, the Army's stated purpose "remains constant:"

> To deploy, fight and win our nation's wars by providing ready, prompt and sustained land dominance by Army forces across the full spectrum of conflict as part of the joint force. The Army mission is vital to the nation because we are the service capable of defeating enemy ground forces and indefinitely seizing and controlling those things an adversary prizes most – its land, its resources and its population.[3]

Moreover, as the Supreme Court also recognized in *Cleveland*, the sovereign rights implicated in these allegations are proscribed in other criminal statutes, such as those listed in the other charges in the indictment, let alone those contained in the Uniform Code of Military Justice. Thus, while Mr. Ji was alleged to have been tangentially paid as a result of his service, the fact remains that this payment does not flow from the sovereign's position in the private market place, and is thus not properly alleged as an object of the fraud scheme.

As counsel also previously argued, to the extent the Court finds the word "property" and its interpretation within § 1343 ambiguous, as the Supreme Court has long recognized and has even in this context, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of

---

[3] *See* https://www.army.mil/info/organization/ (last accessed November 21, 2019).

10

lenity." *Cleveland*, 531 U.S. at 25 (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). Thus, unless and until Congress "speak[s] more clearly than it has," *id.* at 20, the Court should find that none of the alleged objects constitute "money or property" within the meaning of § 1343.

Finally, in addition to the express concession that the issuance of a visa or citizenship is not "money or property" within the meaning of § 1343, the government offered no rebuttal to the argument that neither is the maintenance of lawful status in the United States, or enlistment in the United States Army. Should the Court find that the money alleged in the executions is in fact a proper object, counsel alternatively requests that it order these improper objects stricken from the indictment as surplusage pursuant to Rule 7(d).

## III. Conclusion

Based on the foregoing, and the reasons set forth more fully in Mr. Ji's initial motion, counsel and Mr. Ji respectfully request that the Court dismiss counts one through five of the indictment.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on February 18, 2020, I electronically filed the foregoing **of Defendant's Reply in Support of his Motion to Dismiss** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com

12