# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| | ) | **No. 18 CR 611** |
| v. | ) | |
| | ) | |
| **Ji Chaoqun,** | ) | **Judge Ronald A. Guzmàn** |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to dismiss [67] and motion for a bill of particulars [72] are denied.

## STATEMENT

Defendant has been charged with one count of conspiracy to violate 18 U.S.C. § 951(a), in violation of 18 U.S.C. § 371 (Count One); one count of acting as an agent of a foreign government without notice to the Attorney General, in violation of 18 U.S.C. § 951(a) (Count Two); three counts of wire fraud, in violation of 18 U.S.C. § 1343 (Counts Three through Five); and one count of making a material false statement in a matter within the jurisdiction of the executive branch, in violation of 18 U.S.C. § 1001(a)(2) (Count Six). Specifically, the indictment alleges that Defendant conspired with a Chinese intelligence officer (Intelligence Officer A) and others to knowingly act as an agent of the People's Republic of China ("PRC") without prior notification to the Attorney General (Count One); knowingly acted as an agent without prior notification to the Attorney General (Count Two); engaging in a wire-fraud scheme by applying to enlist in the U.S. Army as part of its Military Accessions to Vital National Interest ("MAVNI") program in order to obtain expedited U.S. citizenship and lying about his employment, immigration status, and contacts with Chinese intelligence officials during the applicable background investigation (Counts Three through Five); and lying about his contacts with Chinese intelligence officials during the background investigation (Count Six).

Defendant moves to dismiss Counts One and Two of the indictment as multiplicitous, facially overbroad, and unconstitutionally vague and lacking adequate specificity, and Counts Two through Five for failure to state an offense. Defendant also moves for a bill of particulars. The Court addresses the motions in turn.

Defendant contends that Count One, which charges Defendant with one count of conspiracy to violate 18 U.S.C. § 951(a), in violation of 18 U.S.C. § 371, is legally deficient because it fails to state a claim. Title 18 U.S.C. § 951(a) states that "[w]hoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign

government without prior notification to the Attorney General . . . shall be fined under this title or imprisoned not more than ten years, or both." 18 U.S.C. § 951(a). Section 951 defines "agent of a foreign government" as an "individual who agrees to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d). The conspiracy charge under 18 U.S.C. § 371 requires the government to prove three elements: "(1) an agreement to accomplish an illegal objective against the United States; (2) one or more overt acts in furtherance of the illegal purpose; and (3) the intent to commit the substantive offense." *D'Antoni v. United States*, 916 F.3d 658, 665 (7th Cir. 2019) (internal quotation marks and citations omitted).

Defendant asserts that Count One is deficient because § 951, the underlying offense, requires proof of an agreement, so charging both § 951 and § 371, the conspiracy, violates the rule that "[t]o support a conspiracy conviction, there must be sufficient evidence of an agreement to commit a crime other than the crime that consists of the [substantive offense] itself." *United States v. Johnson*, 592 F.3d 749, 754 (7th Cir. 2010) (citations and internal quotation marks omitted). According to Defendant, Count One "fails to allege any agreement or any facts evincing an agreement aside from those involving [Defendant] and Intelligence Officer A–that which is already subsumed within and contemplated by the substantive offense." (Def.'s Mem. Supp. Mot. Dismiss, Dkt. # 68, at 5.) Thus, Defendant concludes, "the government has failed to allege a conspiracy to violate § 951; rather, it has alleged only the substantive offense framed as a violation of § 371." (*Id*. at 5-6.) But, as the government notes, the conspiracy count alleges that Defendant agreed to assist Intelligence Officer A *and others* known and unknown, including the PRC, to violate § 951. Moreover, the counts are focused on two different crimes. Count One focuses on Defendant's illicit agreement to violate § 951 while Count Two focuses on the § 951 violation itself. It is well established that "the commission of a substantive offense and conspiring to commit that offense are two separate crimes." *United States v. Cephus*, 2:09-CR-43, 2015 WL 470450, at *6 (N.D. Ind. Feb. 4, 2015) (citing *Pinkerton v. United States*, 328 U.S. 640, 643-44 (1946)). For these reasons, this basis for relief is denied.

