IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR PRETRIAL RELEASE

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to 18 U.S.C. § 3142, as well as the Due Process Clause and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendment to the Constitution of the United States, respectfully urges this Court to authorize his pretrial release.

In support of this motion, Mr. Ji, through counsel, submits the following:

### I. Background

1. On September 21, 2018, a criminal complaint was filed in this district alleging that from on or about August 28, 2013 to on or about September 21, 2018, Ji Chaoqun committed a violation of 18 U.S.C. § 951 in that he did knowingly act in the United States as an agent of a foreign government without providing prior notification to the Attorney General. Dkt. # 1.

2. On September 25, 2018, Mr. Ji was arrested and subsequently appeared before Magistrate Judge Michael T. Mason for his initial appearance. Dkt. # 9. At that time, Mr. Ji, through counsel, waived his right to a detention hearing without prejudice. *Id*.

3. On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32.

4. Mr. Ji, through counsel, now requests that the Court hold a detention hearing, and because, as will be described further herein, he does not pose a *serious* risk of flight or *serious* risk of obstruction or witness tampering, and the fact that other compelling reasons exist, authorize his release subject to the least restrictive conditions necessary to guard against any ostensible risk.

II. Discussion

A. Legal Standard

5. In our society, liberty is the norm and pretrial detention is the carefully limited exception. *United States v. Salerno*, 481 U.S. 739, 755 (1987). Indeed, the "'passage of the pretrial detention provision of the 1984 [Bail Reform] Act did not . . . signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial.' Rather, Congress was demonstrating its concern about a small but identifiable group of individuals as to whom pretrial release is inappropriate." *United States v. Westbrook*, 780 F.2d 1185, 1189 (5th Cir. 1986) (quoting *United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (en banc)).

6. The violations alleged in the indictment, 18 U.S.C. §§ 371, 951, 1343, and 1001(a)(2), are not offenses that trigger a rebuttable presumption and the analysis that follows as provided in 18 U.S.C. § 3142(f)(1). Instead, the only legal basis for Mr. Ji's continued detention is provided in § 3142(f)(2), which states:

[t]he judicial officer shall hold a hearing to determine whether any conditions or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community . . . in a case that involves . . . (A) a *serious* risk that such person will flee; or (B) a *serious* risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror. (emphasis added).

**B.  Mr. Ji Does Not Pose a Serious Risk of Flight.**

7.      Absent an offense for which detention is presumptively mandatory under § 3142(f)(1), or other qualifying factor listed in subsection (f), the government must demonstrate that Mr. Ji poses either a *serious* risk of flight by a preponderance of the evidence or a serious risk of obstruction or witness tampering by clear and convincing evidence. *See United States v. Khalaf*, 59 F.3d 1243 (5th Cir. 1995); *United States v. Marinez-Patino*, 2011 WL 902466, at *3 (N.D. Ill. Mar. 14, 2011). As to what constitutes a "serious" risk, given § 3142 differentiates that risk from the "ordinary" risk of flight attendant in any criminal case, the principles of statutory construction dictate that the concept should certainly be understood as some level of greater risk. *Cf. Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004); *Bloch v. Frischholz*, 587 F.3d 771, 785 (7th Cir. 2009) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)).

8.      With respect to Mr. Ji, his personal background and unique circumstances favor finding that the risk of flight he presents is slight, if any, and certainly far from serious. Mr. Ji is an individual who moved his life to the United States over five years ago, in 2013, and has called Chicago his home ever since. During that time, he studied at the Illinois Institute of Technology where he earned his Master's Degree in electrical engineering. Notably, since arriving in the United States on August 28, 2013, Mr. Ji has reportedly not returned to China since he left on December 22, 2014 and returned on February 3, 2015. Mr. Ji has no criminal history, no history of non-

appearances, bond forfeitures, substance abuse concerns that other defendants present, or other traditional indicia of flight risk. *Cf. United States v. Westbrook*, 780 F.2d 1185, 1189 (5th Cir. 1986) (finding the district court's decision supported by the evidence due to defendant's three prior convictions for violent felonies).

