IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
MOTION TO QUASH THE GOVERNMENT'S RULE 17 SUBPOENA
ISSUED TO THE MCC; AND FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

I. Background ......................................................................................... 1-2

II. Discussion ......................................................................................... 3-15

    A. Legal Background ................................................................. 3-5

    B. Ji Chaoqun Has Standing to Challenge the Subpoena Regardless
       of the Fact that Standing is Not Required ....................................... 5-6

    C. The Government's Subpoena Should be Quashed Because
       it Lacks Specificity ................................................................. 6-10

    D. The Government's Subpoena Further Violates Rule 17(h)'s
       Prohibition on Subpoenas for Witness Statements ..................................... 10-15

       i. Criminal Defendants Categorically Qualify as a "Witness
         or Prospective Witness" ........................................................ 10-13

       ii. Rule 17(h) Applies to Materials in the Possession of Third Parties .......... 13-15

III. Conclusion ....................................................................................... 15

# TABLE OF AUTHORITIES

**Amendments**

U.S. Const. amend. IV ...........................................................................................passim

U.S. Const. amend. V .................................................................................................1

U.S. Const. amend. VI ...............................................................................................1

**Cases**

*Bowman Dairy Co.*, 341 U.S. 214 (1951)
.....................................................................................................passim

*Burrage v. United States*, 134 S.Ct. 881 (2014)
...........................................................................................13

*Costello v. United States*, 350 U.S. 359 (1956)
.............................................................................................3

*In re Grand Jury Proceedings*, 1990 WL 116870 (9th Cir. 1990)
.............................................................................................3

*In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels)*,
767 F.2d 26 (2d Cir. 1985) ...............................................................3

*Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860 (7th Cir. 2016)
...........................................................................................11

*United States v. Amirnazmi*, 645 F.3d 564 (3rd Cir. 2011)
.............................................................................................6

*United States v. Apodaca*, 251 F. Supp. 3d 1 (D.D.C. 2017)
............................................................................................ 6

*United States v. Avenatti*, 2020 WL 508682 (S.D.N.Y. 2020)
.............................................................................................7

*United States v. Barnes*, 560 Fed. Appx. 36 (2d Cir. 2014)
...........................................................................................4, 7

*United States v. Benanti*, 2017 WL 78734 (E.D. Tenn. 2017)
...........................................................................................13

*United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015)
.................................................................................................passim

*United States v. Chavez*, 2020 WL 109703 (N.D. Cal. 2020)
.................................................................................................13

*United States v. Cuthbertson*, 630 F.2d 139 (3rd Cir. 1980)
.......................................................................................... 5, 7, 8

*United States v. Dupree*, 2011 WL 2006295 (E.D.N.Y. 2011)
.................................................................................................5

*United States v. Hill*, 645 F.3d 900 (7th Cir. 2011)
.................................................................................................10

*United States v. Hussain*, 2018 WL 1091083 (N.D. Cal. 2018)
.................................................................................................13

*United States v. Johnson*, 2014 WL 6068089 (N.D. Cal. 2014)
.................................................................................................13

*United States v. Libby*, 432 F. Supp. 2d 26 (D.D.C. 2006)
.................................................................................................4, 8

*United States v. Lusby*, 2018 WL 9816061 (D. Nev. 2018)
.................................................................................................6, 9

*United States v. MacKey*, 647 F.2d 898 (9th Cir. 1981)
.................................................................................................5, 7

*United States v. Nixon*, 418 U.S. 683 (1974)
.................................................................................................passim

*United States, v. Noriega*, 764 F. Supp. 1480 (S.D. Fla. 1991)
.................................................................................................passim

*United States v. Olofson*, 563 F.3d 652 (7th Cir. 2009)
.................................................................................................11

*United States v. Perez*, 2014 WL 12697319 (C.D. Cal. 2014)
.................................................................................................13

*United States v. Phoenix*, 2015 WL 6094882 (C.D. Cal. 2015) ..............................................................13

