## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION
## TO QUASH THE GOVERNMENT'S RULE 17 SUBPOENA ISSUED
## TO THE MCC; AND FOR A PROTECTIVE ORDER

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, pursuant to Rule 17 of the Federal Rules of Criminal Procedure, the Due Process Clause and Effective Assistance of Counsel provisions of the Fifth and Sixth Amendment to the Constitution of the United States, respectfully submits the following reply in support of his motion to quash the government's Rule 17 subpoena issued to the MCC; and for a protective order.

### I.  Background

On January 24, 2019, the grand jury returned a six count indictment charging Mr. Ji with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371, one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a), three counts of wire fraud in violation of 18 U.S.C. § 1343, and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). Dkt. # 32.

On August 11, 2020, Mr. Ji, through counsel, filed a motion to quash the government's Rule 17 subpoena issued to the MCC; and for a protective order. Dkt. # 112; 113. In that motion, counsel

and Mr. Ji argued that the subpoena was improperly issued, eminently because it lacked specificity and violated Rule 17(h)'s prohibition on the issuance of subpoenas for witness statements. Thus, the subpoenaed materials should either be returned or destroyed, and no similar subpoenas should issue in the future without leave of court and notice to defense counsel.

The government submitted its response in opposition on September 1, 2020. Dkt. # 118. Mr. Ji, through counsel, now respectfully submits the following reply in order to discuss and clarify some of the issues raised by the government in its filing.

## II. Discussion

Initially, counsel notes that the government submitted that Mr. Ji "does not challenge the relevancy or the admissibility of the records sought." Dkt. # 118 p. 3. That is not the case, as Mr. Ji and counsel do in fact dispute the relevancy and admissibility of the records sought. To be clear, the defense's argument certainly focused on specificity. The reasoning behind doing so, to a significant extent, is because when a subpoena lacks specificity to a degree as substantial as the instant subpoena, the irrelevancy and inadmissibility of the records sought gets subsumed within that lacking specificity.

Indeed, in the following paragraph of its response, the government all but acknowledged it has no *specific* information supporting the specificity, relevancy, or admissibility of records targeted by a subpoena for "any and all" jail recordings and other materials for an approximate six month period. As it acknowledged, "[a] subpoena for prison phone calls cannot request specific phone calls because the government has to review the calls first before being able to identify the calls it is seeking." *Id.* at p. 4. This statement simply underscores the impropriety of the government's subpoena, because such a subpoena is not permitted "to serve as a discovery tool . . . or to allow a

blind fishing expedition seeking unknown evidence."[1] *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (citing, *inter alia*, *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)). In fact, the test is precisely that: "[t]he test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *United States v. Cuthbertson*, 630 F.2d 139, 144 (3rd Cir. 1980). Thus, by conceding it in fact has no specific information supporting any of the *Nixon* requirements, but instead that it "has to review the calls first before being able to identify" any conceivably specific, relevant, and inadmissible information, the government has illustrated the defense's point.

Later in its response, the only additional rationale the government offered in support of this subpoena was to argue, in summary, that "it is not inconceivable that the defendant may have communicated with representatives of the Chinese government which, aside from Consular Services, in and of itself may be incriminating." Dkt. # 118 p. 6. Respectfully, even a cursory review of the relevant law pertaining to this issue demonstrates the insufficiency of this ostensible justification.

*United States v. Binh Tang Vo*, 78 F. Supp. 3d 171 (D.D.C. 2015) provides just such an example, where the government offered a similar speculative justification in the context of a conspiracy. It stated:

> Undersigned government counsel have years of experience obtaining co-conspirator statements, statements against penal interest, and other evidence from recorded jail calls. In light of the extensive participation by Ms. Vo and Ms. Huynh in the fraudulent visa scheme, and because it appears likely that Ms. Vo and Ms. Huynh will be uncooperative witnesses at the trial of their brother and cousin, Binh Vo, the government properly issued subpoenas for Ms. Vo and Ms. Huynh's jail house recordings.

---

[1] Contrary to the government's interpretation, counsel is indeed suggesting that the instant subpoena was improperly issued as a discovery seeking device. *See* Dkt. # 118 p. 7.

*Id.* at 180. At oral argument, the government added only that:

> [T]he notion that we would not—in a conspiracy case where they know that a lot of communications happened over the phone, where the conspirators are family members, I don't see why anybody thinks that it would be a stretch of logic and reason for us to believe that when they are incarcerated here in the District of Columbia facing charges, that they would . . . say things that would be evidence that we could potentially even use in our case-in-chief. *Id.* at 180-81.

