IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| | ) | **No. 18 CR 611** |
| v. | ) | |
| | ) | |
| **Ji Chaoqun,** | ) | **Judge Ronald A. Guzmàn** |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to quash [112] is denied.

## STATEMENT

On December 6, 2018, the government issued a grand jury subpoena to the Metropolitan Correctional Center ("MCC") for "all recorded phone conversations, call logs, and visitor logs" for Defendant from October 10, 2018 to the date of the subpoena. On May 24, 2019, the parties filed an agreed motion for the early return of trial subpoenas pursuant to Federal Rule of Criminal Procedure 17(c)(1). (Dkt. # 54.) The motion stated that the parties wished to obtain "relevant information" and thus required return dates in advance of the trial date. On May 29, 2019, the Court granted the parties' motion. (Dkt. # 57.)

On May 30, 2019, the government issued a trial subpoena to the MCC, requesting essentially the same materials as the previous grand jury subpoena, but from December 7, 2018 until the date of the second subpoena. The trial subpoena had a return date of June 13, 2019. The MCC complied with the subpoena and provided the requested information to the government, which turned over a copy of the material to Defendant. According to Defendant, the subpoena does not satisfy the requirements necessary to support compliance. In addition, Defendant contends that it is improper for the government to subpoena the statements of prospective witnesses, including Defendant. Defendant moves to quash the subpoena, and further asks the Court to order the return or destruction of the already-tendered material and enter a protective order prohibiting the government from issuing additional Rule 17 subpoenas duces tecum without first obtaining leave of Court and upon notice to the defense.

"Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." *United States v. Nixon*, 418 U.S. 683, 701 (1974). Under Federal Rule of Criminal Procedure 17(c), a district court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). "[T]he Supreme Court has interpreted Rule 17's 'unreasonable or oppressive' standard to mean that a subpoena must request evidence that is (1) relevant, (2) admissible, and (3) specific." *United States v. Smith*,

No. 19 CR 669, 2020 WL 4934990, at *2 (N.D. Ill. Aug. 23, 2020).  Defendant contends that the specificity requirement has not been satisfied.

According to the government, Rule 17 subpoenas for a defendant's prison phone calls or visitor logs is a common practice that often yields identifiable evidence, and, in this case, the government's subpoena to the MCC was specific in the type of records it requested and the time period covered.  Defendant contends that the government's subpoena constitutes an improper fishing expedition, citing a case from the District of Columbia, in which the court stated:

> [I]f the moving party [seeking a subpoena] cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused.  The government had the opportunity to provide such a justification, but did not do so.  Its assertion at oral argument that the movants would undoubtedly "say things that would be evidence that we could potentially even use in our case-in-chief," . . . is the type of vague justification that makes clear the subpoenas were "a general 'fishing expedition' that attempts to use the rule as a discovery device."

*United States v. Binh Tang Vo*, 78 F. Supp. 3d 171, 181 (D.D.C. 2015) (citations and internal quotation marks omitted).  The court in *Vo* went on to state that:

> [s]pecificity, by definition, requires more:  A link that explains what the government expected to find and why it expected to find it.  [T]he specificity requirement could be satisfied if there is a 'substantial likelihood,' demonstrated through rational inferences, that the documents being sought contain relevant and admissible evidence.

*Id*. (internal citations and quotation marks omitted).

As an initial matter, the *Vo* court's issue with the government's subpoena rested in part on the government's failure to obtain court approval prior to issuing the subpoena.  Here, the parties jointly requested, and the Court granted, early return of trial subpoenas.  The *Vo* case is therefore distinguishable.  Moreover, the government's subpoena in the case at bar was not a random fishing expedition; it sought specific records (phone calls and visitor logs) from a certain time period.  The government is not required to know with certainty the exact evidence contained in the records before it may subpoena them; rather, the Court must determine whether there is a sufficient likelihood that the subpoenaed materials would result in the disclosure of relevant admissible evidence.  *See United States v. Nixon*, 418 U.S. 683, 700 (1974) ("[T]he contents of the subpoenaed tapes could not at that stage be described fully by the Special Prosecutor, but there was a sufficient likelihood that each of the tapes contains conversations relevant to the offenses charged in the indictment.")

