IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | 18 CR 611 |
| | ) | Judge Ronald A. Guzman |
| v. | ) | |
| | ) | |
| JI CHAOQUN | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION FOR DISCLOSURE;
OR ALTERNATIVELY TO SUPPRESS EVIDENCE OBTAINED OR
DERIVED FROM THE ISSUANCE OF NATIONAL SECURITY LETTERS**

Defendant, **Ji Chaoqun**, by and through his attorneys, **the Law Office of Damon M. Cheronis**, respectfully submits the following reply in support of his motion for disclosure; or alternatively, to suppress evidence obtained or derived from the issuance of National Security Letters ("NSLs").

I.      **Background**

On June 4, 2021, Mr. Ji, through counsel, filed a motion and accompanying memorandum seeking disclosure of the government's evidence pertaining to its issuance of NSLs; or alternatively, suppression of the fruits derived therefrom. Dkt. # 163, 164 Counsel specifically argued: (1) disclosure is required under the applicable federal rules; (2) the searches at issue violated the Fourth Amendment; and (3) the searches at issue may have been conducted in violation of their authorizing statutes.

Relying upon the information disparity it has created through nondisclosure, on August 12, 2021, the government filed its response in opposition, arguing to a significant extent based upon

facts not disclosed in discovery that, in summary, "there is no reason to disclose" the NSLs to Mr. Ji, the authorizing statutes do not create a suppression remedy (whatever statutes they may be); and that the Fourth Amendment does not apply based upon application of the third party doctrine. Dkt. # 174.

Mr. Ji, through counsel, now respectfully submits the following reply in order to address the arguments raised by the government in its response.

## II. Discussion

An initial clarification is necessary in regards to the background section of the government's response. In that section, the government proffers details regarding the nature of its investigation. It characterizes it as a "counterintelligence investigation." Dkt. # 174 p. 1. The government describes how, pursuant to "statutory authorizations," the FBI obtained information during the course of the investigation.  pp. 1-2. It then conceded that in the course of discovery it has produced only what it deemed "pertinent information collected using NSLs but not the actual NSLs." *Id*. p. 2. The government then continued the background to its response by discussing relevant provisions of the Stored Communications Act, the Financial Right to Privacy Act, and the Fair Credit Reporting Act as the three statutory vehicles the FBI relied upon to gather information on Mr. Ji, only the "pertinent" of which the government has voluntarily disclosed. *Id*.

This one-sided proffer of information—the underlying facts, details, and information of which have not been provided in the course of discovery—demonstrates just how necessary adversarial scrutiny is and why it can only be accomplished through fair and open disclosures. On the one hand, the government is proffering facts which, as will be discussed, it comes to rely upon

to convince the Court to deny the suppression motion; and yet, at the same time, it has not disclosed the basis for those facts and information as the federal rules and constitution require.

It is difficult to imagine a corresponding situation in which the government seeks to use the fruits of a search at trial yet refuses to disclose the means through which it acquired those fruits—at least outside of the FISA context where a specific provision of the United States Code expressly authorizes such nondisclosure—but that is precisely what the government is seeking here.

Indeed, as has been noted before, in accordance with Local Rule 37.2 and Local Criminal Rules 12.1 and 16.1, on July 9, 2020, counsel requested additional disclosures from the government, namely, the letters themselves, as well as any and all certifications, affidavits, etc., or communications with the recipient entities or its representatives, all materials produced in response by the recipient, and disclosure of the legal grounds for each respective letter issued by the government in the course of this investigation.

Through a correspondence dated August 6, 2020, the government declined to voluntarily make such disclosures. Without any explanation, beginning on November 30, 2020, the government nonetheless began producing some of the returns from its issuance of NSLs, which the instant response has clarified include only the records it deemed "pertinent." As it also admitted, the government has remained steadfast in its refusal to produce the actual NSLs, let alone any certifications, affidavits, etc., communications with the recipient entities or its representatives.

Its nonetheless relied on what can only be assumed to be undisclosed materials in support of its opposition. For example, it put forth an alternative argument that, if the Court found a constitutional violation, it should nonetheless refuse to suppress the fruits of those searches because the FBI relied in good faith on the authorizing statutes. *Id*. p. 6. The government's bare, unsupported

assertion in this respect is insufficient. Neither counsel nor the Court can assess the accuracy of this claim without access to the NSLs themselves. The government's request to nonetheless proceed in such a manner is contrary to the values of our adversarial system of justice, and it is all the more problematic when the government at the same time criticizes Mr. Ji for failing to make out a "prima facie case of statutory violations." *Id.* p. 7.

