IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 CR 611 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Ji Chaoqun, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's second motion to dismiss Count Two of the indictment [140] is denied.

## STATEMENT

The Court assumes familiarity with the procedural history and facts of this case. Briefly, on January 24, 2019, the grand jury returned a six-count indictment charging Defendant with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371; one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a); three counts of wire fraud in violation of 18 U.S.C. § 1343; and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2).

For the second time[1], Defendant moves to dismiss Count Two under 18 U.S.C. § 951(a), failing to register as a foreign agent. Count Two states as follows:

1. Paragraph 1 of Count One is incorporated here.[2]

---

[1] Defendant's first motion to dismiss this count argues that the indictment did not fairly inform him of the nature of the charge by failing to specify the "act" he allegedly undertook on behalf of the Chinese government. The Court denied the motion. (Dkt. # 90, at 8.)

[2] Paragraph one of Count One states:

1. At times material to this indictment:

    a. JI CHAOQUN was a citizen of the People's Republic of China.
    b. On or about August 28, 2013, JI CHAOQUN arrived in the U.S. on a visa.
    c. The Ministry of State Security ("MSS") was the intelligence and security agency for the People's Republic of China, and was responsible for counterintelligence, foreign intelligence, and political security. The Jiangsu Province Ministry of State Security ("JSSD") was a regional foreign intelligence arm of the MSS, headquartered in Nanjing, China.

> 2. From on or about August 28, 2013 to on or about September 25, 2018, at Chicago, in the Northern District of Illinois, and elsewhere, JI CHAOQUN, defendant herein, did knowingly act in the United States as an agent of a foreign government, namely the People's Republic of China, without prior notification to the Attorney General, as required by law;
> In violation of Title 18, United States Code, Section 951(a).

(Indictment, Dkt. # 32, at 6.)

"An indictment must: (1) state the elements of the offense charged; (2) fairly inform the defendant of the nature of the charge so that he may prepare a defense; and (3) enable the defendant to plead an acquittal or conviction as a bar against future prosecutions for the same offense." *United States v. Khan*, 937 F.3d 1042, 1049 (7th Cir. 2019). "[A]n indictment need not 'spell out each element' as long as 'each element [is] present in context.'" *Id*. (citation omitted). "An implicit allegation of an element of a crime is enough; the indictment 'need not specifically allege' every 'component part of the offense.'" *Id*. at 1049-50 (citation omitted). Moreover, "it is not necessary for an indictment to allege in detail the factual proof that will be relied on to support the charges." *United States v. Smith*, 230 F.3d 300, 306 (7th Cir. 2000).

Count One of the indictment, paragraph one of which is expressly incorporated into Count Two, provides the factual basis of the charge against Ji. Count One states:

> 2. Beginning no later than on or about August 28, 2013, to on or about September 25, 2018, at Chicago, in the Northern District of Illinois, and elsewhere, JI CHAOQUN, defendant herein, conspired with Intelligence Officer A and others known and unknown to the Grand

---

> d. Intelligence Officer A, a resident of the People's Republic of China, was the Deputy Division Director of the Sixth Bureau of the JSSD.
> e. The Military Accessions to Vital National Interest ("MAVNI") Program authorized the United States Army to recruit individuals who were not United States citizens[] but were legally present in the United States. If a recruit met the MAVNI requirements, including passing a full single-scope background investigation and the 10-week Basic Combat Training course, the recruit's application to become a U.S. citizen was expedited without first obtaining lawful permanent residence.
> f. Absent a lawful exception, individuals who agreed to operate within the United States subject to the direction and control of a foreign government were required to provide prior notification to the Attorney General.
> g. Companies A, B, and C were United States-based companies that offered certain services for United States-based consumers, such as the purchase of background reports on individuals. These reports would typically include information that included an individual's education and employment history.

(Indictment, Dkt. # 32, ¶ 1.)

Jury to commit an offense against the United States, namely, to knowingly act in the United States as an agent of a foreign government, namely, the People's Republic of China, without prior notification to the Attorney General of the United States as required by law, in violation of Title 18, United States Code, Section 951(a).

3. It was a part of the conspiracy that JI CHAOQUN agreed to assist Intelligence Officer A and the People's Republic of China by covertly serving as an agent of the People's Republic of China while residing in the United States.

4. It was further part of the conspiracy that in 2013 and 2014, JI CHAOQUN traveled from Chicago to Beijing, China to meet with Intelligence Officer A.

5. It was further part of the conspiracy that during JI CHAOQUN's trips to the People's Republic of China in 2013 and 2014, he met with Intelligence Officer A for the purpose of discussing and planning JI CHAOQUN's role as an agent of the People's Republic of China.

6. It was further part of the conspiracy that while in the United States, JI CHAOQUN communicated with Intelligence Officer A, including by email and text message.

