IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** )<br>    **Plaintiff,** )<br> ) <br>**v.** )<br> )<br>**Ji Chaoqun,** )<br>    **Defendant.** ) | No. 18 CR 611<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion for disclosure of or, in the alternative, to suppress evidence obtained from the issuance of national security letters [145] is denied.

## STATEMENT

Ji asks the Court to order the government to disclose certain material relating to its issuance of national security letters ("NSLs") or, alternatively, to suppress any and all evidence obtained or derived from the issuance of those NSLs.

As the Seventh Circuit has stated,

> [t]he FBI has statutory authority to issue NSLs to obtain information relevant to counter-terrorism[sic] and counterintelligence investigations. 12 U.S.C. § 3414(a)(5)(A); 15 U.S.C. §§ 1681u(a)–u(b), 1681v(a); 18 U.S.C. § 2709(a)–(b). To pursue those investigations, the FBI may use NSLs to collect information from NSL recipients, such as financial institutions, 12 U.S.C. § 3414(a)(5)(A), credit reporting companies, 15 U.S.C. §§ 1681u, 1681v, telephone companies, and internet service providers, 18 U.S.C. § 2709(b)(1).

*Catledge v. Mueller*, 323 F. App'x 464, 466 (7th Cir. 2009). In this case, the FBI issued NSLs to obtain information about Ji under three different statutes: the Stored Communications Act ("SCA"), 18 U.S.C. § 2709(a), (b); the Right to Financial Privacy Act ("RFPA"), 12 U.S.C. §3414 (a)(5); and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681u(a), (b).[1] The

---

[1] The government characterizes the information it received from the NSLs as subscriber information, records of phone calls, records of IP addresses, and information contained in credit reports. According to the government, it did not obtain the content of any communications using NSLs. Ji elaborates on the "pertinent" information he received from the government pursuant to the NSLs, stating that it included:

> subscriber information, address, IP protocol information, telephone numbers, account numbers, account verification emails, dates of server access, usernames,

SCA allows the government to issue an NSL to obtain from an electronic communication provider subscriber information (including the name, length, and length of service), toll billing records information, and the electronic communication transactional records for an account, while the RFPA allows the government to issue an NSL to a financial institution for a customer's financial records. Under the FCRA, the government can obtain from a consumer reporting agency a consumer's name, current and former addresses, current and former places of employment, and the names and addresses of all financial institutions where a consumer maintains or has maintained an account. According to the government, "[i]n discovery, the government produced *pertinent* information collected using NSLs but not the actual NSLs." (Gov't's Resp., Dkt. # 174, at 2) (emphasis added). Ji contends that he is entitled to obtain all of the information the government received as a result of the NSLs and the NSLs themselves, pursuant to the normal rules of criminal procedure.

The government argues that "Ji's sole argument for compelling the disclosure of the NSLs issued in this investigation is that he needs them to determine whether any information obtained through the NSLs should be suppressed. . . . [b]ut he has no suppression remedy regardless of what the NSLs show, and already . . . has the information that was obtained in response to those NSLs." (Gov't's Resp., Dkt. # 174, at 8.) As the government states, "the federal exclusionary rule, which forbids the use of evidence obtained in violation of the Fourth or Fifth Amendments, does not extend to violations of statutes and regulations." *United States v. Kotney*, 238 F.3d 815, 818 (7th Cir. 2001). And "[e]ven if this Court were to assume a violation of the SCA, federal courts that have addressed the issue have routinely held that the SCA does not provide for a suppression remedy." *United States v. Khan*, 15-CR-00286, 2017 WL 2362572, at *8 (N.D. Ill. May 31, 2017); *see also United States v. Edgar,* 82 F.3d 499, 510-11 (1st Cir. 1996) (suppression of evidence is not a remedy for governmental violation of the FCRA); *United States v. Kington,* 801 F.2d 733, 737 (5th Cir. 1986) (refusing to suppress records obtained in violation of the RFPA when Congress did not provide for that remedy in statute). Nor does Ji point to any statutory suppression remedy.

Ji next contends that the searches conducted pursuant to the NSLs violated the Fourth Amendment. *United States v. Hammond*, 996 F.3d 374, 384 (7th Cir. 2021) ("If a defendant has the requisite expectation of privacy, the Fourth Amendment generally requires law enforcement to obtain a warrant before executing a search."). The government asserts that the Fourth

---

account creation dates, detailed records purchase history, detailed American Express credit card purchase and transaction history for over an approximate year-long period, the same for a Discover Card for an approximate three-month period and related bank information, phone records akin to toll records, intensive PayPal records including demographic information, phone numbers, personal identifying information, email addresses, connected bank and credit card accounts, dates of use and corresponding IP address, and over 1,000 pages worth of records from Mr. Ji's primary bank account, including detailed statements and transaction history complete with each check image Mr. Ji wrote and the location address of the payee for all debit transactions.

(Def.'s Reply, Dkt. # 194, at 7.)

