**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | **No. 18 CR 611** |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| Ji Chaoqun, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to suppress post-arrest statements [143] is denied.

## STATEMENT

**Facts**

The Court assumes familiarity with the facts of the case. On January 24, 2019, the grand jury returned a six-count indictment charging Ji Chaoqun with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371; one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a); three counts of wire fraud in violation of 18 U.S.C. § 1343; and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2). (Indictment, Dkt. # 32.) In April 2018, an undercover agent ("UC"), who was pretending to be a fellow member of the Chinese intelligence apparatus, first met with Ji in a hotel room. Thereafter, Ji and the UC met two additional times, also in hotel rooms, with the last meeting occurring on September 25, 2018, the day Ji was arrested. Ji moves to suppress the statements he made to law enforcement agents on the date of his arrest, both in the hotel room where Ji was initially confronted and in the FBI field office, where Ji was subsequently taken. Ji contends that law enforcement agents did not honor the invocation of his right to an attorney and his right to remain silent, as set forth in *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

"Under *Miranda*, law enforcement officers must inform individuals subject to custodial interrogations that they have the right to consult with an attorney before answering any questions and that they have the right to have an attorney present during the questioning." *United States v. O'Donnell*, No. 20 CR 260-1, 2021 WL 2660777, at *3 (N.D. Ill. June 29, 2021). The accused may waive his right to counsel, but the waiver must be made both knowingly and intelligently. *Edwards v. Arizona*, 451 U.S. 477, 483-84 (1981). While the government argues that Ji was not in custody, the Court need not resolve the issue because even assuming arguendo that he was, the agents properly informed Ji of his right to an attorney.

The parties' versions of what occurred after the agents' initial entry into the hotel room where they questioned Ji on September 25, 2018, do not differ in any material way, and the

Court has viewed video of the encounter. After escorting the UC out of the room to "question" him, the agents sat down at a table in the hotel room with Ji. Special Agent Andrew McKay told Ji that they were going to talk for a while and explained that before they could ask Ji any questions, he had to understand what his rights were. Agent McKay then informed Ji that he had the right to remain silent; anything he said could be used against him in court; he had the right to talk to an attorney for advice before being asked any questions; he had the right to have an attorney with him during the questions; and if he could not afford a lawyer, one would be appointed for him, if he wished. Finally, Agent McKay advised Ji that if he decided to answer questions at that time, without a lawyer present, he had the right to stop answering at any time. Ji indicated he understood. The dialogue then proceeded as follows[1]:

> AM:     So do you want to talk to us about your friend?
>
> JC:     No, I'm fine.
>
> AM:     You don't want to talk?
>
> JC:     Uh, not at this time.
>
> AM:     Ok. So you want a lawyer? Or—
>
> JC:     Is it free or something—am I in trouble, or?
>
> AM:     Well that's what we hope to talk about. Is, your friend is definitely in trouble—
>
> JC:     Ok.
>
> AM:     And we want to figure out why you were with him.
>
> JC:     Ok. I understand.
>
> AM:     So do you want to talk to us or?
>
> JC:     Sure uh I can talk to you about all the truth.
>
> AM:     Ok.
>
> JC:     Yeah.
>
> AM:     So, if you want to talk to us then we'll kind of explain why your friend is in trouble.

---

[1] The dialogue is taken from a draft transcript that the parties have provided to the Court. Special Agent McKay is designated "AM"; Defendant is designated "JC"; and Special Agent Paul Bredesen is designated "PB."

JC:    Sure.

AM:    If you're willing to talk to us—

JC:    Yes.

AM:    Can you sign right here?

JC:    Sure.

*Ji signs*

AM:    And you fully understand everything we just went over?

JC:    Yes.

PB:    [u/i] do you want anything?

AM:    I think we're ok. Yeah we're ok.

PB:    [u/i] grab some chairs

AM:    You want to sign that column?

*Ji signs*

The agents then questioned Ji for approximately an hour.

"When a suspect invokes his right to counsel, the interrogation must stop unless the accused himself initiates further conversation with police." *O'Donnell*, 2021 WL 2660777, at *3. "[T]o invoke the right to counsel, the suspect must make a clear and unambiguous statement." *United States v. Hampton*, 885 F.3d 1016, 1019 (7th Cir. 2018). However, "[i]f a suspect makes an equivocal or ambiguous reference to a lawyer, a reference that a reasonable officer would interpret as a statement that the suspect *might* be invoking the right to counsel, there is no requirement that questioning end." *United States v. Wysinger*, 683 F.3d 784, 793 (7th Cir. 2012) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)) (emphasis in *Davis*). Determining whether a statement is clear and unambiguous is an objective inquiry. *United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009).

Here, Ji did not invoke his right to an attorney, instead asking whether "it" was free. After McKay informed Ji of his *Miranda* rights, which Ji indicated he understood, McKay asked him if he wanted a lawyer and Ji responded, "Is it free or some[u/i]—am I in trouble, or?" Agent McKay stated, "Well that's what we hope to talk about," "your friend is definitely in trouble," and "we want to figure out why you were with him." Ji responded, "OK. I understand," and Agent McKay then asked Ji again, "So do you want to talk to us or?" Ji responded, "Sure, uh, I can talk to you about all the truth." As noted by another court in this district:

> Examples of requests for action or permission to act that constitute clear and unambiguous invocations of the right to counsel include: "I want an attorney before making a deal" (*Edwards*, 451 U.S. at 479); "Can I talk to a lawyer?" and "I have to get me a good lawyer, man. Can I make a phone call?" (*Lord v. Duckworth*, 29 F.3d 1216, 1221 (7th Cir. 1994)); "I mean, but can I call [a lawyer] now?" (*Wysinger*, 683 F.3d at 795); "Can you call my attorney?" ([*United States v.*] *Hunter*, 708 F.3d [938,] 944) [(7th Cir. 2013)]; and "Can I have a lawyer?" (*United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005)).

