1          IN THE UNITED STATES DISTRICT COURT
          NORTHERN DISTRICT OF ILLINOIS
2                EASTERN DIVISION

3

UNITED STATES OF AMERICA,        )
4                                )
                 Plaintiff,      )
5                                )   No. 18 CR 611
          vs.                    )   Chicago, Illinois
6                                )   March 21, 2022
JI CHAOQUN,                      )   3:15 p.m.
7                                )
                 Defendant.      )
8

9          TRANSCRIPT OF PROCEEDINGS - MOTION

10      BEFORE THE HONORABLE RONALD A. GUZMAN

11 APPEARANCES:

12 For the Plaintiff:        HON. JOHN R. LAUSCH, JR.
                            United States Attorney
13                          219 South Dearborn Street
                            Chicago, Illinois 60604
14                          BY:  MR. BARRY JONAS
                                 MR. VIKAS KUMAR DIDWANIA
15

16 For the Defendant:        CHERONIS, PARENTE & LEVITT LLC
                            140 South Dearborn Street
17                          Suite 404
                            Chicago, Illinois 60603
18                          BY:  MR. DAMON M. CHERONIS

19 ALSO PRESENT:

20 For Ms. Weiyun Huang:     MR. MATTHEW J. MADDEN
                            209 South LaSalle Street
21                          7th Floor
                            Chicago, Illinois 60604
22

23 Official Court Reporter:  JENNIFER COSTALES, CRR, RMR, CRC
                            219 S. Dearborn St., Room 2342
24                          Chicago, Illinois 60604
                            (312) 435-5895
25                          jenny.uscra@yahoo.com

1       (Proceedings via teleconference)

2           THE CLERK:  The first case before us is case number

3   18 CR 611-1, USA versus Ji Chaoqun.

4           Court is now in session.  Judge Guzman, we are ready

03:14:01  5   for you.

6           THE COURT:  Thank you, Kerwin.

7           Can we begin by having the attorneys identify

8   themselves, please, beginning with the government's attorney.

9           MR. DIDWANIA:  Good afternoon, Your Honor.  Vikas

03:14:17  10   Didwania on behalf of the United States.

11           THE COURT:  Good afternoon.

12           Defense counsel?

13           MR. CHERONIS:  Good afternoon, Judge Guzman.  Damon

14   Cheronis on behalf of Chaoqun Ji.

03:14:34  15           THE COURT:  Good afternoon.  The defendant is not

16   present.  Has his presence been waived?

17           MR. CHERONIS:  Yes, Your Honor.  I waived it.  Mr.

18   Posley reached out to me and asked.  So we waive his

19   appearance.

03:14:50  20           THE COURT:  All right.  Well --

21           MR. MADDEN:  And, Your Honor, I don't want to

22   interrupt you, but this is Matthew Madden.  I represent

23   Ms. Huang.

24           THE COURT:  Thank you.

03:15:08  25           Mr. Cheronis, are you consenting to proceed by way of

1   teleconference this afternoon?

2        MR. CHERONIS:  I am, Your Honor.

3        THE COURT:  Thank you.

4        Okay.  This is the government's motion for an

03:15:19   5   emergency leave to take the deposition of a witness.  So,

6   government, tell me what happened here.

7        MR. DIDWANIA:  Yes, Your Honor.  I may defer to my

8   colleague, Mr. Barry Jonas, who I believe just joined the

9   phone call, the hearing.

03:15:38   10        THE COURT:  Okay.

11        MR. DIDWANIA:  Barry, if you just joined, the Judge

12   asked for us to present our motion.

13        MR. JONAS:  Thank you.  Yes, I just joined.  Judge,

14   Barry Jonas for the record.

03:15:55   15        So, Your Honor, as you know, we've got a trial

16   scheduled in this case to begin early June.  And the

17   government was beginning to prepare for the trial, last week

18   or the week before.  And in putting together our witness list,

19   we decided we wanted to call Ms. Huang, H-U-A-N-G, and we

03:16:14   20   reached out I believe to her attorney, Mr. Didwania could

21   correct me if I am wrong on that, to find out her

22   availability, and we learned that she was planning on leaving

23   the United States for China this week, on Thursday the 24th,

24   March 24th, permanently.

03:16:30   25        THE COURT:  How did you learn that?

1    MR. JONAS:  It was, I believe it was early last week

2 if I'm correct.

3    Vikas, is that right?  Because last week is when we

4 started preparing.

03:16:45   5    MR. DIDWANIA:  Yes, that's my recollection as well.

6    MR. JONAS:  We, Judge, we reached out to Mr. Cheronis

7 to discuss her testimony to see if maybe there would be a

8 testimonial stipulation that the parties could agree to.  He

9 stated that he would talk to his client on --

03:17:04   10    THE COURT:  Before you go into that, let me back you

11 up a second.

12    MR. JONAS:  Sure.

13    THE COURT:  How did you first find out that she was

14 planning to leave the country?

03:17:11   15    MR. JONAS:  I can't remember if we reached out to her

16 attorney or if we reached out to the Department of Homeland

17 Security to find out what her status was, Judge.  I don't

18 remember which one of those two we learned it from.

19    THE COURT:  Mr. Madden, do you know?

03:17:24   20    MR. MADDEN:  Your Honor, I don't ever remember

21 passing that date along to the government.  My memory, I think

22 they got it from Homeland Security because I don't ever

23 remember having that conversation.

