IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| Plaintiff, ) | |
| ) | No. 18 CR 611 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **Ji Chaoqun,** ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion to preclude recently tendered exhibits [251] is denied.

## STATEMENT

Defendant asserts that late disclosures by the government have forced him to make "a Hobson's Choice; that is, it puts him in the impossible position of going to trial without the benefit of having reviewed all of the untimely produced discovery or asking for a continuance all the while remaining incarcerated while awaiting the chance to establish his innocence." (Def.'s Mot. Preclude Recently Tendered Exs., Dkt. # 251, at 13.) The third alternative, which is the relief Defendant actually seeks, is an order proceeding with the set trial date but barring the use of the late-disclosed evidence. The late disclosures at issue are evidence from the October 2021 federal trial, (*United States v. Xu*, No. 18 CR 43 (S.D. Ohio)), of Yanjun Xu, Defendant's alleged co-conspirator and People's Republic of China ("PRC") agent, regarding Xu's attempts to collect personal background information on United States residents who could be recruited to steal proprietary scientific/technical information for use by the PRC.

On April 22, 2022, the government filed its *Santiago* proffer,[1] which Defendant maintains disclosed for the first time the government's intention to make Xu's prosecution the heart of the conspiracy case against Chaoqun. According to Defendant, with this disclosure, the government "broadens [its] . . . initial theory of the case." (5/4/22 Hr'g. Tr., Dkt. # 278, at 4.) Specifically,

---

[1] Out-of-court statements by co-conspirators may be admissible if the government convinces the Court, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy. *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009) (citing *United States v. Santiago*, 582 F.2d 1128, 1133-34 (7th Cir. 1978), overruled in part on other grounds by *Bourjaily v. United States*, 483 U.S. 171 (1987)).

the defense complains of the evidence regarding Xu's attempt to recruit individuals, Xu's conversations with professors in China, and Xu's calendar entries--many of which were entered under the category of "work"--which describe the day-to-day workings of the conspiracy, including summaries of meetings with other Ministry of State Security ("MSS") officers and a meeting with Ji. The calendar was initially produced sometime between March 28 and April 5, 2022. The government alleges that these entries, and what they describe, are acts in furtherance of Defendant's conspiracy to aid agent Xu's efforts to steal scientific/technical secrets for the PRC. The second prong of Defendant's challenge to the government's disclosures is the timing and manner in which the disclosures were made. Along with specific exhibits, the government also turned over what Defendant describes as an extremely large pool of information from which the exhibits were taken.

The Court first addresses the timeliness of the disclosures. There are three points of relevance to the evidence of Xu's other recruitment efforts: as acts in furtherance of the Ji conspiracy; as evidence of his position within the PRC; or as circumstantial evidence of the meaning and intent of his agreement with Ji. The indictment accuses Ji of conspiring with Intelligence Officer A (Xu), *and others known and unknown* to the grand jury, to commit an offense against the United States, namely, to knowingly act in the United States as an agent of a foreign government, namely, the PRC, without prior notification to the Attorney General of the United States as required by law, in violation of 18 U.S.C. § 951(a). As part of that conspiracy, Defendant is alleged to have agreed to assist Officer A (Xu) by covertly serving as an agent of the PRC while residing in the United States. The indictment further states that it was part of the conspiracy that, at Officer A's (Xu's) instructions, Ji obtained background reports of naturalized United States citizens who were born in Taiwan or China and worked at United States companies in science and technology industries.

