NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JI CHAOQUN | No. 18 CR 611<br><br>Judge Ronald A. Guzman |

**MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERTS**

On May 16, 2022, the defendant, through counsel, provided the government with a four-page expert disclosure identifying two purported experts, Donald Clark and Nick Lewin, whose testimony he will seek to use in his case. The expert disclosures are attached as Exhibit A. The government moves to exclude both experts, and states in support as follows:

**LEGAL STANDARD**

"The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert*[.]" *Lewis v. CITGO Petroleum Corp.,* 561 F.3d 698, 705 (7th Cir. 2009). Whether to admit expert testimony rests within the discretion of the district court. *See General Elec. Co. v. Joiner,* 522 U.S. 136, 142 (1997); *Lapsley v. Xtek, Inc.,* 689 F.3d 802, 810 (7th Cir. 2012). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard" by a preponderance of the evidence. *Lewis,* 561 F.3d at 705. District courts employ a three-part analysis before admitting expert testimony: (1) the expert must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying his testimony must be scientifically reliable; and (3) the

1

expert's testimony must assist the trier of fact in understanding the evidence or to determine a factual issue. *See Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). For both proposed experts, the government moves under the third prong to exclude their testimony.

## ARGUMENT

**I.  TESTIMONY OF NICK LEWIN**

The defendant disclosed that Nick Lewin, a former federal prosecutor and current law firm partner, will testify as to the following:

> It is expected Mr. Lewin will testify, based on his years of experience specializing in national security law, including investigations of alleged violations of 18 U.S.C. § 951, that the purchasing of the commercial background reports that are at issue in this case would reasonably qualify as legal commercial transactions under 18 U.S.C. § 951(d)(4), further defined by 28 C.F.R. § 73.1. Mr. Lewin will testify that a potential claim of a violation of the terms of service associated with the commercial websites at issue would not alter his opinion regarding the legality of the commercial transactions at issue in this case for purposes of 18 U.S.C. § 951(d)(4). Mr. Lewin will testify that the circumstances surrounding the transfer of the background reports, such as the alleged disguising of the true nature of the background reports for purposes of transferring the reports by electronic mail, would not alter his opinion regarding the legality of the commercial transactions at issue in this case for purposes of 18 U.S.C. § 951(d)(4).

Mr. Lewin's testimony must be excluded because it invades the province of this Court. Although the disclosure is vague,[1] it appears that Mr. Lewin is expected to opine on interpretations of the federal statute, 18 U.S.C. § 951, and related regulations. Mr. Lewin must not offer legal opinions. *Jimenez v. City of Chicago*, 732

---

[1] The disclosure notes the bottom-line conclusion—that Mr. Lewin will testify Ji's conduct satisfies the legal commercial transaction defense—but provides no further details about that conclusion, such as his actual interpretation of the provision or why or how the provision is satisfied.

F.3d 710, 721 (7th Cir. 2013) ("As a general rule, accordingly, an expert may not offer legal opinions."). This Court interprets federal statutes and regulations, not experts. *See* The William J. Bauer Pattern Crim. Jury Instr. of the Seventh Circuit ("Pattern Instructions"), at 6 ("As the judge in this case, one of my duties is to decide all questions of law and procedure. In these preliminary instructions, during the trial, and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision."). In fact, this Court has already interpreted the legal commercial transaction clause as part of the pretrial motion practice in this case. R. 204 at 6. The Court held that this clause is an affirmative defense. To the extent that there are further relevant interpretive issues, defense counsel can argue them to this Court, which will then decide the issue.

It is even more improper to present such testimony to the jury. This Court will instruct the jury as to the law. *See* Pattern Instructions at 6. As part of those instructions, the Court will interpret and define the law for the jury, who will then apply it. An expert witness has no role to play in instructing the jury on the law. *See Jimenez*, 732 F.3d at 721 ("It is the role of the judge, not an expert witness, to instruct the jury on the applicable principles of law, and it is the role of the jury to apply those principles of law to the facts in evidence."); *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (noting that "expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible"); *United States v. Johnson*, 223 F.3d 665, 671 (7th Cir. 2000) ("Witnesses testify about fact, not law. When a legal proposition is relevant to the jury's consideration, the proper

procedure is for the judge to instruct the jury on the proposition."). Allowing Mr. Lewin's legal interpretations would confuse the jury about whose legal interpretation they should follow—the Court or the expert witness's? It would also make the jury the arbiter of the law—having to decide between varying interpretations—which is inconsistent with its role in our legal system.