Along these same lines, Defendant also contends that Counts One and Two are multiplicitous. "A multiplicitous indictment charges a single offense as separate counts" and "exposes the 'defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment.'" *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (citation omitted). "The traditional test of multiplicity determines whether each count requires proof of a fact which the other does not." *United States v. Starks*, 472 F.3d 466, 469 (7th Cir. 2006). "If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." Here, § 951 requires that the government establish beyond a reasonable doubt that Defendant "act[ed] in the United States as an agent of a foreign government without prior notification to the Attorney General." The act itself need not be illegal. *See United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) ("Whether [the defendant] actually spied on Iraqi Christians in the United States may be another matter altogether. But the jury did not have to find that he did to convict him under § 951. It was enough for the jury to conclude that [the

defendant] took acts of *some kind* on behalf of Iraq without first registering as a foreign agent.") (emphasis in original). On the other hand, § 371 requires that the government demonstrate that Defendant entered into an agreement to accomplish an illegal objective against the United States; committed one or more overt acts in furtherance of the illegal purpose; and intended to commit the substantive offense. The conspiracy count expressly requires different elements from the substantive count.

Defendant's contention that the counts are multiplicitous because they both include an agreement is unavailing. While an "agent of a foreign government" as used in § 951 is defined as one "who agrees to operate within the United States subject to the direction or control of a foreign government official," the definition does not require proof that Defendant agreed to operate within the United States subject to the direction and control of an official from the PRC *to accomplish an illegal objective against the United States*, as the conspiracy count requires. Because the elements of the crimes are different, they are not multiplicitous, and this ground for relief is denied. *See Starks*, 472 F.3d at 469 ("The elements required for conviction under § 111(a) and § 1505 are different and therefore we must reject [the defendant's] multiplicity argument.").

In his next argument, Defendant asserts that 18 U.S.C. § 951 is facially overbroad because it prohibits a substantial amount of protected speech and "criminalizes a limitless category of actions." In support, Defendant cites numerous examples of seemingly prohibited conduct under § 951 that would have an unconstitutional chilling effect, such as a foreign official requesting a friend traveling to the United States to procure an American-made guitar for use in the official's personal band; an unregistered foreign journalist working in the United States at the behest of an officer from their state-controlled news agency; an unregistered American college student who is dating the son or daughter of an ambassador to the United States attending a peaceful protest rally "at the direction" of the ambassador; and an unregistered foreign student learning about foreign policy in the United States and writing a report to a foreign official /guest lecturer on that topic. (Def.'s Mem. Supp. Mot. Dismiss, Dkt. # 69, at 9-10.)

The relevant portion of § 951 states as follows:

> (a) Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required in subsection (b), shall be fined under this title or imprisoned not more than ten years, or both.
>
> (b) The Attorney General shall promulgate rules and regulations establishing requirements for notification.
>
> (c) The Attorney General shall, upon receipt, promptly transmit one copy of each notification statement filed under this section to the Secretary of State for such comment and use as the Secretary of State may determine to be appropriate from

the point of view of the foreign relations of the United States. Failure of the
Attorney General to do so shall not be a bar to prosecution under this section.

(d) For purposes of this section, the term "agent of a foreign government" means
an individual who agrees to operate within the United States subject to the
direction or control of a foreign government or official, except that such term does
not include–

> (1) a duly accredited diplomatic or consular officer of a foreign
> government, who is so recognized by the Department of State;
> (2) any officially and publicly acknowledged and sponsored official or
> representative of a foreign government;
> (3) any officially and publicly acknowledged and sponsored member of the
> staff of, or employee of, an officer, official, or representative described in
> paragraph (1) or (2), who is not a United States citizen; or
> (4) any person engaged in a legal commercial transaction.