9.       Moreover, while the Court can and should give consideration to the possible penalties Mr. Ji faces upon conviction, *see United States v. Diaz*, 777 F.2d 1236, 1238 (7th Cir. 1985) (noting that the risk of flight increases with the severity of the possible penalty upon conviction), the penalties Mr. Ji faces upon conviction are significantly less than many other defendants with cases pending in this building. 18 U.S.C. § 371 carries a maximum possible sentence of only five years' imprisonment. 18 U.S.C. § 951 carries a maximum possible sentence of only ten years' imprisonment. 18 U.S.C. § 1001(a)(2) carries a maximum possible sentence of only five years' imprisonment. And although he is also charged with wire fraud in violation of 18 U.S.C. § 1343, given the diminutive loss amount, his likely guidelines range for that offense would be at the shallow end of the table, measuring in months as opposed to years. In fact, in the past few years, prosecutions principally centered on violations of 18 U.S.C. § 951 have been on the rise, and in most cases, defendants typically receive only a couple years' imprisonment. *See, e.g., United States v. Lin*, 15 CR 601 Dkt. # 174 (E.D.N.Y.) (five years' probation for airline manager who abused her privileges to transport packages on behalf of PRC military officials); *United States v. Zhang*, 19 CR 80056 (S.D. Fla.) (eight months' imprisonment for Chinese individual who lied to federal agents in an effort to gain access to President Trump in Mar-A-Lago); *United States v. Butina*, 18 CR 218 (Dist. D.C.) (Russian foreign agent meddling in United States' election and politics sentenced to 18 months' imprisonment); *United States v. Patten*, 18 CR 260 (Dist. D.C.) (Ukrainian foreign agent, who

engaged in lobbying activities along with Konstantin Kilimnik, sentenced to three years' probation for FARA violation); *United States v. Qianli*, 18 CR 10035 (S.D. Fla.) (defendant sentenced to 12 months' imprisonment for photographing and sketching defense installations); *United States v. Buryakov*, 15 CR 73 (S.D.N.Y.) (Russian foreign agent sentenced to 30 months' incarceration for activities centered around recruiting intelligence sources and gathering publicly available information on behalf of Russia); *United States v. Ben Israel*, 13 CR 572 (N.D. Ill.) (defendant sentenced to seven months' incarceration for § 951 violation related to lobbying activities on behalf of Robert Mugabe's regime in Zimbabwe); *United States v. Turner*, 13 CR 572 (N.D. Ill.) (codefendant received 15 months' incarceration); *United States v. Souied*, 11 CR 494 (E.D. Va.) (defendant sentenced to 19 months' incarceration for conducting surveillance on dissidents on behalf of Assad regime); *United States v. Kang*, 08 CR 210 E.D. Va.) (defendant received 18 months after pleading guilty to a § 951 offense for providing a Chinese government official with sensitive U.S. government information including national defense information classified as "secret"); *United States v. Li*, 07 CR 2915 (S.D. Cal.) (Chinese woman sentenced to a year and a day term of incarceration for attempting to buy military equipment used to gauge the power of nuclear explosions for export to China); *United States v. Al-Awadi*, 07 CR 20314 (E.D. Mich.) (defendant sentenced to 18 months' imprisonment for reporting to Iraqi intelligence about Iraqi dissidents in the United States and Canada); *United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2005) (foreign agent of Saddam Hussein's regime sentenced to 46 months' incarceration after conviction at trial); *United States v. Yui-Mak*, 05 CR 293 (C.D. Cal.) (11 months' imprisonment for defendant guilty of stealing sensitive military technology); *United States v. Latchin*, 04 CR 661 (N.D. Ill.) (defendant sentenced to four years' imprisonment after being

convicted of, *inter alia*, **§** 951 violation through his alleged actions as a "sleeper" spy for Saddam Hussen's regime).