*United States v. R. Enterprises., Inc.*, 498 U.S. 292 (1991) ..............................................................3

*United States v. Richardson*, 2014 WL 6475344 (E.D. La. 2014) ..............................................................5

*United States v. Rivera*, 2015 WL 1540517 (E.D.N.Y. 2015) ..............................................................7

*United States v. Santiago-Lugo*, 904 F. Supp. 43 (D.P.R. 1995) ..............................................................6

*United States v. Star*, 470 F.2d 1214 (9th Cir. 1972) ..............................................................3

*United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2002) ..............................................................6, 9, 14

*United States v. Vasquez*, 258 F.R.D. 68 (E.D.N.Y. 2009) ..............................................................13

*United States v. Young*, 2004 WL 784840 (W.D. Tenn. 2004) ..............................................................13

*United States v. Zhu*, 2014 WL 5366107 (S.D.N.Y. 2014) ..............................................................13

## Rules

Fed. R. Civ. P. 45 ..............................................................14

Fed. R. Crim. P. 16 ..............................................................4, 14, 15

Fed. R. Crim. P. 17 ..............................................................passim

Fed. R. Crim. P. 26.2 ..............................................................passim

## Statutes

18 U.S.C. § 371 ..............................................................2

18 U.S.C. § 951 ...................................................................................................1, 2

18 U.S.C. § 1001 ........................................................................................................2

18 U.S.C. § 1343 ........................................................................................................2

18 U.S.C. § 3500 ..............................................................................................passim

**Other Authorities**

Merriam Webster Dictionary.....................................................................................11

The Law Dictionary..................................................................................................11

U.S.A.M. § 9-11.120 ..................................................................................................3

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS
### MOTION TO QUASH THE GOVERNMENT'S RULE 17 SUBPOENA
### ISSUED TO THE MCC; AND FOR A PROTECTIVE ORDER

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to Rule 17 of the Federal Rules of Criminal Procedure, the Due Process Clause and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendment to the Constitution of the United States, as well as the other authority cited herein, respectfully moves the Court: (1) to quash the government's May 30, 2019 subpoena issued to the Chicago Metropolitan Correctional Center ("MCC"), the jail where Mr. Ji is being detained while awaiting trial, for Mr. Ji's phone recordings, emails, and other materials; (2) to order the return or destruction of the already tendered material; and (3) to enter a protective order prohibiting the government from issuing additional Rule 17 subpoenas *duces tecum* without first obtaining leave of Court and upon notice to the defense.

### I.      Background

On September 21, 2018, a criminal complaint was filed in this district alleging that from on or about August 28, 2013 to on or about September 21, 2018, Ji Chaoqun committed a violation of 18 U.S.C. § 951 in that he did knowingly act in the United States as an agent of a foreign government without providing prior notification to the Attorney General. Dkt. # 1.

On December 6, 2018, the government issued a grand jury subpoena to the MCC for "all recorded phone conversations, call logs, and visitor logs" for Mr. Ji from October 10, 2018 up until the date of the subpoena. No issue is raised with respect to the propriety of the grand jury subpoena.

1

On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32.

On May 24, 2019, the government filed an agreed motion for the early return of trial subpoenas. Dkt. # 54. The motion was granted on May 29, 2019. Dkt. # 57.

Subsequent to the indictment, on May 30, 2019, the government issued a trial subpoena to the MCC, in essence requesting the same materials as the previous grand jury subpoena but from December 7, 2018 up until the date of this subpoena. A copy of this subpoena is attached hereto as Exhibit A.

This subpoena was deficient in a number of critical respects. Broad as it was, the subpoena did not and cannot satisfy *Nixon's* requirement of relevancy, admissibility, and most importantly, specificity. Nor was it proper for the government to subpoena the statements of prospective witnesses, including Mr. Ji himself, as that act is prohibited by Rule 17(h). For these reasons, counsel and Mr. Ji request that the Court order the return or destruction of the already tendered material, and enter a protective order prohibiting the government from issuing additional Rule 17 subpoenas *duces tecum* without first obtaining leave of Court and upon notice to the defense.