Again, Judge Sullivan's unequivocally rejected this argument, applicable as it is to conspiracies (which was also charged here) as it is to substantively acting as an unregistered foreign agent:

> Under the government's theory, a party need only assert experience obtaining evidence from the general category of document at issue and allege that the target was involved in the crime to obtain a subpoena. Specificity, by definition, requires more: A link that explains what the government expected to find and why it expected to find it. "[T]he specificity requirement could be satisfied if there is a 'substantial likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence." *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (quoting *United States v. Nixon*, 418 U.S. at 700). "'[I]f the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.'" *Id.* (quoting *Noriega*, 764 F. Supp. at 1493). The government had the opportunity to provide such a justification, but did not do so. Its assertion at oral argument that the movants would undoubtedly "say things that would be evidence that we could potentially even use in our case-in-chief," . . . is the type of vague justification that makes clear the subpoenas were "a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson*, 630 F.2d at 144.

Suffice to say, the "not inconceivable"—and indeed hypothetical—possibility of discovering an item of evidentiary value amidst half of a year worth of recordings and other records does not satisfy *Nixon's* specificity requirement, let alone relevancy and admissibility.

Nor does *United States v. Smith*, 2020 WL 4934990 (N.D. Ill. 2020) (Chang, J.) in any way alter this conclusion, despite the government's reliance. *Smith* involved charges of commodity futures spoofing where the Commodity Futures Trading Commission had retained an expert in an earlier,

parallel civil investigation. *Id.* at *1. That expert determined the defendant did not appear to be spoofing in the time period he reviewed—a conclusion favorable to the defense. *Id.* After the Department of Justice provided the defense nothing more than the bare bones conclusion, the defense issued a subpoena to the CFTC directly in an effort to obtain more information from the expert. *Id.* In quashing the defense subpoena issued to a third party, Judge Chang simply rejected "as a blanket rule," the proposition "that a Rule 17 subpoena to a non-party must . . . seek already-known admissible evidence." *Id.* at * 3. Instead, he read *Nixon's* admissibility requirement not as a "bright-line admissibility requirement" demanding "absolute certainty on admissibility," but instead one requiring "a sufficient *preliminary* showing" of as much. *Id.* Because the expert's opinions were protected by the deliberative process privilege, Judge Chang nonetheless quashed the defense subpoena. *Id.* at * 5.

Turning directly to the point, *Smith* offers no support to the government's position because it did not at all address in any degree of substance the specificity or relevancy requirements set forth in *Nixon*. At most Judge Chang read the "admissibility" requirement to be more relaxed than other district courts, but not in a manner that at all supports the government's position—again, even following Judge Chang's reading, the "not inconceivable" possibility that incriminating evidence exists amongst six months' worth of jail recordings and other records does not constitute a "sufficient preliminary showing" of admissibility, let alone satisfy the other *Nixon* requirements. Thus, for these reasons, and as discussed further in Mr. Ji's initial motion and memorandum, this subpoena issued in violation of Rule 17 and must be quashed.

Finally, counsel also argued that the instant subpoena was improper because it violated Rule 17(h)'s prohibition on subpoenas issued for the statement of a witness or a prospective witness. Dkt.

# 118 pp. 8-9. Counsel believes it is necessary only to further clarify the government's claim that "[u]nder the defendant's theory, the government would never be able to obtain a defendant's statement, in whatever form, once a case was indicted because of the chance that a defendant may testify." *Id*. at p. 8. Whether the government has other proper means of obtaining a defendant's statement post-indictment is not before the Court—the issue is narrowly whether Rule 17(h) authorizes it to do so as it did here—regardless of the multitude of other investigative means at the government's disposal to seek such evidence. As counsel argued, because Mr. Ji is a potential witness, and Rule 17 prohibits subpoenas targeting potential witness statements even in the possession of third parties[2], the subpoena violated Rule 17(h) and must be quashed for this additional reason.

## III.    Conclusion

For the reasons set forth herein, as well as in his initial motion and memorandum, Mr. Ji, through counsel, respectfully requests that the Court quash the government's May 30, 2019 subpoena issued to the MCC, order the return or destruction of the already tendered material, and enter a protective order prohibiting the government from issuing additional Rule 17 subpoenas *duces tecum* without first obtaining leave of Court and upon notice to the defense.

---

[2] Judge Chang's opinion in *Smith* constituted further support for this position. As he stated:

> There are good reasons to follow the example of the majority of Circuits and interpret the text of Rule 17 to require that third-party subpoenas only seek relevant, admissible, and specific evidence. For one, the text of Rule 17 assumes that there will be a witness at a trial or hearing. Section 17(a) says that the subpoena's content must "command the witness to attend and testify at the time and place the subpoena specifies." Fed. R. Crim. P. 17(a). Section 17(c)(1) similarly refers to "the witness" and early production of documents "before trial or before they are offered in evidence." Fed. R. Crim. P. 17(c)(1). So the rule itself assumes that the subpoena recipient is, at the very least, a potential witness at the trial or hearing. *Smith*, *supra* at * 2.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

<u>**CERTIFICATE OF SERVICE**</u>

I, Damon M. Cheronis, hereby certify that on October 6, 2020, I electronically filed the foregoing **of Defendant's Reply in Support of his Motion to Quash the Government's Rule 17 Subpoena Issued to the MCC; and for a Protective Order** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system, and in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, Local Rules 5.5 and 5.9, and General Order 16-0020.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com