As noted by the Supreme Court, the basis for any such analysis must be the charging document.  In this case, the indictment charges Defendant with conspiring with Chinese officials, who are not in custody.  Given the government's version of alleged events, which include

communications between Defendant and Chinese government officials in China, a rational inference can be drawn that Defendant's phone calls and visitor logs are likely to reveal admissible evidence in the government's prosecution of Defendant. Indeed, the very existence of phone calls to or from China, or Chinese officials, regardless of content, could itself be probative evidence of Defendant's ability to communicate with his alleged co-conspirators.[1] The Court then weighs that likelihood against the burden of complying with the subpoena. *See Smith*, 2020 WL 4934990, at *4 (noting that in applying the "unreasonable" standard articulated in Rule 17(c), "[t]he key is weighing the likelihood that the subpoena will uncover relevant evidence and the potential probative force of that evidence, against the burdens o[f] complying") (citing *Nixon*, 418 U.S. at 700). In this case, any burden is minor; indeed, Defendant does not argue that the request was impermissibly oppressive. The MCC keeps and provides these types of records on a regular basis, and there is no burden on Defendant whatsoever. The Court finds that the likelihood of the subpoena disclosing relevant admissible evidence far outweighs the burden of production in this case.

  Defendant also asserts that the subpoena violates Federal Rule of Criminal Procedure 17(h), which states that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule. Rule 26.2 governs the production of the statement." Fed. R. Crim. P. 17(h). According to Defendant, the term "prospective witness," as used in Rule 17(h), necessarily includes Defendant, until he invokes his right not to testify. Defendant's lack of citation to any authority for this interpretation of Rule 17(h) is itself telling, given that "the prosecution routinely invokes Rule 17 to subpoena *all* non-privileged recordings of jail-phone conversations of a detained defendant." *Id.* at *3 (emphasis in original); *see also Jennings v. United States*, No. 03 C 1436, 2003 WL 22937922, at *4 (N.D. Ill. Dec. 10, 2003) (stating that the government "can obtain copies of recordings lawfully made by the BOP simply by serving it with a subpoena").

  Moreover, Defendant's reading does not comport with the historical framework of the relevant rules. According to the advisory committee's notes, Federal Rule of Criminal Procedure 26.2, to which Rule 17(h) refers, states that:

> After a witness other than the defendant has testified on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the government or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

Fed. R. Crim. P. 26.2(a). The rule "is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500." Fed. R. Crim. P. 26.2, advisory committee's note. As summarized by one court, "Rule 26.2 and the Jencks Act, 18 U.S.C. § 3500, require production

---

[1] To the extent the *Vo* decision can be interpreted to conclude that such an inference is not reasonable or rational, this Court simply disagrees.

of a witness's statements once that witness has testified on direct examination." *United States v. Thomas*, No. 16 CR 30009, 2016 WL 6948444, at *2 (C.D. Ill. Nov. 28, 2016); *see also United States v. Johnson*, 200 F.3d 529, 534 (7th Cir. 2000) (stating that the purpose of the Jencks Act is to "afford the defense a basis for effective cross-examination of witnesses and the possible impeachment of their testimony without overly burdening the government with a duty to disclose all of its investigative material."). Rule 26.2 and the Jencks Act, then, are meant to allow an opposing party to obtain statements of a witness who has testified on direct examination for use in potentially impeaching that witness.

With this backdrop, Defendant contends as follows:

> Given that the express purpose of Rule 26.2 was to place defense and prosecution witnesses, and disclosures regarding their statements, "on the same legal footing," Rule 17(h)'s prohibition on issuing a subpoena for witness statements should apply not only by its plain terms to a subpoena for the defendant's statements, but *a fortiori* given its reference to Rule 26.2, and notwithstanding the Jencks Act roots of Rule 26.2.

(Def.'s Br. Supp. Mot. Quash, Dkt. # 113, at 12-13) (internal citation omitted). The Court is not persuaded. As an initial matter, the visitor logs and recordings were subpoenaed not to impeach Defendant in the event he testified at trial, but to uncover evidence against him. Moreover, as the government notes:

> . . . Rule 26.2 treats a defendant's testimony different from the testimony of other witnesses – Rule 26.2 specifically excludes the requirement that the defense produce the defendant's statements. The rule states "After a witness *other than the defendant* has testified on direct examination . . . ."
>
> Under the defendant's theory, the government would never be able to obtain a defendant's statement, in whatever form, once a case was indicted because of the chance that a defendant may testify. But because Rule 26.2 specifically excludes defendant's statements then, by extension, Rule 17(h) excludes them as well and does not prohibit the collection of defendant's statements through Rule 17(c) subpoenas. In other words, Rule 26.2 is a mechanism to allow parties to obtain witness statements from each other for purposes of cross-examination, but the rule does not pertain to statements of defendants. That exception, therefore, allows the government to collect a defendant's statement through other means.

(Gov't's Resp., Dkt. # 118, at 8-9.)

4

For these reasons, the Court denies Defendant's motion to quash the subpoena and order the return or destruction of the already-tendered material. In addition, Defendant's request for a protective order prohibiting the government from issuing additional Rule 17 subpoenas duces tecum without first obtaining leave of Court and upon notice to the defense is denied.

**Date**: November 9, 2020

_____
**Ronald A. Guzman**
**United States District Judge**