This is not a situation where nondisclosure or *ex parte* and *in camera* presentation are expressly permitted. *See, e.g.,* 50 U.S.C. § 1806(f). Instead, despite the fact that this may have in fact been a "counterintelligence investigation," the normal rules of criminal process and all its concomitant protections apply—the Due Process and Effective Assistance of Counsel Clauses of the Fifth and Sixth Amendment to the United States Constitution; Rules 2, 12, and 16 of the Federal Rules of Criminal Procedure, and *Brady, Giglio,* and its progeny included. *See also, e.g., United States v. U.S. District Court (Keith),* 407 U.S. 297, 321 (1972); *Alderman v. United States,* 394 U.S. 165, 168 (1969); *United States v. Barcelo,* 628 Fed. Appx. 36 (2d Cir. 2015) (*Brady* disclosure obligations apply to pretrial suppression hearings); *United States v. Gamez-Orduno,* 235 F.3d 453, 461 (9th Cir. 2000) (noting disclosures must occur "at a time when disclosure would be of value to the accused") (internal citations and quotations omitted); *Smith v. Black,* 904 F.2d 950, 965-66 (5th Cir. 1990) (disclosures constitutionally required where the information would "affect[ ] the outcome of [a] suppression hearing"); *Matter of Up North Plastics, Inc.* 940 F. Supp. 229, 232 (D. Minn. 1996) (citing *In re Search Warrants Issued August 29, 1994,* 889 F. Supp. 296, 298-99 (S.D. Ohio 1995) ("the right to be free from unreasonable searches and seizures includes the right to review documents in support of an application for a search warrant"); *In re Search Warrant,* 2016 WL 7339113, *2 (S.D.N.Y. 2016)

(recognizing presumptive "right to access" search warrant applications under the First Amendment and common law).

The same catch-22 applies to the government's arguments regarding the authorizing statutes, and what it terms counsels' "incorrect assumption" that a statutory violation occurred. Dkt. # 174 p. 4. For the reasons just discussed, it is at a minimum procedurally problematic when the government seeks to have its word stand in as a substitute for actual evidence, or any corroboration at all.

The same is true with respect to the government's claim of the FBI's "good faith" reliance on the ostensible authorizing statutes. With all the more reason given that it remains uncertain what statute was utilized to obtain which specific set of records, neither defense counsel nor the Court can simply assume good faith as the government is essentially asking—the occurrence of a minor, technical form of statutory noncompliance (such as failing to recognize that Spokeo is not a "credit reporting agency" within the meaning of the FCRA could be argued to be) is just as likely as an egregious violation (such as relying upon the FCRA's counterterrorism provision). There is no claim to good faith if the violations are along the latter end of the spectrum, and this point can only be resolved through full and fair disclosures.

With regard to the ostensible authorizing statutes, the government argued extensively that those specific statutes—whatever they may be—do not provide suppression remedies. Contrary to its claim, statutory violations do, in fact, require suppression as a remedy when the violations implicate important Fourth and Fifth Amendment interests. *See, e.g., Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006) (refusing to suppress interrogation based on failure to provide consular notification because that interest is "at best remotely connected to the gathering of evidence"); *McNabb v. United*

*States*, 318 U.S. 332, 344 (1943) (suppressing confession obtained in violation of statute requiring prompt presentation of an arrestee before a magistrate); *Miller v. United States*, 357 U.S. 301, 306 (1958) (suppressing fruits of search incident to arrest obtained in violation of District of Columbia law regarding authority to make in home warrantless arrests). As the Sixth Circuit described, "the exclusionary rule is an appropriate sanction for a statutory violation only where the statute specifically provides for suppression as a remedy *or the statutory violation implicates underlying constitutional rights such as the right to be free from unreasonable search and seizure*." *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006) (emphasis added). All of the statutes reportedly at issue deal with just such concerns; that is, imposing limitations on the government's ability to search and seize personal and private information. And given the fact that "[t]he touchstone of the Fourth Amendment is reasonableness," *Florida v. Jimeno*, 500 U.S. 248, 250 (1991) (citing *Katz v. United States*, 389 U.S. 347, 360 (1967)), suppression is not only appropriate, but necessary.

Finally, the last point that bears further discussion regards *Carpenter* and the government's argument that, in summary, it did not diminish the Third Party Doctrine, and "every circuit court to have considered Ji's argument that *Carpenter* changed the law with respect to subscriber information, IP addresses, and similar basic account information has rejected it." Dkt. # 174 p. 5.