7. It was further part of the conspiracy that Intelligence Officer A instructed JI CHAOQUN to obtain from Companies A, B, and C background reports of multiple individuals in order to circumvent restrictions set by Companies A, B, and C on purchases made outside of the United States.

8. It was further part of the conspiracy that while in the United States, JI CHAOQUN purchased and obtained background reports requested by Intelligence Officer A of certain naturalized United States citizens, who were born in Taiwan or China and worked in the United States at companies in the science and technology industry, including cleared United States defense contractors.

9. It was further part of the conspiracy that JI CHAOQUN emailed the background reports to Intelligence Officer A in a manner that disguised the true nature of the reports and that Intelligence Officer A was the intended recipient of the email and background reports.

10. It was further part of the conspiracy that JI CHAOQUN was provided money by Intelligence Officer A as compensation and to reimburse JI CHAOQUN for expenses JI CHAOQUN incurred in obtaining the background check reports.

11. It was further part of the conspiracy that JI CHAOQUN joined the United States Army as a means to obtain United States citizenship via the MAVNI program and to gain access to sensitive and classified information for the People's Republic of China.

12. It was further part of the conspiracy that JI CHAOQUN concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the conspiracy and the acts done in furtherance of the conspiracy.

13. In furtherance of the conspiracy and to effect its objects and purposes, JI CHAOQUN committed and caused to be committed the following overt acts, among others, within the Northern District of Illinois and elsewhere:

a. Between on or about December 9, 2013, and on or about July 6, 2014, JI CHAOQUN traveled between Chicago and Beijing, China on multiple occasions.
b. On or about December 18, 2013, JI CHAOQUN and Intelligence Officer A met in China.
c. On or about January 10, 2014, JI CHAOQUN and Intelligence Officer A met in China.
d. From on or about August 25, 2015, through on or about August 31, 2015, Intelligence Officer A and JI CHAOQUN exchanged text messages in which Intelligence Officer A directed JI CHAOQUN to send Intelligence Officer A the background reports.
e. On or about August 30, 2015, while he was in the United States, JI CHAOQUN purchased background reports from Companies A, B, and C.
f. On or about August 30, 2015, JI CHAOQUN made the background check information available to Intelligence Officer A in an email addressed to a third party.
g. On or about September 18, 2015, while he was in the United States, JI CHAOQUN purchased a background report from Company A.
h. On or about September 18, 2015, JI CHAOQUN made background check information available to Intelligence Officer A in an email addressed to a third party.

All in violation of Title 18, United States Code, Section 371.

(Indictment, Dkt. # 32, ¶¶ 2-13.)

As Ji notes, § 951 "requires *acts* as an agent on behalf of a foreign country." *United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) (emphasis in original). Ji insists that the

4

indictment fails to plead the alleged prohibited acts under § 951 with the necessary sufficiency. The Court disagrees. "[T]he sufficiency of an indictment is to be reviewed practically, with a view to the indictment in its entirety, rather than in any 'hypertechnical manner.'" *United States v. Troutman*, 572 F. Supp. 2d 955, 960 (N.D. Ill. 2008) (citation omitted). "Once the elements of the crime have been specified, an indictment need only provide enough factual information to enable the defendants to identify the conduct on which the government intends to base its case." *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). "[T]he indictment need only 'provide some means of pinning down the specific conduct at issue.'" *Id*. The indictment as a whole does this. Even viewing Count Two on its own, it is sufficient. Count Two alleges the elements of the offense and incorporates paragraph one of Count One, which sets forth that Ji's acts are related to the MSS, the JSSD, MSS Intelligence Officer A, and the MAVNI program. These facts provide some means for Ji to pin down the specific conduct at issue.

While not determinative, *Latchin* is instructive. In *Latchin*, the Seventh Circuit addressed on appeal a post-trial challenge to the sufficiency of the evidence with respect to a § 951 charge against the defendant, a "sleeper" agent for Iraq. The court rejected the challenge, stating:

> Latchin's argument that the proof was lacking in this department, on the other hand, is just plain wrong. *There may not have been direct evidence of acts on behalf of Iraq, but the circumstantial evidence was strong.* In addition to receiving sums of money from IIS personnel at international locations, Latchin placed 39 phone calls to IIS agent "Khalil"—second in command of the sleeper program—in Baghdad between June 2001 and May 2004. It's hard to believe that Latchin was just calling to chat, or that this was all done in connection with his IIS "pension plan." Whether Latchin actually spied on Iraqi Christians in the United States may be another matter altogether. But the jury did not have to find that he did to convict him under § 951. It was enough for the jury to conclude that Latchin took acts of *some kind* on behalf of Iraq without first registering as a foreign agent. The evidence was more than sufficient to meet that end.

*Id*. at 715 (emphasis added).