Amendment is inapplicable here because of the third-party doctrine: "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *United States v. Soybel*, 13 F.4th 584, 2021 WL 4076759, at *5 (7th Cir. Sept. 8, 2021) (alteration and citation omitted). In other words, "[a] person generally 'has no legitimate expectation of privacy in information he voluntarily turns over to third parties,' subjective expectations notwithstanding." *Id*. (citation omitted). "Where the third-party doctrine applies, 'the [g]overnment is typically free to obtain such information from the recipient without triggering Fourth Amendment protections.'" *Id*. (citation omitted).

Ji's reliance on the Supreme Court's application of the third-party doctrine in *Carpenter v. United States*, --- U.S. ---, 138 S. Ct. 2206 (2018), is unpersuasive. In *Carpenter*, the Supreme Court found that law enforcement officers "had 'invaded Carpenter's reasonable expectation of privacy in the whole of his physical movements' by obtaining historical CSLI [cell-site location information] without a warrant supported by probable cause." *Id*. The Seventh Circuit recently rejected a defendant's attempt to expand *Carpenter* to provide for "a reasonable expectation of privacy in his 'personal internet traffic data.'" *Soybel*, 2021 WL 4076759, at *6.[2] The *Soybel* court noted that the *Carpenter* decision was, by its own designation, a "'narrow one'" and "not a wholesale repudiation of . . . the third-party doctrine generally." *Id*. (citation omitted). Rather, the *Carpenter* court stressed that the issue before it "was 'novel' both as to the instrumentality of the search and in the information captured" in that CSLI "'provides an all-encompassing record of the holder's whereabouts,' including his entry into 'private residences, doctor's offices, political headquarters, and other potentially revealing locales.'" *Id*. (citations omitted). The *Carpenter* court specifically noted that CSLI was a "qualitatively different category" than "telephone numbers and bank records." *Carpenter*, 138 S. Ct. at 2216. Here, the information obtained by the NSLs, which is described in footnote 1, does not provide the same all-encompassing record of Ji's whereabouts that CSLI would have. Moreover, Ji "assumed the risk by voluntarily communicating with third parties." *Soybel*, 2021 WL 4076759, at *7 ("An internet user creates connection data by 'making the affirmative decision to access a website,' just as the user of a landline generates a telephone-number record solely by choosing to dial it.") (citation omitted). For these reasons, the Court finds that, under the third-party doctrine, the information obtained by the government pursuant to the NSLs is not protected by the Fourth Amendment.

Even assuming arguendo that a Fourth Amendment violation had occurred, suppression would not be called for because law enforcement officers relied in good faith on the NSL provisions in the SCA, the RFPA, and the FRCA. Ji replies that the searches at issue "may" have been conducted in violation of the authorizing statutes. The sole argument Ji makes in this regard is that Spokeo, which provided the government with, among other things, email addresses associated with Ji: his Spokeo user ID; name; date and time of his most recent login; details regarding the records Ji accessed; and payment details, is not a consumer reporting agency as that term is used in the FCRA. Ji notes that Spokeo has argued before certain federal courts that

---

[2] In *Soybel*, the government had obtained an order under the Pen Register Act to install IP pen registers on Soybel's apartment for 60 days, which "recorded connections between his private IP address and the IP addresses of those websites that internet users in the apartment had visited." *Soybel*, 2021 WL 4076759, at *2.

it is not a consumer reporting agency as that term is defined in the FCRA. (Def.'s Reply, Dkt. # 146, at 21-22.) Ji notes, however, that none of the relevant courts, including the U.S. Supreme Court, has opined on whether Spokeo is a consumer reporting agency, assuming for purposes of the opinion at issue that it is. (*Id*.) Ji concludes by stating that "colorable grounds exist to question whether Spokeo qualified as a 'consumer reporting agency'" under the FCRA. (*Id*. at 22.) As the government notes, however, the SCA (as opposed to the FCRA) allows the government to use an NSL to obtain information from an "electronic communication service," and its NSL to Spokeo requested information "to the extent [Spokeo] provide[s] electronic communication service as defined in 18 U.S.C. § 2510(15) [the criminal statute relating to Wire and Electronic Communications Interception and Interception of Oral Communications]." The government asserts that Spokeo is in the best position to determine whether it is an electronic communication service and will respond to the NSL. Absent authority stating otherwise, the Court agrees.

To the extent that Ji seeks disclosure of the NSLs themselves, the government notes that "Ji has not cited any basis for disclosure under *Brady*, *Giglio*, 18 U.S.C. § 3500, or for any other purpose under Federal Rule of Criminal Procedure ("Rule") 16, and no such bases exist." (Gov't's Resp., Dkt. # 174, at 8 n.2.) The Court assumes that the government has satisfied its statutory and constitutional disclosure obligations, in the absence of any indication otherwise, and denies Ji's request to compel disclosure of the NSLs themselves.

**Date**: November 16, 2021

　　　　　　　　　　　　　　　　　　　　　　　　_Ronald A. Guzmán_
**Ronald A. Guzmán**
**United States District Judge**