*United States v. Chatman*, No. 17 CR 611-7, 2018 WL 6248944, at *3 (N.D. Ill. Nov. 28, 2018). Despite being informed of his right to an attorney and stating that he understood his rights, Ji made no statement, such as those just quoted, indicating that he wanted an attorney. Because the Court concludes that Ji did not invoke his right to counsel, the agents were not required to stop questioning him.

Ji next contends that the agents did not honor the invocation of his right to remain silent, and thus, the Court must suppress statements he made to the agents in the hotel room. For Ji's statements to be admissible, the government must "establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights when making the statement[s].'" *Berghuis v. Thompkins,* 560 U.S. 370, 382-84 (2010) (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)). The waiver must be both "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* at 382-83 (internal quotation marks and citation omitted).

Ji initially invoked his right to remain silent: "AM: So do you want to talk to us about your friend? JC: No, I'm fine. AM: You don't want to talk? JC: Uh, not at this time." Agent McKay then asked Ji if he wanted to speak with a lawyer.[2] Ji asked if "it" (representation by a lawyer) was free and then asked, "am I in trouble?" Agent McKay responded by stating, "Well that's what we hope to talk about. Is, your friend is definitely in trouble—" and, as set forth above, the conversation continued as follows:

JC:     Ok.

AM:     And we want to figure out why you were with him.

JC:     Ok. I understand.

AM:     So do you want to talk to us or?

JC:     Sure uh I can talk to you about all the truth.

AM:     Ok.

---

[2] As discussed later in this order, this question was permissible because it did not constitute interrogation as it was not reasonably likely to elicit an incriminating response. *See United States v. Abdulla,* 294 F.3d 830, 834 (7th Cir. 2002).

4

JC:    Yeah.

AM:    So, if you want to talk to us then we'll kind of explain why your friend is in trouble.

JC:    Sure.

AM:    If you're willing to talk to us—

JC:    Yes.

AM:    Can you sign right here?

JC:    Sure.

*Ji signs*

AM:    And you fully understand everything we just went over?

JC:    Yes.

PB:    [u/i] do you want anything?

AM:    I think we're ok. Yeah we're ok.

PB:    [u/i] grab some chairs

AM:    You want to sign that column?

*Ji signs*

The conversation indicates that Ji reconsidered his options after the agents' answers to his questions gave him a more complete understanding of his situation, and Ji then decided to tell the agents "all the truth." There was no coercion, intimidation, or deception. *United States v. Richardson,* 657 F.3d 521, 525 (7th Cir. 2011) ("A statement is voluntary if, 'in light of the totality of the circumstances, [it] is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'") (quoting *United States v. Dillon,* 150 F.3d 754, 757 (7th Cir. 1998)). Ji's waiver of the right to remain silent was voluntarily and knowingly made after he was given full information about his rights and the reason the agents were speaking with him.

Nor did the agents violate *Miranda* by speaking with Ji after he initially invoked his right to remain silent. As another court in this district recently stated: "[N]ot every question from a law enforcement officer constitutes an interrogation for *Miranda* purposes. The Seventh Circuit directs courts to ask 'whether a reasonable objective observer would have believed that the question claimed by the defendant to have been unlawful interrogation was in fact reasonably

likely to elicit an incriminating response.'" *United States v. Simpkins-McDonald*, No. 20 CR 00696, 2021 WL 4206794, at *7 (N.D. Ill. Sept. 16, 2021) (some internal quotation marks and citation omitted). "When determining whether a suspect has invoked his right, a court should examine the entire context in which the claimant spoke." *Bobo v. Kolb*, 969 F.2d 391, 396 (7th Cir. 1992).

Here, before Ji was asked if he would agree to talk to the agents, they explained his constitutional rights explicitly and with care. Ji asked if he was in trouble and Agent McKay stated that that is what the agents were trying to figure out. *See Easley v. Frey*, 433 F.3d 969, 974 (7th Cir. 2006) ("[W]e do not believe that the provision of information, even if its weight might move a suspect to speak, amounts to an impermissible "psychological ploy."). Ji responded, "Ok. I understand," and Agent McKay clarified Ji's position by asking, "So do you want to talk to us or?" *See Bobo*, 969 F.2d at 396 ("Officers may ask questions intended to clarify whether the suspect was attempting to invoke his right to remain silent.") (alteration in *Bobo* omitted). After Ji agreed to speak to them, the agents asked him to sign a waiver-of-rights form, which he did. After that, Agent McKay again asked, "and you fully understand everything we just went over." Ji answered, "Yes"; only then did the agents proceed to interrogate him.

The Court concludes that the agents did not violate Ji's *Miranda* rights when they questioned him in the hotel room on September 25, 2018; therefore, Ji's motion to suppress statements he made to the agents in the hotel room is denied.

After this session, Ji was transported to the FBI field office and reinterviewed. The voluntariness of this field office interview is, however, not an issue, because the government has declared that it will not seek to affirmatively introduce at trial any statements Ji made during the FBI field office interview.[3]

**Date**: December 14, 2021

*Ronald A. Guzmán*
**Ronald A. Guzmán**
**United States District Judge**

---

[3] The government reserves the right to use any portion of the field office interview to impeach Ji if his testimony contradicts his interview statements.