24    MR. JONAS:  And that's certainly possible, Judge.

03:17:41   25 Again, this is Barry Jonas.

THE COURT:  Why would you be in contact with Homeland Security about this witness?

MR. JONAS:  We would have known or our agents would have known at least that there was an order of deportation. So I think we were looking into finding out when she was going to be leaving the country.

THE COURT:  And how long have you known that?

MR. JONAS:  It would have probably been the same time, Judge, early last week.  Our agents would have known it longer.

And, Judge, as you may recall, Ms. Pillay had this case initially, and she was the one who prosecuted the witness.  So Mr. -- I came on the case, this case, the Ji case a couple years ago, but I wasn't involved in the prosecution of the witness.

So our agents who overlapped with both cases, I think we probably asked them.  And, again, Judge, I'm piecing this together from memory.  It wasn't that long ago.  I know it was just last week, but I wasn't really focused on it at the time.

And we learned at that time that the agent -- I'm sorry, that the witness was going to be leaving the country at some point, and that's when we reached out to Homeland Security and learned it was the 24th.  So this has all occurred in a little over a week, or just a week.

THE COURT:  Okay.  Do you know when the deportation

6

1    date was set?

2              MR. JONAS:  There was no set date for her to be

3    deported.  I spoke to Homeland Security this morning.  And

4    what I learned was that they needed to prepare, as I said,

03:19:07  5    proper travel documents and they had to put her on a charter

6    flight.  And they were working on that when she decided to

7    voluntarily deport herself and said that she would leave on

8    her own.

9              THE COURT:  Okay.  And do you know when that

03:19:24  10   happened?

11             MR. JONAS:  That, I do not know, Judge.

12             MR. MADDEN:  Your Honor, this is Matthew Madden.

13             If this is helpful, I believe she was released from

14   ICE custody on February 2nd.  However, she did not receive her

03:19:40  15   passport back from ICE until, I believe it was March 1st or

16   somewhere thereabouts.  So at that point that's when she could

17   book a flight to go home, which she has done.

18             THE COURT:  So it would have been around March 1st

19   that she notified ICE that she was seeking to leave

03:20:01  20   voluntarily on the date of March 20 -- what is it, March 26th?

21             MR. JONAS:  24th, Judge.

22             THE COURT:  24th, is that right?

23             MR. MADDEN:  That's correct, Judge.

24             THE COURT:  Okay.  All right.  And prior to that,

03:20:21  25   there was no bag and baggage order?

1          MR. JONAS:  I'm sorry, Judge, could you repeat that?

2          THE COURT:  Prior to that, there was no bag and

3    baggage order?

4          MR. JONAS:  No, Judge.

03:20:31   5          THE COURT:  Okay.

6          MR. JONAS:  There was an order of deportation, but it

7    did not have -- there was no date for her to be deported.

8          THE COURT:  All right.  So there was no bag and

9    baggage order.  That's what they called them.  They give you a

03:20:41  10   date, tell you to pack your bags and show up.

11         MR. JONAS:  I apologize.

12         THE COURT:  Prior to -- go ahead.

13         MR. JONAS:  I've actually never heard that term

14   before, Judge.  So that's why you threw me for a second.

03:20:53  15         THE COURT:  Well, it could be ancient.

16         So at best it would have been March 1st that the

17   government, any part of the government learned that she was

18   seeking to depart on March 24th, is that right?

19         MR. JONAS:  That's correct.

03:21:13  20         THE COURT:  To the best anyone knows?  Okay.

21         All right.  I'm sorry, go ahead with your

22   presentation, Mr. Jonas.

23         MR. JONAS:  Sure.  Thank you, Judge.

24         So we learned on Friday from Mr. Cheronis that his

03:21:25  25   client was not willing to do a testimonial stipulation and

1   that they would oppose a Rule 15 motion that we filed on

2   Saturday.

3         It was our understanding from Mr. Madden that the

4   witness was not going to be cooperative and that was strongly

03:21:40   5   desired to leave on the 24th.

6         On the evening of, on Friday evening, this past

7   Friday, the 18th, we got an email from Mr. Madden, probably

8   near the end of the business day, stating that the witness has

9   changed her mind, and she's willing to come out and cooperate

03:21:59   10   and testify in a deposition if she can do it and still leave

11   on her scheduled date or close thereto with the understanding

12   that we would not stop her from leaving the country.

13         And so we then went ahead and filed our motion on

14   Saturday.

03:22:16   15         As Your Honor knows, there is two parts to a Rule 15

16   motion.  There is the witness being unavailable and there is

17   the testimony being material to the prosecution.

18         Starting with the materiality, the government has

19   charged the defendant in multiple counts, including count 1

03:22:35   20   and counts 3, 4 and 5 with fraud, conspiracy in count 1 and

21   then wire fraud in count 4, 3 and 4, I believe, and then count

22   5 is a 1001 violation.

23         And it all ties around his false employment with

24   Findream, an organization that purportedly would get

03:22:55   25   employment paperwork for Chinese nationals who were seeking to

1    stay in the United States.