Defendant contends that there is no evidence that he had anything to do with Xu's other recruitment activities. Further, Defendant asserts, until its recent discovery disclosures in its *Santiago* proffer and subsequent list of exhibits, the government had given no indication that it intended to demonstrate that Defendant was part of a larger conspiracy involving Xu's other recruitment efforts. Thus, Defendant seeks to bar all evidence about Xu's efforts to steal scientific and technology information from U.S. companies in which Defendant was not directly involved. If, however, the agreement between Defendant and Xu was to aid the PRC in obtaining commercial intelligence, then anything done in furtherance of this goal by co-conspirators will be admissible. Whether Defendant was a part of a broader conspiracy by the PRC depends on whether there is evidence that permits the reasonable inference that Defendant knew or must have known that he was one of similar PRC commercial espionage intelligence efforts with other participants and agents and, therefore, that he was joining a larger conspiracy. *See United States v. Fitzpatrick*, 32 F.4th 644, 2022 WL 1237005, at *4 (7th Cir. Apr. 27, 2022) ("[A]s long as a defendant 'knew the essential nature and scope of the charged conspiracy,' he 'need not [have] join[ed] a conspiracy at its inception or participate[d] in all of the unlawful acts in furtherance of the conspiracy to be convicted.'") (citation omitted). As set forth in its *Santiago* proffer, the government believes it has demonstrated, by a preponderance of the evidence, that Defendant could not have believed his was a unique exercise of espionage by the PRC--it would have been obvious that there would be other agents, indeed many students like himself, being recruited to secretly obtain information not otherwise available to the PRC. Based on the allegations in the indictment and the representations made in its *Santiago* proffer, the government contends it has made a preliminary showing that Ji

was part of the broader conspiracy and Xu's parallel conduct with other agents is admissible as acts in furtherance of the conspiracy.

Although Defendant argues that he is surprised by the government's assertion of this larger conspiracy theory, he was aware of the existence of the recently disclosed evidence concerning Xu's other efforts at least as far back as December 23, 2021. By that date, if not before, Defendant had in his possession the transcript of the testimony of the chief FBI special agent in the Xu trial, which referenced most of exhibits regarding Xu's other recruitment efforts, which Defendant now seeks to bar. It should also have been clear from the beginning that, whether the government was going to rely on a specific narrow conspiracy theory or a wider theory, Xu's actions and many of the exhibits Defendant complains of would be important proof of Xu's position within the PRC-- a critical part of the government's case against Defendant under any theory of the conspiracy. Though Defendant may not have received the exhibits themselves prior to the government's latest disclosures, he had most, if not all, of the information about the government's evidence against Xu as of December 2021 and chose not to request disclosure of the exhibits themselves. Thus, there is no surprise and no prejudice from the disclosure of the actual exhibits, most of which Defendant has known existed since December 2021. Thus, the exhibits are not excludable on the basis of an untimely disclosure.

The Court remains concerned, however, about the manner in which the government has made its disclosures. As Defendant points out, in disclosing the sixteen specific exhibits it will be using at trial, the government, on March 3, 2022, also provided Defendant with a spreadsheet of discovery from the Xu trial and offered for the first time to provide any items on the spreadsheet not already in Defendant's possession. Defendant's concern regards the time required for his counsel to review the bulk of the recently proffered evidence from the Xu trial to determine of what use it may be in his trial. It could very well be that, as the government asserts, there is nothing new of any importance and/or the bulk of the materials turned over is duplicative of prior disclosures. However, when the government fails to separate new disclosures from what has already been produced and simply produces or offers to produce large amounts of material, Defendant then must do the due diligence in preparation for trial. This situation, it appears, is the result of decisions made by both the government and Defendant. The government's offer of large amounts of information, which Defendant believes he must now examine, and Defendant's failure to have requested the production of this same information after learning of it months ago are both in play here.

Because the Court finds no prejudice from the timing of the disclosure of the government's sixteen exhibits, the motion to bar them is denied. Nevertheless, the government's disclosure was at best undisciplined and placed a burden on defense counsel to review large amounts of material. Therefore, if Defendant requests a continuance of the trial date in order to satisfy himself of the content of the remaining discovery from the Xu trial, it will be granted. Otherwise, the trial will commence as scheduled on June 6, 2022.

**Date**: May 18, 2022

_Ronald A. Guzmán_
**Ronald A. Guzmán**
**United States District Judge**