Mr. Lewin's testimony also must be excluded because it will invade the province of the jury. Apparently, Mr. Lewin will opine that Ji qualifies for the legal commercial transaction statutory defense. He will have reached this conclusion by applying his interpretation of the statute to the facts about Ji's conduct. But that's the job of the jury. *See* Pattern Instructions at 6 (noting the jury's role "is to take the law as I give it to you, apply it to the facts, and decide if the government has proved the defendant[s] guilty beyond a reasonable doubt [and whether the defendant has proved [insert defense]…"); *Andersen v. City of Chicago*, 454 F. Supp. 3d 808, 819 (N.D. Ill. 2020) ("The bulk of Waller's [expert] opinion on Andersen's confession amounts to an instruction on the law and application of the law to the facts. This invades the province of both the jury and this Court and Waller will not be permitted to testify to this piece of his opinion."). The Seventh Circuit has been clear, such as in *Jimenez* and *Good Shepherd*, that these two areas—legal opinions and applying the law to the facts for the jury—are impermissible areas of expert testimony. *See Good Shepherd*, 323 F.3d at 564 (upholding the district court's exclusion of expert testimony where the "proffered testimony was largely on purely legal matters and made up solely of legal conclusions, such as conclusions that the city's actions violated

4

the FHAA."). Once the Court instructs the jury on the legal commercial transaction defense, if appropriate, the jury will (a) find facts as to Ji's purchase and transmission of background reports; and (b) apply the law, as provided by this Court, to those facts to determine guilt.[2] Mr. Lewin's proposed testimony impermissibly supplants the role of the judge and jury in this process.

The disclosure about Mr. Lewin reflects confusion about the role of an expert witness in a criminal trial. The expert witness is supposed to assist the jury in understanding the evidence. *See Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). An expert witness, for example, can help the jury understand ballistic or forensic evidence, or the structure of the Chinese government. The expert witness is not supposed to substitute in for the judge or the jury. Here, Mr. Lewin's testimony seeks to do exactly that and must be excluded in its entirety.[3]

## II. TESTIMONY OF DONALD CLARK

According to the defendant's disclosure, Professor Clark is expected to offer the following opinions: (a) his interpretation of Chinese law, including that Chinese law "obliges Chinese citizens to cooperate with intelligence work"; (b) regardless of Chinese law, the Chinese state, unconstrained by Chinese law, "may credibly threaten a wide variety of consequences to those who do not cooperate when asked."

---

[2] The government reserves the right to challenge whether the defendant is entitled to an instruction on the legal commercial transaction defense.

[3] The government reserves the right to move to exclude Mr. Lewin's testimony under Rules 401 and 403 if the defendant discloses further details about the testimony.

5

The government moves to exclude Professor Clark's opinions because they are irrelevant, unduly prejudicial, and improper.

### A.    Professor Clark's opinions are irrelevant and unduly prejudicial

Professor Clark's opinions are irrelevant to any issue in this case. Irrelevant expert testimony must be excluded. *See Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993) (explaining the "court must determine whether a party's proffered expert testimony is relevant . . . .").

First, to the extent the defendant seeks to admit Professor Clark's opinions to negate the elements of the offenses the government must prove, Chinese law or the actions of the Chinese state as described by Professor Clark are irrelevant. The defendant is charged with violating American law, specifically 18 U.S.C. §§ 371, 951, 1343, and 1001. None of the charged statutes excuses a defendant's conduct or contains an exception if the defendant was a citizen of a Maoist, Communist, or authoritarian country. Similarly, none of the charged offenses contains an affirmative defense that turns on any of these issues.

Professor Clark's opinions likewise are irrelevant to any defense the defendant may raise. Professor Clark's generalized assertions about purported lawlessness and threats by the Chinese government appear to invoke a coercion or duress defense. Under these defenses, a defendant's criminal conduct is excused where the defendant can show "reasonable fear of imminent death or serious injury, and the absence of reasonable, legal alternatives to committing the crime." *United States v. Dingwall*, 6 F.4th 744, 746 (7th Cir. 2021); *see also* Pattern Instruction 6.08 (similar elements of the coercion/duress defense). Yet, based on conversations with defense counsel, it is

the government's understanding that the defendant will not assert a coercion or duress defense at trial. Rather, the defendant will challenge whether the government has met its burden of proof and seek to assert the legal commercial transaction defense. Thus, Professor Clark's opinions have no bearing on any defenses either.

Second, to the extent the defendant intends to assert Professor Clark's opinions are relevant, not to the charged crimes or defenses, but to determining the voluntariness of his statements to the undercover agent (UC), the proffered opinions are irrelevant to the circumstances of the defendant's actual interview. To be relevant, the expert would need to testify about the defendant's specific circumstances, including his subjective beliefs, but such testimony would be wholly improper.