18 U.S.C. § 951.

"A defendant who challenges a statute as facially overbroad 'assumes a heavy burden . . .
for it is now well-established that such a challenge can succeed only when the statute is
substantially overbroad, i.e., when the statute is unconstitutional in a substantial portion of the
cases to which it applies.'" *United States v. Johnson*, 875 F.3d 360, 365 (7th Cir. 2017) (internal
quotation marks and citation omitted). Contrary to Defendant's assertion that § 951 "contains no
organic safeguard provisions," as indicated above, an individual is not an agent of a foreign
government unless he or she "agrees to operate within the United States subject to the direction
or control of a foreign government or official." While Defendant qualifies a number of his
examples with "at the direction of" a foreign official, the statute prohibits acts by those who
operate "subject to" the direction of a foreign official, which arguably is different. Moreover,
several exceptions to the definition of "agent" exist, eliminating from prosecution those who are
engaged in legal commercial transactions (buying a guitar), or those who are working for foreign
government officials (working as a journalist for a state-run newspaper). Finally, Defendant does
not address that, under the statute, notification to the Attorney General is required only pursuant
to rules promulgated by him or her (*i.e.*, "if required in subsection (b)"). Defendant has not
discussed these rules, so it is not clear whether the statute applies to all (or any) of the examples
of purported overbreadth that he sets forth. Because Defendant has not demonstrated that § 951
is unconstitutional in a substantial portion of the cases to which it applies, the Court denies this
basis for relief.

Defendant next argues that § 951 is unconstitutionally vague and standardless as applied
to him because it does not offer adequate notice of the proscribed conduct. "[T]he Due Process
Clause prohibits the Government from 'taking away someone's life, liberty, or property under a
criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or

so standardless that it invites arbitrary enforcement.'" *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (citation omitted). In other words, "[a] statute is unconstitutionally vague if it: '(1) does not provide a person of ordinary intelligence a reasonable opportunity to know what is prohibited, or (2) fails to provide explicit standards to prevent arbitrary discriminatory enforcement by those enforcing the statute.'" *United States v. Nagelvoort*, 856 F.3d 1117, 1130 (7th Cir. 2017) (citation omitted). "'Unless the vagueness challenge implicates the First Amendment, . . . the statute is analyzed as applied to the specific facts of the case.'" *Id.*

Defendant claims that § 951 "offers no clarity as to what kind of 'acts' are proscribed." (Def.'s Mem. Supp. Mot. Dismiss, Dkt. # 70, at 4.) Defendant's argument fails because he does not articulate any basis on which the statute is vague or standardless as to him. "[A party] who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *CFTC v. Oystacher*, 203 F. Supp. 3d 934, 946 (N.D. Ill. 2016) (citation and internal quotation marks omitted). "The question is whether the statute is sufficiently clear that it covers the defendant's conduct, not whether it gives fair notice in the abstract." *United States v. Ryan*, 18 C 152, 2019 WL 7556053, at *15 (W.D. Wis. Dec. 20, 2019). Here, Defendant makes no effort to demonstrate that § 951 is vague or standardless as applied to his conduct. Because Defendant fails to show how charging his actions under § 951 violates the Due Process Clause, this basis for relief is denied.

Finally, Defendant contends that Count Two, alleging a violation of § 951, fails the pleading requirements under Federal Rule of Criminal Procedure ("Rule") 7, which provides that "[t]he indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). "An indictment must: (1) state the elements of the offense charged; (2) fairly inform the defendant of the nature of the charge so that he may prepare a defense; and (3) enable the defendant to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. Khan*, 937 F.3d 1042, 1049 (7th Cir. 2019).