10.      To the extent the Court finds that there is in fact a serious risk of flight present, there are a number of conditions it can nonetheless impose on Mr. Ji's release that offer far more than reasonable assurances of his appearance. *See Orta*, 760 F.2d at 892 (noting that the defendant is not required to make any *guarantees* in order to justify pretrial release; rather, only the *reasonable assurance* that the defendant is not a flight risk) (emphasis added). Mr. Ji can be required to surrender any documents *i.e.* his passport that permit international travel.

11.      Furthermore, as part of his conditions of release, Mr. Ji and his family are prepared to rent him an apartment—within whatever proximity to the Dirksen Federal Building the Court requires—and he can be subject to some manner of home confinement, as well as required to submit to electronic monitoring. *See United States v. O'Brien*, 895 F.2d 810, 814 (1st Cir. 1990) (narcotics defendant who posed serious risk of flight nevertheless overcame presumption against pretrial release where defendant consented to wear electronic monitoring bracelet and offered residence as security). Through those means, pretrial services will be able to maintain a constant level of awareness as to Mr. Ji's whereabouts, as well as preclude his ability to travel internationally.

12.      Further still, Mr. Ji is prepared to retain the services of a private security firm to act as a third-party custodian, providing as much additional monitoring as is required. *See United States v. Boustani*, 356 F. Supp. 3d 246, 255 (E.D.N.Y. 2019) (Kuntz, J.) (recognizing employment of private security firm can mitigate risk of flight).

13.      Given the unique circumstances of this case, other comparable defendants are not all that common. Even so, releasing Mr. Ji on appropriate conditions would place this Court well in

line with other district courts across the country who have considered the propriety of release for other foreign defendants facing serious, felony charges and lengthy potential sentences. *See, e.g., United States v. Zheng*, 20 CR 10015 (D. Mass.) Dkt. # 16 (defendant released on bond over government objection, despite allegations that he smuggled vials of biological materials onto flight in effort to aid PRC medical research efforts); *United States v. Abouammo*, 19 CR 621, Dkt. # 22, 23 (N.D. Cal.) (defendant released on $50,000 unsecured bond despite § 951 and document destruction charges pertaining to obtaining private "Twitter" data on behalf of Saudi Arabia; government's appeal of magistrate's decision denied); *United States v. Liu*, 19 CR 804 Dkt. # 4 (S.D.N.Y.) (defendant released on electronic monitoring despite allegations of visa fraud conspiracy for the benefit of PRC officials); *United States v. Qin*, 18 CR 10205 Dkt. # 83 (D. Mass.) (defendant given secured bond despite charges of conspiracy to commit export violations, visa fraud, false statements, money laundering, and smuggling); *United States v. Lin*, 15 CR 601 Dkt. # 4, 34, 42, 74, (E.D.N.Y.) (bond given to defendant facing § 951, fraud, obstruction, and structuring charges despite allegations that defendant used position as airlines counter agent to smuggle items and carry out other tasks for PRC officials); *United States v. Chen*, 14 CR 149 Dkt. # 12 (S.D. Ohio) (defendant charged with theft of United States property, accessing U.S. databases without authority, and false statements, released on own recognizance bond); *United States v. Hanson*, 613 F. Supp. 2d 85, 86 (D.D.C.) (granting pretrial release to defendant with strong ties to China, few ties to the United States, no job, a pending divorce, despite charges of illegally exporting autopilot components for unmanned aerial vehicles to China); *United States v. Chung*, 08 CR 24 Dkt. # 21 (C.D. Cal.) (defendant and former Boeing employee charged with economic espionage, conspiracy, § 951, and false statements released on $500,000 appearance bond); *United States v. Posada Carriles*, 481 F. Supp.