II.    Discussion

   A.  Legal Background

   Pre-indictment there is little impediment to a grand jury issuing a subpoena for a defendant's jail or prison calls, emails, or other statements and materials. *See United States v. R. Enterprises., Inc.,* 498 U.S. 292, 299 (1991); Fed. R. Crim. P. 17(c)(2) (allowing subpoenas to be quashed if they are "unreasonable or oppressive").

   At that time, grand jury subpoenas may be issued if related to the investigation of new or additional charges, but "the government should not use the grand jury for the sole purpose of pretrial discovery in cases in which an indictment has already been returned." *United States v. Star,* 470 F.2d 1214, 1217 (9th Cir. 1972); *In re Grand Jury Proceedings,* 1990 WL 116870, *2 (9th Cir. 1990) (grand jury subpoena cannot be used "to conduct discovery or to prepare the pending indicted cases for trial"); *In re Grand Jury Subpoena Duces Tecum Dated Jan. 2, 1985 (Simels),* 767 F.2d 26, 29 (2d Cir. 1985) ("[t]he law is settled in this circuit and elsewhere that it is improper to utilize a Grand Jury for the sole or dominating purpose of preparing an already pending indictment for trial"). The United States Attorney's Manual likewise recognizes that "[t]he grand jury's power . . . is limited by its function toward possible return of an indictment." *See* U.S.A.M. § 9-11.120 (citing *Costello v. United States,* 350 U.S. 359, 362 (1956)).

   From experience, it seems to counsel to be a common practice in this district for the United States Attorney's Office to issue grand jury subpoenas pre-indictment and Rule 17 subpoenas post-indictment when obtaining a defendant's jail calls, emails, other recorded statements, visitor logs, etc. This is what occurred here, as a grand jury subpoena issued on December 6, 2018 for all recorded

conversations, etc., and on May 30, 2019, a Rule 17 subpoena (labeled a "trial subpoena" and bearing the Court's name) issued for the same materials to date, returnable on June 13, 2019.

Rule 17 does not permit "fishing expeditions." *United States v. Nixon*, 418 U.S. 683, 700 (1974). Its history will be discussed in greater detail herein, but it is perhaps helpful to initially note that in *Bowman Dairy Co.*, the Supreme Court "recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases . . . [and] (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *Nixon*, 418 U.S. at 698-99 (citing *Bowman Dairy Co.*, 341 U.S. 214 (1951)). These "fundamental characteristics" have remained unchanged in the decades since *Bowman Dairy Co.* and *Nixon*: "[a] subpoena duces tecum may not be used for the purpose of discovery, either to ascertain the existence of documentary evidence, or to pry into the case of the [opposing party]." *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 175 (D.D.C. 2015) (Sullivan, J.) (internal citations omitted). Rather, one may "be used to obtain only evidentiary materials." *United States v. Libby*, 432 F. Supp. 2d 26, 30 (D.D.C. 2006) (Walton, J.). As the Second Circuit recently described, "[i]t was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms." *United States v. Barnes*, 560 Fed. Appx. 36, 39 (2d Cir. 2014) (quoting *Bowman Dairy Co.* 341 U.S. at 220).

To prevent and correct such abuses, Rule 17(c)(2) permits district courts to quash subpoenas where compliance would be "unreasonable or oppressive."[1] When a subpoena is challenged, the burden rests with the party issuing a subpoena to show "(1) relevancy; (2) admissibility; [and] (3)

---

[1] Constituting process issued on the authority of the Court and derivative of such authority, as will be discussed further, district courts need not look elsewhere for permission to supervise, control, modify, restrict, and/or quash and recall the issuance of Rule 17 subpoenas.

4

specificity." *Nixon, supra* at 700. In essence, "[t]he test . . . is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3rd Cir. 1980); *see also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (a Rule 17 subpoena "is not intended to serve as a discovery tool . . . or to allow a blind fishing expedition seeking unknown evidence") (internal citations omitted).