The fact is that technological changes allow the government to now "chronicle" information about its citizens in ways never previously considered imaginable, and this power "does not fit neatly under existing precedents." *Carpenter v. United States*, 138 S. Ct. 2206, 2221 (2018). Indeed, as it observed, "[a] person does not surrender all Fourth Amendment protection by venturing into the public sphere" remains as strong a principle as ever. *Id.* In any event, *Carpenter* was decided "narrowly" only insofar as it was confined to the facts before it. All of the post-*Carpenter* circuit cases

dealing only with *one single* category of information that was in fact appropriately characterized as "basic" and thus those circuit courts saw fit to refuse to expand *Carpenter*. *See, e.g., United States v. Trader*, 981 F.3d 961, 968 (11th Cir. 2020) (IP protocol and subscriber information), *United Sates v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018) (same); *United States v. Well-Beloved Stone*, 777 Fed. Appx. 605, 607 (4th Cir. 2019) (same); *United States v. VanDyck*, 776 Fed. Appx. 495, 496 (9th Cir. 2019) (same).[1]

In this case, by stark contrast, the "pertinent" records obtained about Mr. Ji included a substantial wealth of private information: subscriber information, address, IP protocol information, telephone numbers, account numbers, account verification emails, dates of server access, usernames, account creation dates, detailed records purchase history, detailed American Express credit card purchase and transaction history for over an approximate year-long period, the same for a Discover Card for an approximate three-month period and related bank information, phone records akin to toll records, intensive PayPal records including demographic information, phone numbers, personal identifying information, email addresses, connected bank and credit card accounts, dates of use and corresponding IP address, and over 1,000 pages worth of records from Mr. Ji's primary bank account, including detailed statements and transaction history complete with each check image Mr. Ji wrote

---

[1] *Carpenter* has nonetheless been expanded, at a minimum, to find the Fourth Amendment triggered in cases involving aerial surveillance programs, FISA bulk collection of telephone metadata, social media accounts, vehicle GPS data, geofence warrant applications and even public utility smart meters. *See, e.g., Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021); *United States v. Moalin*, 973 F.3d 977 (9th Cir. 2020); *United States v. Chavez*, 423 F. Supp. 2d 194 (W.D.N.C. 2019); *United States v. Diggs*, 385 F. Supp 3d 648 (N.D. Ill. 2019 (Feinerman, J.); *Matter of Information Stored at Google*, 481 F.Supp.3d 730 (N.D. Ill. 2020) (Fuentes, Mag. J.); *Naperville Smart Meter Awareness v. City of Naperville*, 900 F.3d 521 (7th Cir. 2018); *see also United States v. Moore-Bush*, 381 F. Supp. 3d 139 (D. Mass. 2019) (finding eight month long pole camera installation on a utility pole constituted search; reversing opinion vacated and *en banc* petition granted on December 9, 2020; *State v. McAllister*, 875 A.J. 866 (N.J. S. Ct. 2005) (rejecting *Smith* and *Miller* under state constitution and finding expectation of privacy in individual bank records); *People v. Gutierrez*, 222 P.3d 925 (Colo. S. Ct. 2009) (expanding state law rejection of *Miller* to include tax records).

and the location address of the payee for all debit transactions. And this is just from the "pertinent" records the government elected to disclose.

These records are significantly more intrusive and cannot accurately be characterized as "basic account information" as the government posited (Dkt. # 174 p. 6), and nor do they prove at all analogous to simple IP addresses and subscriber information at issue in the post-*Carpenter* cases it relies upon. Instead, like *Carpenter* and the over a weeks' worth of location information at issue there, on the facts of this case, the warrantless acquisition of this wealth of private information absent any prior judicial review, let alone myriad other traditional Fourth Amendment requirements, should be recognized for what it is: presumptively unreasonable and constitutionally prohibited.

## III.    Conclusion

For the reasons set forth herein, as well as in his initial motion and memorandum, Mr. Ji, through counsel, respectfully requests that the Court to order the government to disclose the materials specified herein pertaining to its issuance of NSLs in this case, or alternatively, to suppress any and all evidence obtained or derived from the issuance of NSLs.

Respectfully submitted,

/s/ Damon M. Cheronis
**Damon M. Cheronis**

/s/ Ryan J. Levitt
**Ryan J. Levitt,**
Attorneys for Defendant.

**Law Office of Damon M. Cheronis**
140 S. Dearborn Street Suite 411
Chicago, IL 60603
(312) 663-4644
damon@cheronislaw.com
ryan@cheronislaw.com

## CERTIFICATE OF SERVICE

I, Damon M. Cheronis, hereby certify that on September 17, 2021 I electronically filed the foregoing **of Defendant's Reply in Support of his Motion for Disclosure; or Alternatively to Suppress Evidence Obtained or Derived from the Issuance of National Security Letters** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system, and in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, Local Rules 5.5 and 5.9, and General Order 16-0020.

s/ Damon M. Cheronis
Damon M. Cheronis
Law Office of Damon M. Cheronis
140 S. Dearborn Street Suite 411
Chicago, Illinois 60603
(312) 663-4644
damon@cheronislaw.com

10