Ji argues that *Latchin* is wholly inapposite, but the Court is unpersuaded. If an individual can be convicted of a violation of § 951 when there "may not have been direct evidence of acts on behalf of" the foreign state, the Court cannot discern how a purported failure (which the Court assumes to be true solely for the sake of the instant point) to identify detailed acts in an indictment could result in its dismissal. As the Court has already ruled, the indictment as a whole sets forth the elements of the offense, fairly informs Ji of the nature of the charges against him, and enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense.

Ji also contends that the act he allegedly undertook at the direction or control of a foreign agent[3] -- obtaining background reports on United States citizens who were born in Taiwan or

---

[3] Despite arguing that he does not know what "act" he is alleged to have committed under Count Two, Ji then asserts that the purported act is not illegal.

China and worked at science and technology companies in the United States -- is a legal commercial transaction, which is expressly exempt from the conduct that is prohibited under § 951(a). As such, Ji asserts, Count Two fails to state an offense. The relevant language of the statute states:

> (d) For purposes of this section, the term "agent of a foreign government" means an individual who agrees to operate within the United States subject to the direction or control of a foreign government or official, except that such term does not include—
> . . .
> (4) any person engaged in a legal commercial transaction.

Ji contends that this exception is an element of the offense that must be pleaded, while the government contends it is an affirmative defense. The Fourth Circuit recently concluded that the "legal commercial transaction" exception is an affirmative defense that need not be alleged in the indictment. *See United States v. Rafiekian*, 991 F.3d 529, 541 (4th Cir. 2021) ("In short, the 'legal commercial transaction' exception provides for an affirmative defense—which must be raised first, if at all, by a defendant—rather than an essential element of the offense."). The Court agrees with the *Rafiekian* decision.[4] Nevertheless, if, as Ji contends, the exception is an element of the offense, paragraph 1f of Count One, which is incorporated into Count Two, states, *"[a]bsent a lawful exception*, individuals who agreed to operate within the United States subject to the direction and control of a foreign government were required to provide prior notification to the Attorney General." (Indictment, Dkt. # 32, ¶ 1f) (emphasis added). Whether Ji's purchase of background reports falls within the exception will be determined at trial.

Nor is Defendant's challenge to venue persuasive. The indictment alleges that Defendant engaged in acts in Chicago in the Northern District of Illinois. Venue is improper "if the only acts that occurred in that district do not provide evidence of the elements of the charged crime." *United States v. Ochoa*, 229 F.3d 631, 636 (7th Cir. 2000). "[T]here is no single defined policy or mechanical test to determine constitutional venue." *United States v. Williams*, No. 18 CR 149, 2020 WL 4052145, at *2 (N.D. Ill. July 20, 2020) (internal quotation marks and citation omitted). The Court "takes into account a number of factors -- the site of the defendant's acts, the elements and nature of the crime, the locus and effect of the criminal conduct, and the suitability of each district for suitable fact-finding." *Id*. (internal quotation marks and citation omitted). "The flexibility of this approach reflects a concern that 'an overly mechanistic

---

[4] Ji engages in a lengthy discussion of the district court's ruling in *Rafiekian* regarding the defendant's motion to dismiss the indictment, in which the district court concluded that the "legal commercial transaction" exception is an element of the offense. *See United States v. Rafiekian*, No. 1:18-CR-457-AJT-1& 2, 2019 WL 3021769, at *9 (E.D. Va. July 9, 2019) ("Based on Section 951's text, structure, and legislative history, the Court concludes that the legal commercial transaction limitation on Section 951's coverage constitutes a substantive offense element rather than an affirmative defense."). The Court declines Ji's invitation to adopt the district court's reasoning, and instead, finds the Fourth Circuit's decision, which disagreed with the district court and reversed the district court's grant of the defendant's motion for acquittal, persuasive on this issue.

approach to the location of the defendant's acts may limit unrealistically the permissible venues in terms of the policy concerns that underlie the constitutional venue guarantee.'" *Id*. (citation omitted).

Here, the indictment alleges that Ji traveled to China from Chicago to meet with Chinese intelligence officials, communicated with Chinese intelligence officers by email and text, and purchased and emailed background reports to Chinese intelligence officials from this district. Not all the actions need have occurred in this district; venue is proper in any district where the crime began, continued, or was completed. 18 U.S.C. § 3237 ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.")[5] By every indication, Defendant lived in Chicago during the relevant time period; discovery and pretrial motions filed by Ji indicate that he was approached by an undercover agent "outside of his apartment in Chicago" in April 2018 and met with law enforcement agents after returning to Chicago from a trip to Denver on September 25, 2018. Moreover, during the entire pendency of the instant case, there has been no indication that this district is unsuitable for factfinding. The Court concludes that the government has established that venue is proper in this district by a preponderance of the evidence.