2          The witness ran, created and ran Findream.  And what

3    we expect her testimony to be was, consistent with her factual

4    basis in her plea agreement, was that Findream did not do what

03:23:13    5    it said it did.  It did not employ people.  It just created

6    the paperwork to give the appearance that the Chinese

7    nationals were employed so that they could stay in the United

8    States.

9          And that employment was used as part of or false

03:23:25    10   employment was used as part of the defendant's ability to join

11   the army, and that's what those counts center around.

12          So her testimony is material to establish that his

13   employment was false, that he wasn't really employed by

14   Findream.  So I believe that the government has established

03:23:42    15   materiality.

16          In terms of the witness being unavailable, she's a

17   Chinese national.  We cannot hold her here.  And she stated

18   that she's not planning on coming back to the United States at

19   any point.

03:23:54    20         One reason why she's voluntarily leaving now is

21   because she's concerned about her health.  And we received

22   some medical records, which we forwarded to defense counsel,

23   in that she, according to Mr. Madden, and I'll let him jump in

24   to correct me if I am wrong, she does not have health

03:24:11    25   insurance in the United States.  But yet she can get medical

1  attention in China.  So there is a concern on her part that

2  she needs to get this issue attended to.

3  So we are trying -- and I appreciate the fact, Judge,

4  that you are hearing us today, and I know this is quick.  But

03:24:23  5  we are trying to get her out here to Chicago Wednesday night

6  to testify in a deposition on Thursday to preserve her

7  testimony for the trial, which is what the purpose of the Rule

8  15 motion is all about.

9  I understand defense in their response talked a lot

03:24:38  10  about notice.  But there is no requirement in the motion or in

11  the case law that requires notice prior to Your Honor ruling

12  on the motion.  You could rule on the motion and we could give

13  notice 20 minutes later to say here is when the deposition is

14  going to take place.

03:24:54  15  We did talk to Mr. Cheronis last week about his

16  availability this coming week.  And so there is, it may not be

17  written notice, but there has certainly been discussions

18  regarding as to when this should take place.

19  In terms of location, it would be in the courthouse,

03:25:07  20  either at the U.S. Attorney's office in the conference room,

21  or if we can procure a courtroom to do this, we would do it

22  there.

23  I know Mr. Cheronis also argued that her testimony is

24  not material because other witnesses can establish the same

03:25:21  25  fact.

1    Well, there are other witnesses who can say that they

2  worked for Findream or allegedly worked for Findream, but that

3  there was no real employment involved.  But there is no one

4  that can say Findream was created for this purpose, that

03:25:35    5  Findream was a fraud, and that the defendant was one of the

6  Findream employees, alleged employees.

7    She cuts through a lot of the circumstantial evidence

8  to give straight, direct evidence regarding the existence and

9  the true purpose of Findream.

03:25:52    10    So even though we may be able to present four or five

11  other witnesses to get there, she cuts out those witnesses or

12  at least she is more to the heart of the issue.

13    I also know Mr. Cheronis said that this is an issue

14  created by the government.  Well, yes and no.  We are not

03:26:09    15  looking to deport her by the 24th of March.  This is something

16  that she decided to do on her own.  So it's not a situation

17  where we deported a person and then said they're unavailable.

18  We're trying to get to her before she heads out to China.

19    While the government was seeking to deport her, it's

03:26:27    20  the timing isn't there to make that argument.  And I also

21  understand that we could have arguably made this motion a long

22  time ago.  Maybe yes, and it's on us for not having done that.

23  But I don't think we should be penalized because of that.  We

24  still can get this deposition done in time before she has to

03:26:44    25  leave.

1    I believe I've addressed most of, if not all of the

2  arguments made by the defense.  And I think we've certainly

3  established the requirements for this deposition to go

4  forward.

03:26:55    5    Judge, if you have any questions, I'm happy to answer

6  them.

7    THE COURT:  I have a couple.  I probably shouldn't

8  start here.  Well, let me do it anyhow.  It's a question that

9  just popped into my head.  Can you keep her from leaving the

03:27:16   10  country on the 24th?

11    MR. JONAS:  So, Judge, there are two ways that we

12  can, two things that we can do technically.  One is what is

13  called a departure control order.  And that's something it's

14  in the CFR is 8 CFR 215.2 and .3.

03:27:36   15    And what that says is, it's an old order, and this is

16  something I discussed with ICE, I'm sorry, the HSI agent

17  about, who was aware of it.  But it's a rule that came up and

18  was implemented before HSI even existed.  It was when it was

19  Immigration and National Service.  And what it says is no --

03:27:59   20    THE COURT:  Way back then, huh?

21    MR. JONAS:  Way back then.  And it's an old rule

22  that's only been used from what I've been told about three or

23  four times in total where they stopped an alien from leaving

24  the United States, but there was no authority, no way of

03:28:13   25  permanently keeping them in the United States.

1    What I was told is in those situations they told the

2    person as they were about to leave, "You cannot leave," and

3    the person said okay and voluntarily stayed.  Except in one

4    instance they said the person just drove to another airport,

03:28:26    5    got on a plane and left.  It is not like there is a do not fly

6    list where any airport you go to you will be stopped.

7    The rule also talks about temporary, temporary -- I'm

8    sorry, Judge, I'm looking at it now, and I'm trying to look

9    for the exact word -- detention, "detention" is not the right

03:28:42    10   word, because there is no indication that Homeland Security

11   can actually detain the person.  All they can do at best is

12   temporarily stop them from leaving the airport.