As background, in his motion to suppress statements he made to the UC, the defendant argued that his statements were involuntary because "the undercover agent utilized the imprimatur of the Chinese government and tacitly if not explicitly relied on Chinese legal doctrines requiring Mr. Ji to speak to members of the Chinese government." R. 144 at 2. The defendant included a declaration from Professor Clark in support that rendered opinions similar to those the defendant seeks to admit now.

This Court denied the defendant's motion, finding that "Ji's statements to the UC were knowingly and voluntarily made." R. 208 at 5. It noted that (1) "the UC did not threaten Ji or his family with any type of harm, legal action, or criminal liability"; (2) Ji had not "referred to any subjective belief that he was required to respond to the UC"; and (3) Ji pointed "to no police coercion." *See id* at 3-5.

7

A jury is entitled to consider the defendant's "personal characteristics and circumstances under which the statement" was made to decide "how much weight to give to the statement." *See* Pattern Instruction 3.09. But Professor Clark can speak to neither of these factors. He does not know the defendant's personal characteristics. *Cf. United States v. West*, 813 F.3d 619, 624 (7th Cir. 2015) (allowing the admission of expert and lay testimony regarding the defendant's mental disabilities to show the defendant's personal characteristics during the time of the interview). And, he does not have any assistance to offer regarding the circumstances under which the statements were made. He was not present for the interviews. The jury can review the videos of the interviews, the testimony of the UC, and any potential testimony of the defendant to determine the weight to give to the statements.

Professor Clark's opinion are irrelevant to the jury's determination of what weight to give to the statement, because they say nothing about the circumstances in which the statements were made. Rather, Professor Clark's opinions are a veiled motion to suppress the defendant's statements to the UC. That motion, which included a declaration by Mr. Clark, has already been denied by the Court and cannot be re-litigated in front of the jury.

Specifically, there is nothing in the record to suggest that Chinese intelligence law or the requirements of Chinese authorities concerning cooperation constituted relevant circumstances of this interview. Neither the UC nor the defendant mentioned these factors during any of the meetings. Nothing in the record suggests that the defendant was aware of the purported cooperation requirements of which

8

Professor Clark seeks to opine. Thus, there is no indication that these requirements "might have influenced [defendant's] responses to the officers' questions . . . ." *See West*, 813 F.3d at 624. In this instance, it simply does not matter what Chinese law or Chinese authorities may or may not have required.[4] Professor Clark's testimony does not "fit" the facts of this case and is irrelevant.

In *United States v. Mamah*, 332 F.3d 475 (7th Cir. 2003), for example, the Seventh Circuit upheld the exclusion of two confession experts offered by the defendant, a Ghanian immigrant. The first expert, "a specialist in the culture of Ghana, would testify that behaviors adopted by Ghanaians in response to living under a military regime could lead them to make false confessions when confronted by law enforcement authorities." *See id*. at 476. The Seventh Circuit rejected this expert testimony, because it was irrelevant to the circumstances of the defendant's actual interview. The expert needed to, but could not, testify about the defendant's specific circumstances—that a Ghanian expatriate living in the United States who was interviewed in the United States was unusually likely to give a false confession. *See id*. at 478.

The same is true here: Professor Clark's opinions are also about the culture of China, in which the regime takes extralegal actions that include threats against citizens and family members. Like in *Mamah*, Professor Clark suggests this

---

[4] Professor Clark also cannot testify about whether the defendant had any subjective belief that he was required to respond to the UC's questions pursuant to Chinese laws or how the Chinese government acts. Whether the defendant felt compelled to respond is a question about the defendant's beliefs about Chinese law or Chinese government actions, which cannot be answered by a law professor.

9

relationship between citizens and the regime results in a belief that cooperation is required. Yet, like in *Mamah*, Professor Clark's opinions say nothing about whether the circumstances in China would lead *this defendant* to make a false confession here in the United States. There is no indication that this defendant was aware of those Chinese circumstances. And, even if he were, Professor Clark's opinions say nothing about whether that awareness would have led to a false confession in the context of this interview. Like the expert in *Mamah*, Professor Clark has presented no data or other evidence indicating a person in the defendant's situation was more likely to give a false confession. Taken to its logical conclusion, Professor Clark's opinion would mean that any statement made by any Chinese citizen to any government official would be involuntary. This absurdity demonstrates that Professor Clark's opinions would be unhelpful to the jury; they do not explain anything about the circumstances of this case.