Count Two states as follows:

> 1. Paragraph 1 of Count One is incorporated here.
>
> 2. From on or about August 28, 2013 to on or about September 25, 2018, at Chicago, in the Northern District of Illinois, and elsewhere, JI CHAOQUN, defendant herein, did knowingly act in the United States as an agent of a foreign government, namely the People's Republic of China, without prior notification to the Attorney General, as required by law; [i]n violation of Title 18, United States Code, Section 951(a).

(Indictment, Dkt. # 32, at 6.) While Count Two is brief, Count One alleges in relevant part as follows:

2.      Beginning no later than on or about August 28, 2013, to on or about September 25, 2018, at Chicago, in the Northern District of Illinois, and elsewhere, JI CHAOQUN, defendant herein, conspired with Intelligence Officer A and others known and unknown to the Grand Jury to commit an offense against the United States, namely, to knowingly act in the United States as an agent of a foreign government, namely, the People's Republic of China, without prior notification to the Attorney General of the United States as required by law, in violation of Title 18, United States Code, Section 951(a).

3.      It was a part of the conspiracy that JI CHAOQUN agreed to assist Intelligence Officer A and the People's Republic of China by covertly serving as an agent of the People's Republic of China while residing in the United States.

4.      It was further part of the conspiracy that in 2013 and 2014, JI CHAOQUN traveled from Chicago to Beijing, China to meet with Intelligence Officer A.

5.      It was further part of the conspiracy that during JI CHAOQUN's trips to the People's Republic of China in 2013 and 2014, he met with Intelligence Officer A for the purpose of discussing and planning JI CHAOQUN's role as an agent of the People's Republic of China.

6.      It was further part of the conspiracy that while in the United States, JI CHAOQUN communicated with Intelligence Officer A, including by email and text message.

7.      It was further part of the conspiracy that Intelligence Officer A instructed JI CHAOQUN to obtain from Companies A, B, and C background reports of multiple individuals in order to circumvent restrictions set by Companies A, B, and C on purchases made outside of the United States.

8.      It was further part of the conspiracy that while in the United States, JI CHAOQUN purchased and obtained background reports requested by Intelligence Officer A of certain naturalized United States citizens, who were born in Taiwan or China and worked in the United States at companies in the science and technology industry, including cleared United States defense contractors.

9.      It was further part of the conspiracy that JI CHAOQUN emailed the background reports to Intelligence Officer A in a manner that disguised the true nature of the reports and that Intelligence Officer A was the intended

6

recipient of the email and background reports.

10.     It was further part of the conspiracy that JI CHAOQUN was provided
        money by Intelligence Officer A as compensation and to reimburse JI
        CHAOQUN for expenses JI CHAOQUN incurred in obtaining the
        background check reports.

11.     It was further part of the conspiracy that JI CHAOQUN joined the United
        States Army as a means to obtain United States citizenship via the
        MAVNI program and to gain access to sensitive and classified information
        for the People's Republic of China.

12.     It was further part of the conspiracy that JI CHAOQUN concealed,
        misrepresented, and hid and caused to be concealed, misrepresented, and
        hidden, the existence and purpose of the conspiracy and the acts done in
        furtherance of the conspiracy.

13.     In furtherance of the conspiracy and to effect its objects and purposes, JI
        CHAOQUN committed and caused to be committed the following overt
        acts, among others, within the Northern District of Illinois and elsewhere:

            a.  Between on or about December 9, 2013, and on or about July 6,
            2014, JI CHAOQUN traveled between Chicago and Beijing, China
            on multiple occasions.

            b.  On or about December 18, 2013, JI CHAOQUN and
            Intelligence Officer A met in China.

            c.  On or about January 10, 2014, JI CHAOQUN and Intelligence
            Officer A met in China.

            d.  From on or about August 25, 2015, through on or about August
            31, 2015, Intelligence Officer A and JI CHAOQUN exchanged text
            messages in which Intelligence Officer A directed JI CHAOQUN
            to send Intelligence Officer A the background reports.

            e.  On or about August 30, 2015, while he was in the United
            States, JI CHAOQUN purchased background reports from
            Companies A, B, and C.

            f.  On or about August 30, 2015, JI CHAOQUN made the
            background check information available to Intelligence Officer A
            in an email addressed to a third party.

g.  On or about September 18, 2015, while he was in the United States, JI CHAOQUN purchased a background report from Company A.

h.  On or about September 18, 2015, JI CHAOQUN made background check information available to Intelligence Officer A in an email addressed to a third party.