2d 792 (W.D. Tex. 2007) (defendant released despite "controversial past" including an escape from a foreign prison, a criminal record, and many supporters offering financial support based on community ties); *United States v. Karni*, 298 F. Supp. 2d 129, 130 (D.D.C. 2004) (defendant given bond, despite charges of smuggling devices that could trigger nuclear weapons to Pakistan, close ties to Pakistan and Israel, and long record of service in a foreign army).

## C. Mr. Ji Does Not Pose a Serious Risk of Obstruction or Witness Tampering.

14.     As mentioned, aside from serious risk of flight, in order to legally detain Mr. Ji, the government would have to show by clear and convincing evidence that he poses a *serious* risk of obstruction or witness tampering. *See Khalaf*, 59 F.3d 1243. Counsel does not know if the government intends to seek Mr. Ji's continuing detention on such a basis. As such, counsel will respectfully note that Mr. Ji has no history of any such allegation, and no indicia of the capacity or willingness to do so in his personal background. Should the government seek detention on this basis, counsel would ask for the opportunity to supplement argument on this point.

## D. The Exceptional Danger Presented by the COVID-19 Virus for Incarcerated Individuals.

15.     The world at large is in the midst of a global pandemic that is unprecedented in modern times.[1] COVID-19 is incredibly dangerous and infectious. With an incubation period as long as 14 days, it is known to produce fever, cough, fatigue, anorexia, shortness of breath, sputum production, and myalgias.[2] 20% of those infected are believed to experience severe symptoms, and

---

[1] The World Health Organization has expressly characterized the virus as a "pandemic." *See* WHO Characterizes COVID-19 as a Pandemic, World Health Organization, *available at* https://bit.ly/2W8dwpS (last accessed March 31, 2020).
[2] *See* Center for Disease Control, Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease (COVID-19), *available at* (https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html#foot09) (last accessed March 31, 2020).

the disease carries a mortality rate of approximately 2%–much higher than common influenza. *Id.* While some are more at risk than others, the entire population is vulnerable, and certainly capable of spreading the disease to others. In fact, tragically, an infant of nine-months-old recently succumbed to the illness in Chicago.[3]

16.    As of Monday, April 13, 2020, there are currently 1,883,119 cases confirmed globally, 560,891 in the United States, and many more likely already due to lack of testing in many areas and the manifestation of only mild symptoms in some individuals. *See* Johns Hopkins University & Medicine, Johns Hopkins Coronavirus Resource Center, *available at* https://coronavirus.jhu.edu/map.html (last accessed April 13, 2020). The death toll has risen to 117,560. *Id.* In Cook County itself, there have already been 14,585 confirmed cases and 485 deaths. *Id.*

17.    As a result, on March 28, 2020, Governor Pritzker passed Executive Order 2020-16.[4] This order effectively shut down all non-essential services in the State of Illinois, requiring residents to stay at home, practice social distancing (maintaining at least six feet of distance from others), and countless other measures. That order is likely to be extended until the end of April.[5]

18.    In an effort to combat the spread of the disease, our court system itself has by and large shut down as well. Most recently, on March 30, 2020, Chief Judge Pallmeyer issued a second amended general order, 20-0012, effectively striking all trial dates prior to June of 2020, continuing

---

[3] *See* St. Clair, Stacy & Reyes, Cecilia, Illinois Gov. J.B. Pritzker announces 13 more deaths linked to the coronavirus, including the stunning loss of an infant, Chicago Tribune, *available at* https://www.chicagotribune.com/coronavirus/ct-coronavirus-pritzker-presser-saturday-20200328-lgz3i2aoljgnvmu62yiamfjtje-story.html (last accessed March 31, 2020).