### B. Ji Chaoqun Has Standing to Challenge the Subpoena Regardless of the Fact that Standing is Not Required.

The issuance of Rule 17 subpoenas—and the propriety thereof—rests on the authority of the district court. District courts need not wait for a party or individual with "proper standing" to raise the fact that another improperly invoked the court's own authority to compel action beyond that authorized by Congress. The district court succinctly stated as much in *United States v. Noriega*, 764 F. Supp. 1480, 1494, n. 13 (S.D. Fla. 1991) where it rejected the government's argument that the defendant (Manuel Noriega) did not have standing to quash a subpoena for his jail calls: "[t]he court need not look to any litigant in order to quash a subpoena which seeks to usurp the court's exclusive authority to permit production of materials prior to trial."

In *United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 175 (D.D.C. 2015) (Sullivan, J.), the district court recognized standing exists to quash a Rule 17 subpoena—even one issued to third parties—if the material sought infringes the movant's rights or legitimate interests. And perhaps most importantly, it cited a wealth of authority recognizing that courts are required to make an independent inquiry into a subpoena's legality when brought to their attention, given that the authority to issue one is derived from the court itself. *Id.* (citing, *inter alia*, *United States v. Richardson*, 2014 WL 6475344, *2 (E.D. La. 2014); *United States v. Dupree*, 2011 WL 2006295, *3 (E.D.N.Y.

2011); *United States v. Tucker*, 249 F.R.D. 58, 60 n. 3 (S.D.N.Y. 2002); *Bowman Dairy Co.*, 341 U.S. at 221 ("[t]he burden is on the court to see that the subpoena is good in its entirety and it is not upon the [subpoenaed party] to cull the good from the bad"); *United States v. Santiago-Lugo*, 904 F. Supp. 43, 48 (D.P.R. 1995) ("it is this court's duty to make certain that the subpoena power is invoked legitimately and legally")).

Numerous other courts have likewise recognized that defendants possess standing to challenge subpoenas seeking their recorded jail conversations, or at least address the merits of a third party subpoena without letting standing serve as an impediment to its consideration. *See, e.g.*, *United States v. Amirnazmi*, 645 F.3d 564 (3rd Cir. 2011) (considering motion to quash government subpoena for defendant's jail calls); *United States v. Lusby*, 2018 WL 9816061 (D. Nev. 2018) (same); *Apodaca*, 251 F. Supp. 3d at 7 (defendant lacked standing to challenge the issuance of a subpoena for recorded jail conversation on Fourth Amendment grounds, but could challenge the issuance of an administrative subpoena).

As the foregoing makes clear, standing is not a prerequisite to Mr. Ji challenging the government's Rule 17 subpoena. Were it at issue, Mr. Ji could nonetheless establish as much, given that the materials sought are his own conversations and other private information in which he at the very least has a "legitimate interest."

**C.  The Government's Subpoena Should be Quashed Because it Lacks Specificity.**

As was noted at the outset, when a subpoena is challenged, the burden rests with the party issuing a subpoena to show "(1) relevancy; (2) admissibility; [and] (3) specificity." *Nixon, supra* at 700. In essence, "[t]he test . . . is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."

*Cuthbertson*, 630 F.2d at 144; *see also MacKey*, 647 F.2d at 901 (a Rule 17(c) subpoena "is not intended to serve as a discovery tool . . . or to allow a blind fishing expedition seeking unknown evidence") (internal citations omitted). The government's subpoena cannot satisfy any of the requirements set forth in *Nixon*, and certainly not specificity.

In the context of jail recordings, this issue arises with some level of regularity when defendants seek to subpoena recordings of codefendants or cooperating witnesses. Courts faced with this issue have found that blanket subpoenas do not satisfy *Nixon's* "specificity" requirement. *See, e.g., United States v. Rivera*, 2015 WL 1540517, *4 (E.D.N.Y. 2015) (Matsumoto, J.); *United States v. Avenatti*, 2020 WL 508682, *4 (S.D.N.Y. 2020) (Gardephe, J.) ("[s]ubpoenas seeking 'any and all' materials, without mention of 'specific admissible evidence,' justify the inference that the [party] is engaging in the type of 'fishing expedition' prohibited by *Nixon*) (internal quotations omitted); *Barnes*, 560 Fed. Appx. at 39-40.