Finally, Ji argues that dismissal of the indictment is necessary based on purported defects in the grand jury presentation. "For an indictment to be dismissed on account of false testimony presented to the grand jury, the defendant must show prejudice amounting to either proof that the grand jury's decision to indict was substantially influenced, or that there is grave doubt that the decision to indict was substantially influenced, by testimony which was inappropriately before it." *United States v. Zambrano*, No. 20 CR 00049, 2021 WL 4318079, at *1 (N.D. Ill. Sept. 22, 2021) (citation internal quotation marks omitted). Ji asserts that the grand jury was never informed that the elements of the offense require proof of an "act" as an unregistered foreign agent; engaging in legal commercial transactions is exempt from criminal liability; violations of corporate terms of service (*i.e.*, that the relevant background-reporting companies' terms of service do not allow purchases from outside the U.S.) do not make a transaction illegal; and Ji did not join the MAVNI program at the direction or control of a foreign government, but of his own volition.

As to the background-reporting companies' terms of service, the government notes that Ji was located in the U.S., so the fact that the grand jury heard testimony that the companies did not allow purchases from outside the U.S. was not intended to establish Ji's criminal liability. Rather, the testimony was used to demonstrate motive and knowledge. Specifically, the government presented the testimony to explain why the Chinese intelligence officers directed Ji to purchase the background reports in the U.S. instead of purchasing them from China. The

---

[5] Defendant asserts that the government, in relying on § 3237, is confusing the conspiracy count with the substantive offense under § 951. The Court disagrees. While Ji may have engaged in offending acts in different districts, as long as the acts, any conduct that provides evidence of the offense, or the effect of the offense occurred in this district, venue is proper here. As noted, the government alleges that communications, travel, and the purchasing of reports occurred in this district; therefore, Ji's challenge to venue is rejected.

government further notes that the testimony corroborated Ji's statements to an undercover agent that he understood that he was directed to purchase the reports in the U.S. because of the companies' restrictions. (Grand Jury Tr., Dkt. # 159, Ex. A., at 6, 8.)[6]

Nor is the Court persuaded by Ji's assertion that the grand jury was led astray when it was not informed that the elements of the offense require proof of an "act" as an unregistered foreign agent. Ji argues that the following statement, which the government presented to the grand jury, was improper: "absent a lawful exception, individuals who agree to operate within the United States at the direction and control of a foreign government are required to provide notification to the Attorney General." (*Id*. at 13-14.) As the government notes, once an individual agrees to operate, he must provide notice to the Attorney General before he acts; thus, the statement presented to the grand jury is accurate. Moreover, the indictment presented to the grand jury includes the element in the § 951 charge that Ji acted as a foreign agent. Thus, this objection fails.

As to the fact that Ji participated in the MAVNI program of his own accord and not at the direction of Chinese intelligence officials, Ji acknowledges that the special agent who presented testimony to the grand jury stated that Ji voluntarily joined the program. (Def.'s Mem. Law Supp. Mot. Dismiss Count Two, Dkt. # 141, at 21.) Ji argues, however, that the grand jury was never informed that "agent of a foreign government," as used in § 951 and as set forth in Count Two, means an individual "who agrees to operate within the United States subject to the direction or control of a foreign government or official." Ji conclusorily states that, as a result, the grand jury "was deprived of the ability to assess the relevance of this critically important factor." (*Id*. at 22.) Ji's objection is vague and unspecific. Moreover, Ji fails to establish that the grand jury's decision to indict was substantially influenced by the purported omission, or that there is grave doubt that the decision to indict was substantially influenced by the purported omission. As the government notes, the grand jury heard testimony over two days from the case agent and other witnesses regarding Ji's conduct and reviewed the indictment. Importantly, the government also asserts that the grand jury "received information that the statute requires an agreement to operate at the direction of a foreign government and criminal liability attaches when an individual acts in the United States pursuant to this agreement," (Gov't's Resp., Dkt. # 179, at 14), which is reflected in the grand jury transcript. (Grand Jury Tr., Dkt. # 159, at 13-14.)

---

[6] In his reply, Ji makes a convoluted argument about the government's changing its reasons for offering the testimony regarding the terms of service of the background-reporting companies. Ji argues that the grand jury presentation was therefore "incomplete and misleading." (Def.'s Reply, Dkt. # 195, at 15.) The Court disagrees and finds that the government's presentation to the grand jury was not misleading. Even assuming arguendo that the government created an after-the-fact rationale for having offered the testimony regarding the terms of service of the background-reporting companies, the testimony still corroborated Ji's statement to the undercover agent that he was being directed to purchase the reports because of the companies' restrictions on purchases outside of the U.S.

For these reasons, the motion to dismiss Count Two of the indictment is denied.

**Date**:  September 30, 2021

                                              **Ronald A. Guzmán**
                                              **United States District Judge**