13   It's the temporary, prevent them from departure, and

14   it's only aliens who refuse to submit to an examination or an

03:28:59    15   inspection.

16   Of course, my understanding of the context of

17   examination or inspection means you are essentially pulled

18   over and your luggage is examined.

19   There is also no indication according to HSI that

03:29:11    20   they can take the person's passport to prevent them from

21   going.  So while technically --

22   THE COURT:  Doesn't HSI already have her passport?

23   MR. JONAS:  No.  I believe she has it.  I believe

24   Mr. Madden said she received it back on March 1st.

03:29:27    25   THE COURT:  Oh, she received it back?  Okay.

1   MR. MADDEN:  That's correct, Judge.

2   THE COURT:  All right.

3   MR. JONAS:  So according to the Department of

4   Homeland Security they, while this is on the books in the Code

03:29:35   5   of Federal Regulations, they don't think that they can

6   actually enforce the provision to keep her here until trial.

7   At best, at best it's a temporary detention or temporary

8   prevention from allowing her to leave the country.  And they

9   don't know if they're able to do that in this circumstance.

03:29:52   10   The other, the other provision that we're aware of is

11   a material witness warrant.  And I've never done one, Judge.

12   But it's my understanding if the government were to seek a

13   material witness warrant, it's done until and to the point

14   there is a deposition that can take place.

03:30:07   15   So we wouldn't be seeking to prevent her from leaving

16   until June, but it would be until there is a deposition.

17   Frankly, Judge, we don't think we should have to go

18   down that route when we can take her deposition before she

19   leaves the country.  And we certainly don't want to prevent

03:30:22   20   her from leaving the country for an extended period of time if

21   there is a medical concern here on her part.

22   THE COURT:  Okay.  Anything else you want to say?

23   MR. JONAS:  I do not.

24   Vikas, do you want to add anything?

03:30:37   25   MR. DIDWANIA:  This is Vikas Didwania.  No, I don't,

1      Your Honor.

2                    THE COURT:  All right.  Thank you.

3                    Mr. Cheronis.

4                    MR. CHERONIS:  Thank you, Judge.  Here is what

03:30:45   5   happened.  The government at the eleventh hour realized they

6      wanted to call Ms. Huang to testify in this case.  They knew

7      she was going to be deported because a member of their office,

8      who the initial prosecutor on this case discussed it at length

9      at --

03:31:01  10                  THE COURT:  Who was that?

11                   MR. CHERONIS:  Shoba Pillay, Shoba Pillay, Your

12     Honor.

13                   THE COURT:  She's no longer with the office, right?

14                   MR. CHERONIS:  No longer with the office, but she was

03:31:10  15   the initial prosecutor on this case.

16                   So the government knew full well that she was going

17     to be deported.  They also could have learned that she was

18     going to be released from federal custody in November of 2012,

19     and then she was taken into custody, of course ICE custody.

03:31:25  20   So they knew she was going to be deported.

21                   What they're asking you to do, Judge -- and, you

22     know, they made an interesting comment, "We shouldn't be

23     penalized for this."  Well, if you are balancing who should be

24     penalized for this, it certainly isn't Mr. Ji.  And, you know,

03:31:39  25   this testimony is not insignificant.

1    I just received 10 minutes ago an additional 247

2 pages of discovery that I believe is linked to a grand jury

3 witness who testified in the Findream case with Ms. Huang.

4    So, you know, the government did create this issue,

03:31:59  5 they certainly did.  They didn't even realize until last week

6 that they wanted to call her.  Now they're scrambling to get

7 her to stay here.

8    And the problem is, because they're calling her as a

9 witness, there is going to have to be some significant

03:32:12  10 cross-examination.  There are a number of exhibits that have

11 not been fully translated yet that are in Mandarin that have

12 to do with Findream.

13    So there is a lot of review that has to go into

14 cross-examining her.  So I think that to say that they can

03:32:26  15 just put her on and Mr. Ji should have to deal with it is, you

16 know, problematic.

17    Moreover, Judge, as far as the materiality issue,

18 because I've been getting up to speed on it this weekend,

19 there were a number of witnesses who testified in front of the

03:32:42  20 grand jury about Findream.  One of them was an unindicted

21 co-conspirator, who was pretty much part of it from the

22 inception, who the government had no problem eliciting during

23 the course of the grand jury that in her opinion this was

24 fraudulent, I believe from the start, or at least knew that

03:32:57  25 soon after --

1    THE COURT:  You are going to allow that testimony to

2    go forward in court, for her to give her opinion on that,

3    Mr. Cheronis?  You wouldn't object to that, if she gives her

4    opinion?

03:33:07    5    MR. CHERONIS:  There may be objections to that,

6    Judge.

7    THE COURT:  Yeah, I think there might.

8    MR. CHERONIS:  I'm trying to do the best I can with

9    short notice.

03:33:14    10    THE COURT:  Okay.

11    MR. CHERONIS:  So regarding the materiality issue,

12    Your Honor, I think that there are other ways they can attempt

13    to establish it.  But I'm more concerned about the position

14    that we're being put in as to basically prepare the

03:33:29    15    cross-examination of a significant witness in three days with

16    a number of pieces of information that haven't been translated

17    yet.  It's a heavy task.