The Seventh Circuit in *Mamah* also rejected the other defense expert who was going to testify about false confessions because his testimony also did not fit the case. *See id*. at 478. This expert "could testify that false confessions do occur, but he could not establish that Mamah was interrogated under circumstances that could produce a false confession." *See id*. There needed to be "an indication that Mamah was unusually susceptible to the FBI agents' methods of interrogation." *See id*. The same is true here. There must be some indication that the defendant was unusually susceptible, in that he knew and was concerned about being compelled to cooperate. No such evidence exists in this case. *See also United States v. Hall*, 974 F. Supp.

10

1198, 1206 (N.D. Ill. 1997) ("Unless Defendant can introduce some admissible testimony regarding the manner in which the interrogation occurred, such as testifying on the stand, the jury will not hear any evidence of coercive interrogation techniques and Dr. Ofshe's testimony would be rendered irrelevant.").

Although Mr. Clark's opinions are irrelevant, they also should be excluded under Rule 403 because they would create undue prejudice and cause juror confusion. *See West*, 813 F.3d at 624 ("Evidence bearing on the trustworthiness of a confession is generally relevant and admissible absent some specific reason to exclude it, such as unfair prejudice or juror confusion."). The jury will be led to believe wrongly that the defendant is asserting a sort of coercion defense—even though he is not and the jury will not receive an instruction on the parameters of the defense. If Professor Clark testifies that a Chinese citizen is required to cooperate with Chinese intelligence authorities under threats of harm (or worse), the jury inevitably will be led to speculate that the defendant conspired with the MSS and assisted them because he felt he was required to under threat of harm.[5] It is difficult to reconcile being compelled to respond to a purported MSS employee when in the United States yet not being compelled to MSS officers when in China. The jury will be speculating about a coercion defense.

This sort of juror confusion is precisely what Rule 403 is designed to prevent. *See United States v. Robbins*, 197 F.3d 829, 844 (7th Cir. 1999) (upholding the

---

[5] Professor Clark's opinions also are irrelevant for a coercion/duress defense. The criminal conduct was not directed by the UC; it had already occurred by the time the defendant and the UC interacted.

11

exclusion of evidence under Rule 403 that "would confuse and cause speculation among the jury"); *United States v. Pulido*, 69 F.3d 192, 201 (7th Cir. 1995) (evidence is unfairly prejudicial "if it will induce the jury to decide the case on an improper basis . . . rather than on the evidence presented."). It would also be unduly prejudicial to the government's case because the government will be unable to rebut the unasserted coercion defense about which the jury will be speculating. Because Professor Clark's testimony is irrelevant and would cause undue prejudice and confusion, it should be excluded.

### B. Professor Clark cannot opine on the defendant's state of mind

According to the disclosure, Professor Clark will testify that Chinese "citizens know" that the Chinese government can carry out threats even if those threats lack a legal basis. Presumably, the unstated conclusion to this statement is that the Chinese state will threaten unspecified consequences for failure to cooperate with intelligence work, and the citizens know this. This testimony on what citizens believe is crucial to Professor Clark's opinion. Citizens cannot feel compelled to act unless they believe some source is compelling them (here, the Chinese state carrying out threats without a legal basis). But this testimony is improper.

First, Professor Clark cannot testify to what Chinese citizens believe. An expert cannot testify about what a defendant knew or believed. *See, e.g.*, Fed. R. Evid. 704(b); *United States v. Beavers*, 756 F.3d 1044, 1054-55 (7th Cir. 2014) (upholding exclusion of expert testimony about defendant's beliefs and state of mind, in part because such testimony would allow defendant to present favorable statements of his without cross-examination); *Rowe v. Gibson*, 798 F.3d 622, 627 (7th Cir. 2015) ("the

12

knowledge requirement of Rule 702 requires the expert to provide more than a subjective belief or unsupported speculation") (quotation and citation omitted); *Sec. and Exchange Comm. v. Lipson*, 46 F. Supp. 2d 758, 763 (N.D. Ill. 1998) (excluding expert testimony on individuals' beliefs). But, on a more practical level, the notion that all 1.4 billion Chinese citizens all must hold a particular belief is absurd and improper. Such an extreme claim requires serious proof; none is offered in the expert disclosure.

Second, Professor Clark's testimony about what Chinese citizens "know" is an end-run around the prohibition on testimony about the defendant's mental state. Whether the defendant felt compelled is a factual question about the defendant's mental state—what he knew and believed. The defendant can testify to these facts but not Professor Clark. Professor Clark's testimony about what Chinese citizens "know" is a backdoor for trying to establish what the defendant must have known about Chinese law or Chinese authorities. Professor Clark has no basis for establishing what the defendant knew or believed about Chinese law or Chinese authorities' actions regarding intelligence cooperation.