All in violation of Title 18, United States Code, Section 371.

(Indictment, Dkt. # 32, ¶¶ 2-13.)

"[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *United States v. Troutman*, 572 F. Supp. 2d 955, 960 (N.D. Ill. 2008) (citation omitted).  Yet Defendant asks the Court to view the allegations in the indictment in just this manner when he contends that "with respect to the 'acting' element, [he] is forced to prepare a defense to virtually every action he took in the United States from August 28, 2013 until September 25, 2018 – an over five-year period." (Def.'s Mem. Supp. Mot. Dismiss, Dkt. # 70, at 4-15.)  Given the detailed allegations in Count One, the Court finds Defendant's challenge to Count Two to be unavailing.  The indictment as a whole sets forth the elements of the offense, fairly informs Defendant of the nature of the charges against him, and enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense.

Defendant next moves to dismiss Counts Three through Five, which allege a wire-fraud scheme, arguing that they fail to state an offense.  "To establish that [Defendant] committed wire fraud, the government ha[s] to prove that: (1) [Defendant] participated in a scheme to defraud; (2) with intent to defraud; and (3) interstate wires were used in furtherance of the fraud." *United States v. Bloom*, 846 F.3d 243, 250 (7th Cir. 2017).  As is relevant here, a scheme to defraud is defined in the Seventh Circuit Pattern Criminal Jury Instructions as a "scheme that is intended to deceive or cheat another and to obtain money or property . . . by  means of materially false or fraudulent pretenses, representations or promises."  Pattern Crim. Jury Instructions 7th Cir. (2012 ed.) (plus 2015-2019 changes), 18 U.S.C. §§ 1341 & 1343 Scheme to Defraud – Definition, at 427.  "A scheme is a plan or course of action formed with the intent to accomplish some purpose." *Id*.

According to Defendant, the alleged lies relating to his immigration status are not and could not be part of the alleged scheme to defraud.  Specifically, Defendant asserts that "in order to defraud the United States Army, and commit a violation of United States law, one necessarily must be present in the United States," so there is "simply not a plausible nexus between the alleged steps necessary to maintain physical presence in the United States and the alleged scheme, at least one that does not test the absolute outer limits of relevancy." (Def.'s Reply Supp. Mot. Dismiss Counts One Through Five, Dkt. # 80, at 8.)  As such, Defendant argues, "the

indictment's reference to lies [as part of the] immigration [process] could not logically be considered as part of the alleged scheme." (*Id*.) The Court disagrees. As the government notes, Defendant could not enlist in the U.S. Army, be paid for his work as a U.S. Army reservist, or obtain citizenship via the MAVNI program without lawful immigration status. Thus, the alleged lies Defendant told as part of the immigration process are the foundation of the scheme.

Defendant also argues that the indictment fails to allege a scheme to defraud, contending that the allegations set forth only false statements rather than a scheme. The Court is not persuaded. The indictment alleges that Defendant engaged in a scheme to defraud the United States of money and property by signing and submitting an enlistment contract to join the U.S. Army in order to obtain U.S. citizenship; stating on his background report for enlisting in the Army that he had not had any contact with a foreign government or its representative when he had; indicating on a visa form and a Form I-20 that he was employed by Company D when he was not; submitting as part of his background investigation interview the Form I-20, which fraudulently listed his employment at Company D; and responding "no" to a written question asking whether a relative or associate has ever been a member of the Ministry of State Security, the intelligence and security agency for the PRC ("MSS"), when Defendant knew that Individual A was a representative of or supported the MSS. These allegations sufficiently describe a plan or course of action formed with the intent to defraud the U.S. Army, and the government will be held to its proof beyond a reasonable doubt at trial. Accordingly, this basis for dismissal is denied.