[4] https://www2.illinois.gov/Pages/Executive-Orders/ExecutiveOrder2020-16.aspx

[5] Sfondelas, Tina, Gov. Pritzker to extend stay-at-home order through April with schools to remain shuttered, Chicago Sun Times, *available at* (https://chicago.suntimes.com/coronavirus/2020/3/31/21201671/stay-at-home-order-extended-april-30-illinois-pritzker (last accessed March 31, 2020).

any sentencing and plea hearings scheduled before the end of May 2020, continuing other matters, expanding the use of videoconferencing, and globally excluding time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), until May 18, 2020 in the interests of justice.

19.     Our correctional facilities have become exceptionally dangerous places in light of this pandemic, and the MCC Chicago is no exception. The nearby Cook County Jail has already begun to see the disease rip through its facilities. As of March 31, 2020, the Cook County Sheriff's Office reports 141 detainees have tested positive, in addition to 25 staff members.[6] These self-reports, however, appear to grossly underestimate the actual number of cases. As the New York Times reports, Cook County Jail, with closer to approximately 355 cases, constitutes the single largest localized outbreak in the entire United States.[7] The Chicago Tribune reported on April 12, 2020 that a third inmate has passed away as a result of contracting the virus, and at least 254 detainees may have been infected.[8] As of April 7, 2020, dozens and dozens of staff members inmates in BOP facilities across the country have already tested positive, including 352 inmates, and 189 staff members. two of which were located in Chicago.[9]

20.     The virus is likely to continue to spread, continuing to change life as we know it for not only the next few weeks, but months to come, in both jails and society at large. Conditions of

---

[6] *See* Update on COVID-19 Cases at Cook County Jail, Cook County Sheriff's Office, *available at* https://www.cookcountysheriff.org/update-on-covid-19-cases-at-cook-county-jail-4/ (last accessed April 7, 2020).

[7] *See* Coronavirus in the U.S.: Latest Map and Case Count, New York Times, https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html (last accessed April 7, 2020).

[8] Fry, Page, Third inmate with COVID-19 at Cook County Jail Dies, Chicago Tribune, *available at* https://www.chicagotribune.com/news/breaking/ct-covid-jail-death-third-20200413-ob7u5h7ccfg4zo6fgy46p2zpqi-story.html (last accessed April 13, 2020).

[9] *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed April 7, 2020).

pretrial confinement create the ideal environment for the transmission of contagious diseases.[10] "Jails and prisons often lack sufficient hand washing areas, isolation rooms, and personal protective equipment." *Id.* For society at large, the disease is likely to continue to pose a public health emergency for months to come—with some estimates putting the total death toll in the millions.[11]

21.     The foregoing is simply a brief overview of the current state of this pandemic. The Court is certainly aware of the grave health risks it poses to all of society, and the risk to Mr. Ji as well. In passing the Bail Review Act, Congress recognized that, notwithstanding its other provisions, a judicial officer may order the release of a defendant for "another compelling reason." 18 U.S.C. § 3142(i). Courts have granted temporary release under Section 3142(i) when medical conditions so warrant. *See, e.g., United States v. Scarpa*, 815 F. Supp. 88, 89 (E.D.N.Y. 1993) (releasing defendant on house arrest after concluding the detention facility was unable to meet the defendant's medical needs); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 146 (D.P.R. 2002) (holding that the release of a partially paraplegic defendant to be treated by family members did not pose any threat to the community).

22.     And more to the point, many courts across the country have already recognized that the dangers posed by COVID-19 constitute a "compelling reason" justifying release under § 3142. *See, e.g., United States v. Tovar*, 19 CR 341, Dkt. # 42 (D. Idaho Apr. 2, 2020) (releasing defendant previously detained in presumption case after finding COVID-19 a compelling basis for release under § 3142(i)); *United States v. Meekins*, 18 CR 222, Dkt. # 75 (D.D.C. Mar. 31, 2020) (post-plea,

---

[10] Bick, Joseph, Infection Control in Jails and Prisons. Clinical Infectious Diseases, 45 (8): 1047-1055, available at: https://doi.org/10.1086/521910 (last accessed March 30, 2020)