In *Binh Tang Vo*, the government submitted, without prior court approval, Rule 17 subpoenas for all recorded statements maintained by the local correctional facility for the defendant's two co-defendants. *Binh Tang Vo*, 78 F. Supp. 3d at 173. There was a procedural defect at issue as well, but in response to the defendant's argument that the subpoenas lacked specificity, the government responded:

> Undersigned government counsel have years of experience obtaining co-conspirator statements, statements against penal interest, and other evidence from recorded jail calls. In light of the extensive participation by Ms. Vo and Ms. Huynh in the fraudulent visa scheme, and because it appears likely that Ms. Vo and Ms. Huynh will be uncooperative witnesses at the trial of their brother and cousin, Binh Vo, the government properly issued subpoenas for Ms. Vo and Ms. Huynh's jail house recordings.

*Id*. at 180. At oral argument, the government added only that:

[T]he notion that we would not—in a conspiracy case where they know that a lot of communications happened over the phone, where the conspirators are family members, I don't see why anybody thinks that it would be a stretch of logic and reason for us to believe that when they are incarcerated here in the District of Columbia facing charges, that they would . . . say things that would be evidence that we could potentially even use in our case-in-chief. *Id.* at 180-81.

When it came time for ruling, Judge Sullivan began his opinion with a strong rebuke:

The government's power when prosecuting criminal cases is not infinite. Nor does it extend to any power not specifically forbidden by law. In this case, the government has ostensibly exercised the power to serve subpoenas duces tecum, a power provided by Federal Rule of Criminal Procedure 17. The government has not relied on any other authority for its actions, so it would seem obvious that the government may serve subpoenas only in a manner authorized by Rule 17. *Id.* at 173-74.

He ultimately granted the defense motion and quashed the subpoenas. One basis was that

the subpoenas lacked specificity:

The remainder of the government's written justification is that government counsel have experience obtaining evidence from jail phone calls in other cases and that the movants participated in the alleged conspiracy. How this provides the requisite specificity is unclear. Under the government's theory, a party need only assert experience obtaining evidence from the general category of document at issue and allege that the target was involved in the crime to obtain a subpoena. Specificity, by definition, requires more: A link that explains what the government expected to find and why it expected to find it. "[T]he specificity requirement could be satisfied if there is a 'substantial likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *Libby*, 432 F. Supp. 2d at 31 (quoting *Nixon*, 418 U.S. at 700). "'[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.'" *Id.* (quoting *Noriega*, 764 F. Supp. at 1493). The government had the opportunity to provide such a justification, but did not do so. Its assertion at oral argument that the movants would undoubtedly "say things that would be evidence that we could potentially even use in our case-in-chief," . . . is the type of vague justification that makes clear the subpoenas were "a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson*, 630 F.2d at 144.

The district court in *Noriega*, 764 F. Supp. at 1493, likewise issued a strong rebuke to the government in regard to its Rule 17 subpoena practice, where it, too, quashed a subpoena for the defendant's jail recordings:

> In this case, the prosecution could have no idea what was on the tapes since they did not even exist when the first subpoena was issued on February 8, 1990. It simply hoped to find something of possible value which might bolster its case against Noriega. The subpoenas thus constituted a broad dragnet aimed at bringing in anything and everything contained in the recordings regardless of their identifiable or foreseeable significance to the charges at issue. This is precisely the kind of unwarranted expedition which Rule 17(c) does not permit. As a result, a prison recording policy premised on legitimate security needs was transformed into freewheeling and open-ended discovery for the prosecution, though useless to be sure. That the recording itself was appropriate did not thereby grant the prosecution license to rummage through Noriega's conversations at will.