18    So the other issue that the government raised and

19    I'll respond to is whether or not she can stay in the country.

03:33:47    20    Well, I have a feeling if the government wants her to stay in

21    the country, she probably will.  She probably can.

22    There has been sort of at least a few possibilities

23    that have been put forward by Mr. Jonas as to how that could

24    happen.  So I don't think that has been exhausted yet.

03:34:05    25    So, you know, we filed a lengthy response to the

1    government's motion, which I'm sure Your Honor reviewed,

2    detailing the issues that we have in this situation, whether

3    or not she's actually unavailable, things such as that.

4          So, you know, we are the ones who are being put in a

03:34:24    5    very difficult situation.  Mr. Ji obviously has a right to

6    confront his accusers.  Whether or not this is sufficient, I

7    would argue it isn't.  I know there is some conflicting case

8    law regarding that.

9          But to have us go forward on such a short notice

03:34:41    10   without, you know, the proper time to prepare this, Your

11   Honor, I think is problematic.  I think the government has not

12   met their burden showing that this witness is first

13   unavailable or will be unavailable, and I do think there are

14   issues with materiality prong as well.

03:34:56    15         So I can, you know, rely on my motion on that and I

16   can answer any questions the Court has.

17         THE COURT:  Okay.  I'm sorry, somebody else want to

18   say anything?

19         MR. MADDEN:  Your Honor, this is Matthew Madden.  If

03:35:09    20   I could just briefly say something?

21         THE COURT:  Sure.

22         MR. MADDEN:  Judge, you know, Ms. Huang has no legal

23   status to be here.  She's been ordered to leave the country.

24   She's trying to comply with that.  She's got her flight on

03:35:21    25   Thursday, which she's hoping to keep.  She's hoping to be in

1    Chicago Thursday and then back in Seattle for, I think it's an

2    11:30 p.m. flight.  So she's really hoping to be on that

3    flight.

4          Judge, as I've shared with the government, I believe

03:35:37   5    they've shared with defense counsel, she's got legitimate

6    health concerns.  And one of the reasons she was released from

7    ICE custody to self return herself is, with the BOP she had --

8    excuse me, she had a health situation where there were lumps

9    in her breast.  The order says a biopsy needs to happen here.

03:35:55   10    That never happened in the BOP and it never happened with ICE

11    custody.  She has no health insurance here, so she can't

12    really do much about it until she gets home.

13          So there is a real health concern, anything that

14    makes her stay here longer than she needs to.

03:36:11   15          Judge, she's already spent an additional three months

16    on top of her sentence in ICE custody and then another two

17    months, of course, waiting for her passport and now waiting

18    for her flight to leave.

19          She wants to be on that flight.  She wants to go back

03:36:24   20    to her family and not come back.  You know, she's been in

21    prison for over two years away from her family.  And, you

22    know, everyone, both parties have said, "Well, we shouldn't be

23    the one penalized for this kind of" -- you know, I don't know

24    why it happened with a week before she left, but it did.

03:36:39   25    Another person who shouldn't be penalized on top of what has

1    already happened to her is Ms. Huang.

2         So whatever Your Honor's ruling is, Judge, I just

3    hope that she is able to get on that flight on Thursday and

4    comply with the orders to leave the country.

03:36:52    5         MR. CHERONIS:  Judge, if I may just add one final

6    note.  This is Damon Cheronis.  I agree with Mr. Madden

7    insofar as nobody here is blaming Ms. Huang.  It's not her

8    fault, right.  It's really the government's fault.  And the

9    government is now asking everybody to scramble to prepare for

03:37:08    10   who according to them is going to be a pretty significant

11   witness to do a deposition in two days.

12        They don't, you know -- there is more work to be done

13   to properly prepare for this.  There are translations that

14   need to be done.  I was not focusing on this, respectfully,

03:37:24    15   Your Honor, because I didn't even know she was going to be

16   called as a witness.  As far as I knew reading her discovery,

17   she was going to be deported.  The government made no claim to

18   us and did not tell us she was going to be a witness until

19   Thursday of this week, or of last week when they floated it

03:37:37    20   out there.

21        And if we're looking at the pyramid of people who

22   should not be harmed by this, I would say first is Mr. Ji,

23   second is Ms. Huang, and third is the government.

24        They created this situation and now are asking

03:37:49    25   everybody to dance around in order to fix it for them.  And

1    it's basically an issue of fairness, too, Your Honor.  This is

2    not a shotgun approach case to the cross-examination of

3    Ms. Huang.  And I fear that we will be put in a position where

4    it's just that.

03:38:14

5         THE COURT:  Let me ask the government, if she takes

6    the witness stand, what is she going to testify to?  What is

7    she going to say?  What is your expectation?

8         MR. JONAS:  Judge, our expectation is she's going to

9    say what she agreed to in the factual basis, which we put in

03:38:31

10   our motion, that what Findream was created for and that it

11   didn't actually -- what it purportedly was created for, but

12   what it actually did, just create the false documentation to

13   allow people to stay in the country.

14        THE COURT:  Does the government have anyone else who

03:38:47

15   actually was part of that organization doing that to testify?