### C. Experts should not opine on interpretations of foreign law

Professor Clark's opinion interpreting Chinese law also is improper testimony for the jury because it invades the province of this Court. The Seventh Circuit has repeatedly criticized the use of foreign law experts. *See Sunstar, Inc. v. Alberto-Culver Co.*, 586 F.3d 487, 496 (7th Cir. 2009); *Bodum USA, Inc. v. La Cafetiere, Inc.*, 621 F.3d 624, 628-29 (7th Cir. 2010). Judges are the experts at interpreting the law,

and they should do so for federal, state, or foreign law. The *Sunstar* Court explained the reasoning as follows:

> But the lawyers who testify to the meaning of foreign law, whether they are practitioners or professors, are paid for their testimony and selected on the basis of the convergence of their views with the litigating position of the client or their willingness to fall in with the views urged upon them by the client. Those are banes of expert testimony. When the testimony concerns a scientific or other technical issue, however, it may be unreasonable to expect a judge to resolve it without the aid of such testimony. But judges are experts on law, and there are published materials on foreign law, in the form of treatises, law review articles, and cases. Of course the most authoritative literature on the law of a foreign country is apt to be in a language other than English. But the parties can have the relevant portions translated into English; judges can handle translations, which figure prominently in a variety of cases tried in American courts, such as drug-trafficking and immigration cases. Relying on paid witnesses to spoon feed judges is justifiable only when the foreign law is the law of a country with such an obscure or poorly developed legal system that there are no secondary materials to which the judge could turn.

*Sunstar*, 586 F.3d at 495-96.

Even worse is to have an expert interpret the law *for the jury*. As detailed above regarding the proposed testimony of Mr. Lewin, the Seventh Circuit has made clear that this Court must instruct the jury about the applicable law and legal principles, not an expert. *Cf.* Fed. R. Civ. P. 44.1 ("The court's determination [about a foreign country's law] must be treated as a ruling on a question of law."); Advisory Cmte. Notes to Rule 44.1 ("It has long been thought, however, that the jury is not the appropriate body to determine issues of foreign law. . . . And Federal courts that have considered the problem in recent years have reached the same conclusion without reliance on statute."). Here, as discussed above, the government does not believe that Chinese law bears on any issue of relevance at the trial. The jury should not be

14

instructed on Chinese law, and the parties should not be permitted to elicit testimony on Chinese law. However, if the Court nonetheless deemed a provision of Chinese law is relevant to the jury's consideration, this Court will provide the jury with the appropriate legal instruction regarding that provision. A hired expert should not do so.

If necessary, the parties can provide the Court with English-language translations of the Chinese laws so the Court can render its interpretations. In doing so, the Court can also consider the declarations of Professor Clark and other experts, agency decisions, and other written materials that have discussed these laws. *See* R. 177, 192 (referencing declarations, orders, and articles). Collectively, the Court has substantial information to interpret the referenced Chinese laws. Once it does so, if necessary, it can instruct the jury accordingly.

Beyond that, according to the expert disclosures regarding Professor Clark, it does not appear that the Chinese law is even relevant to the issues of whether, how, and to what extent Chinese citizens must cooperate with Chinese intelligence work. The disclosures repeatedly state as much:

1. "Because the Chinese state is not constrained by Chinese law, those threats can be carried out even if they lack a legal basis, and citizens know this."

2. "A citizen is not in a position to cite the absence of a legally stipulated sanctioning mechanism as a reason for not complying with a request to cooperate."

3. "[T]he key question is not what Chinese *law* says about the ability of the Chinese government to require citizens to provide information and assist in

15

intelligence gathering. The question is what the Chinese government can *actually require*."

4. "[T]he Chinese government is not meaningfully constrained by Chinese law. . . . The Chinese Party-state is not meaningfully constrained by Chinese law."

5. "The Chinese state is not meaningfully constrained by law, and therefore state agents may credibly threaten a wide variety of consequences to those who do not cooperate when asked."

Professor Clark should be precluded from testifying to the jury about Chinese law. It is not his role to interpret law for the jury, and, in any case, such testimony is irrelevant and bound to simply confuse the jury.

## CONCLUSION

For the foregoing reasons, the government requests that the proposed testimony of Mr. Lewin and Mr. Clark be excluded.

Respectfully submitted,
JOHN R. LAUSCH, JR.
United States Attorney

By:   */s/ Vikas Didwania*
VIKAS DIDWANIA
BARRY JONAS
Assistant U.S. Attorneys
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-8898

Date: May 31, 2022