Defendant also argues that the indictment fails to allege money or property as the object of the scheme. But as alleged, all of Defendant's conduct was material to his application to enlist in the U.S. Army, and in turn, his ability to be employed by the Army Reserves, for which he was paid. (Indictment, Dkt. # 32, at 8-10.) Indeed, Counts Three through Five expressly allege that the U.S. Army wired money to Defendant while he was employed as an Army reservist. The Court finds these allegations sufficient to allege a scheme to defraud the government of money or property. To the extent the indictment includes allegations indicating that Defendant sought to receive benefits pursuant to the scheme other than money or property, such as U.S. citizenship or enlistment in the Army, the Court sees no basis to strike these allegations as surplusage under Rule 7(d), as Defendant requests. For all of the reasons stated above, Defendant's motion to dismiss the indictment is denied.

Defendant also moves for a bill of particulars. "The key question when determining whether a bill of particulars is necessary is whether the defendant has been 'sufficiently apprised of the charges against him in order to enable adequate trial preparation.'" *United States v. Modugumudi*, No. 18 CR 262, 2020 WL 733102, at *2 (N.D. Ill. Feb. 13, 2020) (citation omitted). "'[A] bill of particulars is unnecessary if the information the defendant seeks is readily available through alternate means such as discovery.'" *Id*. (citation omitted). As noted above, the indictment cites the relevant statutes and sets forth the elements of the charged offenses, the

dates of the offenses, and detailed allegations of the conduct supporting the alleged offenses.[1]  In addition, the government states in its response to the motion for a bill of particulars that it has produced "voluminous" discovery required pursuant to Rule 16 and Section 3500 of Title 18, including "materials [allegedly] stolen by [D]efendant from Company A, all FBI reports of interviews and investigations, all transcripts of grand jury testimony, all returns of email search warrants, and all records obtained in response to grand jury subpoenas (such as bank and other financial records)." (Gov't's Resp., Dkt. # 78, at 3.)  Nevertheless, Defendant asks that the government be directed to file a bill of particulars which provides, among other things, the identity and role of all alleged coconspirators; the nature and scope of the conspiratorial agreement and how Defendant hid or caused to be concealed its existence and purpose; a description of all acts Defendant performed as an unregistered foreign agent, including the date, time, and location of those acts, and under whose authority he was working; the manner and means through which Defendant devised and participated in the alleged fraudulent scheme; and any and all "other" material false statements Defendant is alleged to have made in relation to the U.S. Army's background investigation. (Def.'s Mot. Bill Particulars, Dkt. # 72 , at 12-14 .)  According to Defendant, "as the indictment is currently written, [he] is forced to prepare a defense to virtually every action he took in the United States from August 28, 2013 until September 25, 2018." (*Id*. at 14.)

The Court is not convinced.  An "indictment is not required to 'detail every factual nugget necessary for conviction,' nor is it required to 'allege in detail the factual proof that will be relied on to support the charges.'" *United States v. Brinkley*, No. 18 CR 21, 2019 WL 1856959, at *2 (N.D. Ind. Apr. 25, 2019) (citation omitted).  Defendant is essentially asking the government to do just that.  The indictment and abundant discovery sufficiently apprise Defendant of the charges against him in order to allow him to adequately prepare for trial and avoid any double jeopardy concerns.  Accordingly, Defendant's motion for a bill of particulars is denied.

**Date**: April 7, 2020

**Ronald A. Guzmán**
**United States District Judge**

---

[1]  It is worth noting that the first *seven* pages of Defendant's motion for a bill of particulars is a recounting of the detailed allegations in the indictment.