[11] *See* Yong, Ed, How the Pandemic Will End, The Atlantic, https://www.theatlantic.com/health/archive/2020/03/how-will-coronavirus-end/608719/ (last accessed March 31, 2020).

pre-sentence release order releasing defendant with three pending assault charges due to extraordinary danger COVID-19 poses to detainees); *United States v. Davis*, 20 CR 09, Dkt. # 21 (D. Md. Mar. 30, 2020) (releasing defendant, *inter alia*, due to the "urgent priority" of protecting both the defendant and the community); *United States v. Hector*, 18 CR 002, Dkt. # 748 (W.D. Va. Mar. 27, 2020) (granting release pending sentencing after Fourth Circuit remanded detention decision requiring court to specifically consider extraordinary danger posed by COVID-19); *United States v. Kennedy*, 18 CR 20315, Dkt. # 77 (E.D. Mich. Mar. 27, 2020) (post-plea, presentence release of defendant whose pretrial release was revoked because "the COVID-19 pandemic constitutes an independent compelling reason" for temporary release and "is necessary for Defendant to prepare his pre-sentence defense"); *United States v. Mclean*, 19 CR 380, Dkt. # 21 (D.D.C. Mar. 28, 2020) ("[a]s counsel for the Defendant candidly concedes, the facts and evidence that the Court previously weighed in concluding that Defendant posed a danger to the community have not changed – with one exception. That one exception – COVID-19 – however, not only rebuts the statutory presumption of dangerousness . . . but tilts the balance in favor of release"); *United States v. Michaels*, 16 CR 76, Dkt. # 1061 (C.D. Cal. Mar. 26, 2020) ("Michaels has demonstrated that the Covid-19 virus and its effects in California constitute 'another compelling reason'" justifying temporary release under § 3142(i)); *United States v. Jaffee*, 19 CR 88 (D.D.C. Mar. 26, 2020) (releasing defendant with criminal history in gun and drug case, citing "palpable" risk of spread in jail and "real" risk of "overburdening the jail's healthcare resources"; "the Court is . . . convinced that incarcerating the defendant while the current COVID-19 crisis continues to expand poses a greater risk to community safety than posed by Defendant's release to home confinement"); *United States v. Harris*, 19 CR 356 (D.D.C. Mar. 26, 2020) ("[t]he Court is convinced that incarcerating Defendant while the current

COVID-19 crisis continues to expand poses a far greater risk to community safety than the risk posed by Defendant's release to home confinement on . . . strict conditions"); *United States v. Perez*, 2020 WL 1329225, *1 (S.D.N.Y. Mar. 19, 2020) (releasing defendant due to the "heightened risk of dangerous complications should he contract COVID-19"); *United States v. Stephens*, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (releasing defendant in light of "the unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic"); *In re Manrigue*, 2020 WL 1307109 (N.D. Cal. Mar. 19, 2020) ("[t]he risk that this vulnerable person will contract COVID-19 while in jail is a special circumstance that warrants bail").

22.     Thus, counsel and Mr. Ji further submit that his release, subject to the least restrictive conditions necessary, is appropriate—both as a result of the pandemic standing alone and also when considered in conjunction with the other information presented herein.

## III.     Conclusion

23.     For the reasons set forth herein, Mr. Ji, through counsel, respect submits that there is no basis within 18 U.S.C. § 3142 to continue his detention, or to the extent the Court disagrees, a combination of conditions that can reasonably assure his appearance when required. Therefore, counsel urges this Court to exercise its discretion pursuant to 18 U.S.C. § 3142 and order Mr. Ji's pretrial release in accordance with the least restrictive conditions that this Court deems necessary to ensure Mr. Ji's appearance.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on April 13, 2020, I electronically filed the foregoing **Defendant's Motion for Pretrial Release** with the Clerk of the U.S. District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com