By contrast, in *Lusby*, 2018 WL 9816061, the district court upheld subpoenas seeking jail recordings of the defendant shortly after his arrest. It noted he was facing charges of knowingly failing to register as a sex offender and using false identities to evade detection. The government proffered that based on the identification and credit cards of others in the defendant's possession upon his arrest, and the belief that others were involved in the identity fraud, the defendant might contact others to ask them to destroy evidence. *Id*. at *1. The government further proffered that it expected the defendant to discuss how long he had been in Nevada without registering on the phone to his long-time girlfriend, based upon statements the girlfriend made at the time of defendant's arrest. *Id*. at *2. For those reasons, and because only two weeks' worth of calls were requested, the district court upheld this subpoena. *See also Tucker*, 249 F.R.D. at 66 (upholding defendant's subpoena for recording of government cooperating witness where narrowed and specific).

The foregoing makes clear that without a narrow, case-specific reason, which will be lacking in the majority of cases, the government cannot properly issue Rule 17 subpoenas for jail calls, recordings, etc. That is certainly the case here. Counsel submit there is no case-specific reason for

the government to believe its subpoena would yield trial evidence. It did not and cannot offer "[a] link that explains what the government expected to find and why it expected to find it." The same is true for "rational inferences" demonstrating the existence of specific documents that might contain "relevant and admissible evidence." Instead, the subpoena referenced no specific evidence at all, but instead, amounted to a "broad dragnet" seeking any and "all" recorded phone conversations, call logs, visitor logs, etc. for an over six month period. The subpoena must therefore be quashed.

**D. The Government's Subpoena Further Violates Rule 17(h)'s Prohibition on Subpoenas for Witness Statements.**

Rule 17(h) of the Federal Rules of Criminal procedure provides:

> No party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement.

By issuing a subpoena expressly targeting Mr. Ji's statements, let alone potentially others as well, the government's subpoena violated the plain dictates of this provision.

**i. Criminal Defendants Categorically Qualify as a "Witness or Prospective Witness."**

Subsection (h) does not provide a definition for its use of the phrase "witness or prospective witness." But given the Fifth Amendment's guarantees, in plain terms, a defendant could never be excluded from the definition of a "prospective witness" until after the government's case-in-chief and the colloquy with the court in which he or she voluntarily and intelligently declines to testify.

In any event, analyzing the definition of a statutory term always begins with the plain and ordinary meaning of the text. *See United States v. Hill*, 645 F.3d 900, 907 (7th Cir. 2011). Courts are directed to assume that "the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language

is conclusive." *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). This generally requires looking to the meaning of the word "at the time the statute was enacted, . . . often by referring to dictionaries." *Jackson v. Blitt & Gaines, P.C.*, 833 F.3d 860, 863 (7th Cir. 2016).

"In the primary sense of the word, a witness is a person who has knowledge of an event. As the most direct mode of acquiring knowledge of an event is by seeing it, 'witness' has acquired the sense of a person who is present at and observes a transaction."[2] Merriam Webster defines "witness" as "one that gives evidence," "specifically . . . one who testifies in a cause or before a judicial tribunal," and also "one who has personal knowledge of something."[3] More broadly all defendants based on the return of an indictment, but Mr. Ji certainly, fits squarely within the plain meaning of a "witness or prospective witness."

To exclude defendants from Rule 17(h)'s definition would thus require a clear intent from Congress to do so. Yet there is none that can be discerned. The Advisory Committee Notes indicate that subsection (h) was added to Rule 17 in 1979, and was "necessary in light of proposed rule 26.2, which deals with the obtaining of statements of government and defense witnesses." Subsection (h) of course contains an express reference to Rule 26.2. As the Rule 26.2 Advisory Committee Notes, in turn, indicate that the purpose of Rule 26.2 was to "place in the criminal rules the substance of what is now 18 U.S.C. § 3500 (the Jencks Act)."