16        MR. JONAS:  Not that I'm aware of, Judge, no.

17        THE COURT:  Okay.  So the substitution for her

18   testimony would be other witnesses testifying as to what they

19   experienced and then hopefully the drawing of a reasonable

03:39:10

20   inference that the defendant's experience was the same, is

21   that right?

22        MR. JONAS:  That's correct, Judge.

23        THE COURT:  Okay.  So that I think establishes her

24   materiality.  She is the only witness who can actually say

03:39:25

25   from personal knowledge that what she was doing was a fraud.

1          MR. CHERONIS:  Judge, I'm sorry, Judge --

2          THE COURT:  Go ahead.

3          MR. CHERONIS:  I have to object to that.  That is not

4 accurate.

03:39:37  5          THE COURT:  Tell me.

6          MR. CHERONIS:  There are other witnesses, there are

7 other witnesses --

8          THE COURT:  Who?

9          MR. CHERONIS:  From reviewing the grand jury, an

03:39:43  10 individual X-I-N-B-I-A-N is how her name is -- Q-I-N is how

11 her name is spelled.  She was put in front of the grand jury.

12 She testified that she worked at Findream.  She testified that

13 she dealt directly with Ms. Huang.  And in non-hearsay issues,

14 I might add, she said that she was involved in sort of the

03:40:01  15 preparation of false jobs for these individuals, you know.

16          It may not be as good as Ms. Huang, and obviously if

17 there are hearsay concerns regarding what Ms. Huang said, we

18 can deal with them.  But here is an individual who was part of

19 this that the government in the sentencing hearing for

03:40:19  20 Ms. Huang pointed out as an unindicted co-conspirator, who

21 they put in front of the grand jury to testify that they were

22 aware of the fraudulent nature of Findream.

23          Moreover, you are going to have an FBI agent who is

24 going to testify that he went to 555 Monroe to look to see if

03:40:34  25 Findream really existed and it didn't.

1      To say Ms. Huang is the only person who can introduce

2  this evidence, and I'm not --

3      THE COURT:  I didn't say that.  I did not say the

4  only -- I did not say the only person that can introduce that

5  information.

6      MR. CHERONIS:  Okay.

7      THE COURT:  I said she is the only person that can

8  directly testify from her own knowledge that what she was

9  doing, and she was the head of the organization, was a fraud.

10  And I think that's, in spite of everything else, I think

11  that's absolutely true.

12      MR. CHERONIS:  Sure, I think it's fair to say that

13  only a witness could testify as to their own state of mind.

14  But to establish that Findream is in fact fraudulent is

15  something that the government went through great lengths to

16  establish through other witnesses other than Ms. Huang.

17      And again, could it, could it extend the trial?  Yes.

18  Do I want to do that?  Absolutely not.

19      But my concern, Judge, and this isn't, you know --

20  and maybe it is a timeliness issue as well.  Maybe if I had

21  more than three days to prepare for this I wouldn't be kicking

22  and screaming.

23      Now, I think that Mr. Ji would certainly appreciate

24  live testimony.  But maybe there is a middle ground if Your

25  Honor is considering granting this motion.  I think it is --

1  and the Court is, you know, certainly not at all -- you're

2  involved in this just now.  But at the same point, you know,

3  maybe there is a middle ground where a week or two

4  respectfully can allow me to properly go through the

03:42:01  5  documents, talk to the government, see if we can get quick

6  translations, because when she's gone, she's gone.  So that's

7  my concern.

8      THE COURT:  Yeah, I mean, that's absolutely correct.

9  Any argument that she's going to come back here to testify

03:42:15  10  from China borders on the ridiculous.  My goodness, we can't

11  even get civil witnesses, we can't even get civil corporation

12  papers from China in civil cases.

13      So this is clearly the one and only opportunity that

14  anyone will have to find out what she has to say.

03:42:38  15      You've gone into sort of what I was going to move

16  into next.  First, I needed to find out what her testimony

17  would be.  And that tells me to some extent what her

18  cross-examination will be regarding.

19      And my question to you is, how much time do you need

03:43:06  20  to prepare to cross-examine her on what her agency did?

21      MR. CHERONIS:  I would propose the week of May 1st,

22  Judge, which I think is more than reasonable.

23      THE COURT:  I disagree.  I think if you do this and

24  just this, you should be able to do this in a matter of a

03:43:24  25  week, a week and a half.

1       MR. CHERONIS:  Judge, I hate to put my personal

2  business on the record, but for the first time in two years I

3  plan on going somewhere with my family the last week of March,

4  which, again, I don't plan on canceling, although certainly I

03:43:40    5  will be coming back.

6       THE COURT:  The medical condition of Ms. Huang.  I am

7  not a doctor, of course, but to some extent breast cancer has

8  become a common issue.  You say that, I'm sorry, Mr. Madden,

9  you indicate that she has been diagnosed with lumps in her

03:44:36   10  breast, is that correct?

11       MR. MADDEN:  That's correct, Judge.

12       THE COURT:  Okay.  Was that diagnosis by a doctor or

13  was that just something she discovered?

14       MR. MADDEN:  Judge, that was a doctor with the Bureau

03:44:49   15  of Prisons.

16       THE COURT:  Okay.  And when was that?

17       MR. MADDEN:  Judge, I don't have that document in

18  front of me.  I believe it was sometime May 21.

19       MR. CHERONIS:  May 21st of 2021 was the date.  And

03:45:08   20  Ms. Huang also said she knew about the issue when she was

21  still in China.