Rule 26.2(f) does not define "witness," but in doing so, refers simply to a "witness's statement." 18 U.S.C. § 3500(e), on the hand, expressly limits "statements" to those "in relation to any witness called by the United States."

---

[2] What is Witness, n?, The Law Dictionary, *available at* https://thelawdictionary.org/witness-n/ (last accessed June 15, 2020).
[3] Witness, Merriam Webster, *available at* https://www.merriam-webster.com/dictionary/witness (last accessed June 15, 2020).

Rule 17(h) does not incorporate the Jencks Act—it incorporates Rule 26.2. As the cited language demonstrates, even though Rule 26.2 was a codification of the Jencks Act within the federal rules, it is not without critical differences.

Most significantly, as just touched upon, Rule 26.2(f), when compared with **§** 3500(e), **does not** expressly limit "statement" to being "in relation to any witness called by the United States." Second, going back to the text of Rule 17(h) itself, its plain language applies equally to both sides: "**[n]o party** may subpoena a statement of a witness or of a prospective witness under this rule." (emphasis added). And moreover, Rule 17 broadened the phrase "witness's statement" further than Rule 26.2 to include "a statement of a witness **or of a prospective witness**" (emphasis added). There is one "prospective witness" in each and every prosecution—the defendant. It seems likely then that subsection (h) meant to include the defendant within the term "witness." Regardless, there is certainly not an express indication to the contrary, and no basis to find the defendant-as-witness to be an implied exclusion from the rule.

The point becomes even more lucid upon digging deeper into the legislative history for Rule 26.2. As the 1979 Advisory Committee noted:

> [Rule 26.2] is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act.

Given that the express purpose of Rule 26.2 was to place defense and prosecution witnesses, and disclosures regarding their statements, "on the same legal footing,"[4] Rule 17(h)'s prohibition on issuing a subpoena for witness statements should apply not only by its plain terms to a subpoena for

---

[4] Subsection (h) was added to Rule 17 at the same time as Rule 26.2's creation in 1979. The Advisory Committee notes indicate that it was "necessary in light of proposed rule 26.2, which deals with the obtaining of statements of government and defense witnesses."

the defendant's statements, but *a fortiori* given its reference to Rule 26.2, and notwithstanding the Jencks Act roots of Rule 26.2.

Last on this point, given the plain language of Rule 17(h), reading the defendant out of the definition of "witness or prospective witness," and creating broader disclosure obligations for defendants' statements as compared to all others—especially since Rule 17(h) expressly applies to both parties ("no party. . .")—would violate the Rule of Lenity. *See Burrage v. United States*, 134 S.Ct. 881, 891 (2014) (noting that this rule prevents courts from giving the words of a criminal statute "a meaning that is different from [their] ordinary, accepted meaning, and that disfavors the defendant").

### ii. Rule 17(h) Applies to Materials in the Possession of Third Parties.

Following the Jencks Act, and its relationship to Rule 26.2 and Rule 17(h), some courts have concluded that subsection 17(h) applies only to statements in the possession of the parties. *See, e.g., United States v. Hussain*, 2018 WL 1091083, *2 (N.D. Cal. 2018) (Breyer, J.). Other courts have reached the same conclusion, while others still have disagreed.[5]

The correct reading, given the Rule's plain language, is to *not* infer or read into the statute an exclusion for "statements" in the possession of third parties. The Jencks Act was created with the one-sided purpose of restricting access to (government) witness statements for the purpose of witness safety. Rule 26.2 effectively abolished the one-sided nature of the Jencks Rule, expressly creating mutual obligations and limitations in codifying § 3500 within the federal rules. Rule 17(h)