22       THE COURT:  I'm sorry, she said what?

23       MR. CHERONIS:  In the medical record that was

24  received, and I believe it was, I'm sorry, June the 17th of

03:45:21   25  2021, she stated, when they said that there was a lump found,

1    she was aware of these issues while she was still in China,

2    which would have been before she was indicted and sent to

3    jail.

4            I'm not belittling or questioning the fact that she

03:45:35    5    needs tests, Judge.  I'm just pointing out what is in the

6    report.

7            THE COURT:  Well, so she chose to defer her treatment

8    at that point and come back to the United States?

9            MR. MADDEN:  That's to some degree true, Your Honor.

03:45:55    10   Her mother has since then suffered from cancer, which raised

11   the concern of the doctor knowing that there is now a cancer

12   history in the family.

13           THE COURT:  Well, that makes it frankly more

14   problematic for her to claim that this is an emergency

03:46:19    15   situation from the point of view of her health if she herself

16   delayed any diagnosis or treatment for months.

17           Okay.  Let me also ask you this, has there been any

18   actual diagnosis that the tissue is cancerous?

19           MR. MADDEN:  There has not been any diagnosis, Judge.

03:47:01    20   The document that I provided indicated that a biopsy would

21   need to be done.  For whatever reason, I'm guessing very

22   COVID-related reasons, within the BOP that biopsy was never

23   done.

24           THE COURT:  All right.  Well, here is a question for

03:47:19    25   the government.  Can you get a biopsy done?

1       MR. JONAS:  I'm sorry, Judge, can we have a biopsy

2   done for her?

3       THE COURT:  Sure.

4       MR. JONAS:  Have the government --

03:47:34    5       THE COURT:  I didn't mean for you to have a biopsy.

6       MR. JONAS:  No.  Thank you, Judge, I understood.  And

7   for the record it's Barry Jonas.

8       I have no idea, Judge.

9       THE COURT:  Why don't you find out.

03:47:44   10       MR. JONAS:  We can look into whether she can get the

11  biopsy done and the government can take care of it.  I'm not

12  -- we can look into it.

13       THE COURT:  Okay.  Do that right away.

14       MR. CHERONIS:  And I will say for the record,

03:47:58   15  Judge -- this is Damon Cheronis -- that would not be an area

16  of cross-examination if the government did that.

17       THE COURT:  That's obviously a very straightforward

18  position for you to take, which is I'm sure greatly

19  appreciated by the government.

03:48:19   20       I don't want to -- let me tell you what I have summed

21  up from what I've heard and read.

22       First, I think the witness's testimony is

23  sufficiently important that if at all possible she should be

24  allowed to testify.

03:48:41   25       Second, I believe that the reason we're in crisis

1    mode here appears to be because of both the witness and the

2    government each to some extent creating this situation.

3           Certainly, you know, long before June 17th, when she

4    was still in China, she could have had this done.  She chose

03:49:08    5    not to.  She decided what she needed to do here was more

6    important or more pressing or whatever.  But that has

7    certainly contributed to her medical situation.

8           As far as her being available, it appears to me that

9    no one knew she was going to voluntarily leave the country

03:49:32   10    until March 1st, which means that the government at the most

11    delayed here a couple of weeks, maybe three, and that is if

12    you count -- if you go strictly counting what any agency in

13    the government knew and holding it against the prosecution in

14    this case.

03:49:56   15           So that is of some importance, but I don't see that

16    as being an issue of great lack of diligence on the

17    government's part.

18           This is a fluid situation.  She was under order of

19    deportation, but no date had been given for her deportation.

03:50:19   20    And it had been months as she was essentially waiting to be

21    deported, some in custody and some out, and nothing had

22    happened.  So there was no reason for the government to

23    believe at any given point before at the very first March 1st

24    that she was going to be leaving the country and that they

03:50:40   25    would be forced to take her deposition.

1    On the other hand, the defendant had nothing to do

2  with it and he should be given the opportunity to properly

3  cross-examine the witness.

4    So it seems to me that, frankly, an order that takes

03:51:09    5  into account to the best extent possible the needs of both

6  sides is appropriate here, and I think we can compromise that

7  to happen.

8    If the government puts before me a motion for a

9  material witness determination, I will certainly consider

03:51:37   10  that.  I think she is a material witness.  I think if she's

11  threatening to leave the country, you're entitled to that kind

12  of order.

13    Much preferable would be that the parties get

14  together and establish a date.  I think giving Mr. Cheronis

03:51:59   15  two weeks to prepare for a deposition is more than enough time

16  and I will certainly extend the date for two weeks.

17    And if your client can stay here of her own accord,

18  Mr. Madden, during that time, that's fine.  If she refuses to

19  cooperate, I will certainly consider a motion from the

03:52:29   20  government to keep her here as a material witness so that she

21  may be deposed.

22    What I propose is to give you all the evening to

23  discuss it and we can continue this telephonic hearing until

24  tomorrow morning.  I'll hear you.

03:53:02   25    Government?

1    MR. JONAS:  Yes, Judge.  It's Barry Jonas for the

2  government.