---

[5] *See, e.g., United States v. Chavez*, 2020 WL 109703, *3-4 (N.D. Cal. 2020); *United States v. Young*, 2004 WL 784840, *2 (W.D. Tenn. 2004); *United States v. Johnson*, 2014 WL 6068089, *3 (N.D. Cal. 2014); *United States v. Perez*, 2014 WL 12697319, *2 (C.D. Cal. 2014); *see also United States v. Phoenix*, 2015 WL 6094882, *3 (C.D. Cal. 2015); *United States v. Benanti*, 2017 WL 78734, *3 (E.D. Tenn. 2017); *United States v. Zhu*, 2014 WL 5366107, *3 (S.D.N.Y. 2014); *United States v. Vasquez*, 258 F.R.D. 68, 73 (E.D.N.Y. 2009),

incorporated Rule 26.2. It could have incorporated § 3500, but Rule 26.2 was chosen instead. This unmoors it from the witness safety concerns to a limited extent—it remains an express purpose, but there is obviously no statutory concern of government interference with defense witnesses, and yet it applies to both parties equally. As it must apply equally, the goals of "witness safety" is better effected through restricted discovery; that is, not allowing either side to subpoena witness statements in the possession of third parties. Regardless of legislative intent, which is not clear, the starting point is always the plain language and meaning of the text itself. *See Hill*, 645 F.3d at 907. The text of Rule 17(h) is simple enough: "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule." There is no third-party limitation contained therein. Nor is the defendant excluded as a "prospective witness"—and this language broadened from § 3500 to Rule 26.2 and again to Rule 17(h). Limitations have to be read into the statute, or implied, and without an express intent from Congress, doing so would contravene the principles of statutory construction. Suffice to say, if Congress intended to limit subsection (h) to the parties alone, or excluded the defendant from the phrase "witness or of a prospective witness," it could have and must be assumed that it would have.

As a further consideration, the 1944 Advisory Committee notes state that Rule 17(c) "is substantially the same as rule 45(b) of the Federal Rules of Civil Procedure." The latter permits parties in a civil action to obtain discovery from non-parties by way of subpoena. "This . . . may indicate that the rule drafters initially thought Rule 17(c) would govern discovery from non-parties, while Rule 16 would govern discovery from the Government." *Tucker*, 249 F.R.D. at 62. Indeed,

throughout the text of Rule 17, it refers exclusively to and thus seemingly contemplates subpoenas to third parties.[6]

Further still, as was discussed earlier, central to the legislative intent in passing Rule 17, to which subsection (h) was eventually added, was that it was meant to allow trials to proceed more efficiently—not as a discovery device—and thus when in doubt subsection 17(h) is appropriately read to more broadly restrict discovery. *See Bowman Dairy Co.*, 341 U.S. at 214.

As the foregoing demonstrates, the protections afforded to witness statements by Rule 17(h) are plain: "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Statements of defendants are to be protected by subsection (h) the same as any other witness. That provision contains no limitation on materials in the hands of third parties, as opposed to the parties alone. Thus, the government's subpoena violates Rule 17(h).

## III. Conclusion

For the reasons set forth herein, Mr. Ji, through counsel, respectfully requests that the Court quash the government's May 30, 2019 subpoena issued to the MCC, order the return or destruction of the already tendered material, and enter a protective order prohibiting the government from issuing additional Rule 17 subpoenas *duces tecum* without first obtaining leave of Court and upon notice to the defense.

---

[6] For this reason, the fact that the Advisory Committee Notes to Rule 26.2 reference statements "in the possession of the defense" and "in the hands of the government" loses relevance, as again, Rule 17 is not concerned with discovery between the parties as the Jencks Act and Rule 16 are, or discovery at all, but with securing testimony and evidence from third parties for trial.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**


/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

16

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on August 11, 2020, I electronically filed the foregoing **Defendant's Memorandum of Law in Support of his Motion to Quash the Government's Rule 17 Subpoena Issued to the MCC; and for a Protective Order** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system, and in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, Local Rules 5.5 and 5.9, and General Order 16-0020.

<div style="margin-left:40%">

s/ Damon M. Cheronis

Damon M. Cheronis

Law Office of Damon M. Cheronis

140 S. Dearborn Street Suite 411

Chicago, Illinois 60603

(312) 663-4644

damon@cheronislaw.com

</div>