3    THE COURT:  When can you find out if the government

4  can provide the services of a physician to do a biopsy for

5  Ms. Huang?

03:53:20

6    MR. JONAS:  Judge, as soon as we hang up I'll try to

7  figure out who to call.  I'll start making calls.  She is in

8  Seattle or in California right now, so it's going to make it a

9  little more difficult.  But I'll start working the phones,

10  Judge, as soon as we hang up.

03:53:33

11    THE COURT:  Okay.  Mr. Madden, do you want to get

12  back to your client and discuss with her what I have said here

13  today?

14    MR. MADDEN:  I'll do that, Judge.  And I'll be on

15  again in the morning if that's okay.

03:53:48

16    THE COURT:  Okay.  Let me think a second.

17    So a couple of weeks would take us to, let's see,

18  that would be 4/4.  And that's the date I'm projecting would

19  be the date I would set for a deposition, whether it be by

20  agreement of the parties or, if need be, by order of the

21  Court.

03:54:47

22    I think the government is entitled to call this

23  witness.  I think the delay that they have experienced in

24  bringing it to the defendant's attention is slight given the

25  magnitude of the evidence in this case, the number of

03:55:05

1    witnesses and the fact that the situation she found herself in

2    was fluid and there was no reason to believe before March 1st

3    that she was going to flee the country at any period, at any

4    date that would force an expedited proceeding.

03:55:24    5         I believe on the other hand that the defendant is

6    entitled to properly prepare for this witness.  I think

7    Mr. Cheronis, after arguing that she's not a material witness,

8    also informed us that she would be a very important witness

9    and he would have to prepare mightily to cross-examine her.

03:55:45    10   I'll take him at his last word on that.

11        MR. CHERONIS:  Judge, if I could comment on that,

12   please?  Judge, if I could comment?

13        THE COURT:  Go ahead.

14        MR. CHERONIS:  What I meant by that is they could

03:55:54    15   potentially establish what they need by other means.  Now, if

16   they're going to try to establish it through her, then

17   certainly I'm going to need to prepare to cross-examine her.

18   That was my point, Judge.

19        THE COURT:  Okay.  But I think you did say she was an

03:56:09    20   important witness, didn't you?  "Very important witness" I

21   think you said.

22        MR. CHERONIS:  If they're going to call her.  And so

23   would the other witnesses they could prove it through, they

24   would be important as well, Your Honor.

03:56:17    25        THE COURT:  Okay.

1      MR. CHERONIS:  So the issue is -- respectfully, I was

2  not being disingenuous in my argument.  I was saying that if

3  they're going to call her, I need to prepare.  That said, they

4  could do it through other witnesses.

03:56:31    5      THE COURT:  Okay.

6      MR. JONAS:  Your Honor, it's Barry Jonas.

7      If I may just interrupt real quick?  So while we were

8  having this conference, we reached out to the case agents to

9  find out the status of this other witness that Mr. Cheronis

03:56:44   10  mentioned.  The agents checked, they double checked just now,

11  they had checked previously, and that person has been out of

12  the country since 2019.

13      THE COURT:  Okay.  My estimation of this witness's

14  importance remains the same.  She's the only witness that can

03:56:59   15  testify as to directly and from her own personal knowledge as

16  to one of the links in the chain as absolutely necessary to

17  establish the government's case.

18      So she is a material witness and I think she is an

19  important witness, frankly, for both sides.

03:57:21   20      I think two weeks to prepare for her

21  cross-examination is a sufficient amount of time if that is

22  given priority by defense counsel, as it should be.

23      I will continue this hearing until tomorrow morning

24  at -- Kerwin, what would be the best time for us, please?

03:57:40   25      THE CLERK:  Best time would be 11:00 o'clock a.m.

1    THE COURT:  Tomorrow at 11:00 o'clock a.m.  During

2   that time I would ask the government to follow up on the

3   possibility of getting the witness some medical care,

4   specifically I would assume at this point would be a biopsy in

03:58:02   5   spite of her illegal status here.

6        I would ask Mr. Madden to speak to his client and see

7   what her feelings are with respect to what the Court is

8   contemplating.

9        And I would ask all parties to get together and see

03:58:16   10   if they can't reach an accord that would leave I guess all of

11   them equally dissatisfied that we can proceed on.

12        Is there anything else I should address at this

13   point?

14        MR. JONAS:  Judge, it's Barry Jonas for the

03:58:31   15   government.

16        No, Judge.  I think we're good.

17        THE COURT:  Defense?

18        MR. CHERONIS:  We're good.

19        THE COURT:  Okay.  Mr. Madden?

03:58:40   20        MR. MADDEN:  Nothing further, Judge.  Thanks.

21        THE COURT:  All right.  Then the hearing is

22   terminated.  You are free to disengage.  Have a good day or

23   what's left of it anyhow.

24        MR. JONAS:  Thank you, Judge.

03:58:53   25        (Proceedings concluded)

1           C E R T I F I C A T E

2           I, Jennifer S. Costales, do hereby certify that the

3   foregoing is a complete, true, and accurate transcript of the

4   proceedings had in the above-entitled case before the

5   Honorable RONALD A. GUZMAN, one of the judges of said Court,

6   at Chicago, Illinois, on March 21, 2022.

7

8                      */s/ Jennifer Costales, CRR, RMR, CRC*

9                      Official Court Reporter

10                     United States District Court

11                     Northern District of Illinois

12                     Eastern Division