IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **United States of America,** ) | |
| **Plaintiff,** ) | |
| ) | No. 18 CR 611 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| **Ji Chaoqun,** ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the government's motion for a protective order pertaining to the trial testimony of an undercover employee [237] is granted. Specific directions regarding the logistics of the undercover employee's appearance at trial and the accompanying protections will be set forth in a separate order.

## STATEMENT

At trial, the government intends to call as a witness an undercover employee who was involved in the investigation that led to the arrest and prosecution of Defendant. As part of that testimony, the government plans to play video recordings of the undercover employee's meetings with Defendant. The government moves to allow the undercover employee to testify using a pseudonym; to restrict the courtroom audience during the undercover employee's testimony to the Court, essential courtroom personnel, the jury, Defendant and his counsel, Defendant's immediate family members, and the government's trial team; to be allowed to digitally obscure the facial images of the undercover employee on any recorded video footage played over the CCTV feed during court proceedings; to bar public disclosure of any audio recording or similar reproduction of the voices or visual images of the witness while testifying; and to allow the undercover employee to use non-public entrances and exits to the courthouse and the courtroom, when entering and leaving the courtroom outside the presence of the jury. (Gov't's Mot. Protective Order, Dkt. # 237, at 2-3.)[1]

The government asserts that public disclosure of the undercover employee's true identity, physical appearance, and personal identifying information would pose a risk of danger to the witness and his/her family and jeopardize other undercover investigations. Moreover, the government contends that public disclosure of the undercover employee's past or pending

---

[1] The government's publicly filed motion is accompanied by the government's *ex parte* and *in camera* motion for a protective order and reply brief, which attach sworn declarations of Nikki Floris, the acting Assistant Director of the Counterintelligence Division of the FBI, in support of the request for a protective order pursuant to the Classified Information Protection Act ("CIPA"), Sections 4 and 6(c) and Fed. R. Crim. P. 16(d)(1).

investigations or operations or his/her knowledge of FBI training and operations would be harmful to the national security.

Because it does not appear that Defendant objects to the government's motion for a protective order insofar as it seeks to prevent disclosure at trial of the government's undercover employee's true identity; requests that the undercover employee testify using a pseudonym; and asks that defense counsel be barred from asking questions on cross-examination that are designed to elicit identifying personal information about the undercover employee (including name, address, date or place of birth, or other personal information), these aspects of the government's motion are granted without objection.

Defendant, however, seeks an order directing that the undercover employee's personal identifying information be disclosed to defense counsel on an "attorney's eyes only" basis. The government objects, asserting a compelling interest in withholding information that implicates the national security from unauthorized persons. CIPA's fundamental purpose is to protect and restrict the discovery of classified information while at the same time protecting the defendant's right to a fair trial. In essence, it requires a court to rule on the relevance of classified information before it may be disclosed. *United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005). In *Roviaro v. United States*, 353 U.S. 53 (1957), the Supreme Court delineated the government's right to withhold the identify of an informant from the defense in general:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Id*. at 62. In *United States. v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989), the District of Columbia Circuit concluded that CIPA procedures to protect a government privilege in classified information are to be determined in a manner similar to the informant's privilege identified in *Roviaro*. Under the *Yunis* approach, in considering the government's claim of privilege, the Court ascertains whether the government has a national security interest in protecting the information at issue and whether the material is "helpful" to the defendant. *Id*. at 622-25 ("[C]lassified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege[;] . . . the threshold for discovery in this context . . . [means] that a defendant seeking classified information, . . . is entitled only to information that is at least 'helpful to the defense of [the] accused.'") (citation omitted).[2] Some courts have further engaged in a third step, under which the Court balances the interests at stake. *See id*. at 625 (noting the balancing test applied by the district court as set forth in *Roviaro*, but

---

[2] As to the initial determination, CIPA provides for a pretrial conference under 18 U.S.C. App. 3 § 2, and the Court is empowered to conduct an *in camera* hearing and/or examination of the disputed materials. *See id*. § 6.

neither adopting nor rejecting it); *see also United States v. Hanjuan Jin*, 791 F. Supp. 2d 612, 617 (N.D. Ill. 2011). The Court follows the balancing-test approach.

Here, given Defendant's concession noted above, the question before the Court regarding the undercover employee's personal identifying information is not whether the government may withhold that information from public disclosure, but whether the government may withhold the information from defense counsel under an "attorney's eyes-only" restriction. Although the considerations are somewhat different under this defense request, the analysis is basically the same. The Court must ascertain the validity of each party's position then weigh Defendant's need for the information (in the form requested by Defendant) against the governmental interest in keeping the information confidential.

The defense argues that a material witness' identity and address are presumed to be material as such information forms the foundation for cross-examination of a witness whose credibility is at issue. *See Smith v. Illinois*, 390 U.S. 129, 131 (1968). Nevertheless, trial courts have been given wide latitude to impose reasonable limits on cross-examination to relieve concerns about the witness's safety and to avoid repetitions or marginally relevant interrogations. *See Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Perryman*, 20 F.4th 1127, 1136 (7th Cir. 2021). The Seventh Circuit has stated that the right of the defendant to have a witness's true name, address and place of employment is not absolute. *See United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969) ("[T]he [Supreme] Court [has] recognized that questions which tend merely to harass, annoy, or humiliate a witness may go beyond the bounds of proper cross-examination" and that one could "place in the same category those inquiries which tend to endanger the personal safety of the witness.") (citation and internal quotation marks omitted).

The Court has reviewed the government's *ex parte* and *in camera* motion in support of its motion for a protective order and the supporting declarations of Nikki Floris, which were also filed *ex parte* and *in camera*. Based upon its review of these filings and the government's public filings, the Court finds that the true name of the government's undercover witness is properly deemed classified and that public disclosure of his/her physical appearance and personal identifying information could be expected to cause serious damage to national security in that it would likely destroy the effectiveness of the undercover employee going forward. In addition, such information could expose the undercover employee and his/her family to danger in the form of reprisals from hostile foreign powers.[3] The government's interest in maintaining the

---

[3] In apparent reference to this argument, Defendant contends that "the government's prior arguments now contradict their current claims," and that this fact "should carry some significance and impact the Court's assessment." (Def.'s Resp., Dkt. # 250, at 8.) Defendant offers no further elaboration, and his point is not clear to the Court. In its response to Defendant's motion to suppress statements Defendant made to the undercover employee, the government opposed Defendant's motion in part because he failed to point to specific Chinese laws or interpretations of those laws indicating that Chinese citizens are compelled, pursuant to a fear of their personal safety being compromised, to speak to Chinese state security officers. (Gov't's Resp. Def's Mot. Suppress, Dkt. # 177, at 13.) In its response, the government pointed to an expert's declaration in a proceeding before the Federal Communications Commission,

confidentiality of this information can outweigh the usefulness of such information to the defense. *See Ayala v. Speckard*, 131 F.3d 62, 72 (2d Cir. 1997) (noting that the government's interest in protecting the safety of its undercover employees and its interest in protecting the continued effectiveness of an undercover employee are both substantial overriding interests). Here, although the Defendant requests that the undercover employee's personal information be disclosed only to counsel and not that it be made public, the government fears that defense counsel will use the undercover employee's personal information to conduct further research into his/her personal background, thus exposing that information more broadly. The government's concern is valid. The use of the undercover employee's personal information as a basis for conducting a wider search would increase the likelihood of exposing, however inadvertently, the identity of the undercover agent and his/her family.[4]

On the other side of the balancing test, other than a general claim that withholding the undercover employee's personal identifying information would contravene "basic fundamental constitutional protections," Defendant does not describe how the information would be helpful to the defense. The inability to disclose "attorney's eyes only" information to the public or even Defendant would substantially limit the helpfulness of the information to the defense. The defense intends to attack the voluntariness of Defendant's statements to the undercover employee by showing that Defendant generally felt compelled to comply with the requests of the Chinese government and, believing that the undercover employee was a Chinese government agent, therefore compelled to comply with the undercover employee's instructions. If so, the undercover employee's personal information would seem to be completely irrelevant. At the time of his alleged acquiescence, Defendant did not know anything about the agent's true identity or background, so this information could not have been a factor in causing Defendant to feel intimidated or pressured. Moreover, Defendant's rights to confront witnesses and to a public trial will not be significantly impaired. The witness will be cross-examined in person in front of Defendant, the defense team, and the jury, so his credibility may be adequately tested and judged. Through closed-circuit video, the public will be able to witness the undercover employee's testimony with only his face obscured from public view. These are minimal restrictions which substantially protect Defendant's constitutional rights. Defendant has failed to demonstrate that disclosing the undercover employee's personal identifying information to defense counsel would be helpful to Defendant.

---

which "explained that, contrary to [Defendant's] claims, China's National Intelligence Law does *not* require cooperation that would contradict the legitimate rights and interests of persons, would violate persons, would violate the laws of another country, or if the person is outside China." (*Id*.) (emphasis added). Defendant appears to be arguing that the government cannot now rely on personal-safety concerns to the undercover employee or his family in opposing disclosure of his/her true identity because it dismissed similar concerns by Defendant in opposing his motion to suppress. But whatever safeguards Chinese security laws may contain for its citizens, it does not follow that any such safeguards would apply to undercover foreign agents. It is clear from the Floris declaration that the FBI has good reason to believe that its undercover employee's safety would be compromised if his/her true identity and address were disclosed to either defense counsel or the public.

[4] The government does not dispute that it is required to disclose any favorable or impeachment information under the *Brady/Giglio* holdings and has provided to Defendant the training record of the undercover employee with the true name deleted.

Defendant further objects to the government's request that he be prohibited from asking any questions about the witness's participation in past or pending investigations or operations or the FBI's undercover training programs. Defendant argues that the relevance of the agent's contacts and communications with him, and specifically the identity the undercover employee assumed to obtain information from Defendant during the "false-flag role player operation," is relevant and important because defense counsel will challenge the voluntariness of Defendant's statements during those encounters. Defendant already knows the undercover employee's assumed persona (*i.e.*, his "false-flag" identity) from his meetings with the undercover employee. The defense also has full knowledge of the undercover employee's contacts and communications with Defendant, and the government has produced video recordings and transcriptions of these meetings as well as the training record for the undercover employee.

Defendant contends that information regarding the undercover employee's past investigations and his operational training is highly relevant because Defendant is seeking to prove that he was coerced into participating in the intelligence operation by the undercover employee's utilization of Chinese law, which purportedly requires "that when questioned by representatives of its government, its citizens, regardless of territorial location, are required to answer questions without exception." (Def.'s Resp., Dkt. # 250, at 6.) The import of this argument is unclear given that the defense hinges not on the undercover employee's training or experience but on his interactions with Defendant and his resulting state of mind. Asking the undercover employee what his training consisted of is only slightly probative, if at all, of Defendant's state of mind when he interacted with the undercover employee. What is relevant is what the undercover employee said, did, or asked during his meetings with Defendant and Defendant's reaction to the same. This point is made clear by defense counsel's own argument that the "disputed" recordings of the interactions between the undercover employee and Defendant reveal "a number of techniques, subtle perhaps but clear in implication–to threaten, intimidate, and ensure [Defendant] would respond to questioning." (*Id*.) Defendant fails to elaborate on these techniques, so the Court is left only with counsel's conclusory description. Regardless, as Defendant himself notes, any threats or intimidation, subtle or otherwise, will be seen by the jury in the video recordings that the government has fully disclosed. The Court previously reviewed the recordings of Defendant's meetings with the undercover employee when considering Defendant's motion to suppress the statements he made during those meetings. Despite Defendant's claim of coercion caused by the laws of the PRC, the Court found no evidence of any such coercive effect. On the contrary, the Court found that the undercover employee did not mention any Chinese laws or threaten or coerce Defendant in any manner, and that the interchanges between them were relaxed and casual. (11/16/21 Mem. Op. & Order, Dkt. # 208, at 5.) At no time was Defendant in custody or under any physical restraints, nor did he exhibit fear. (*Id*.) The undercover employee's training and previous operational experience, therefore, appear to be largely irrelevant and not helpful to Defendant.[5] Counsel's cross-examination of the undercover employee as to what he did or said to coerce Defendant is not only fully unimpeded by the government's request for a protective order, but also facilitated by

---

[5] Defendant also mentions the undercover agent's "veiled threats," but as with the allegations of "subtle" coercion techniques, Defendant fails to describe the veiled threats; thus, the Court is again left to consider only counsel's conclusory language.

5

the government's video recordings, which fully capture their meetings and have been made available to defense counsel. Thus, Defendant has a clear path to point out any conduct, subtle or otherwise, by the undercover employee that Defendant believes demonstrates coercion or intimidation.

      The government, on the other hand, notes the need to maintain the confidentiality of information regarding the FBI's training methods, the tradecraft used by its undercover operatives to gain the trust of its targets, the manner in which the personas of its operatives are developed, the methods of recording conversations, and its use of social-media platforms. Such information, if it became public, could be used by foreign counterintelligence services to discover and nullify the FBI's ongoing and future attempts to gather intelligence. Further, disclosure of an undercover employee's past or pending investigations could be used to nullify future investigations and to discover his/her true identity. Information about the FBI's undercover employees' training and tradecraft would likely result in specific countermeasures to thwart both future and ongoing foreign intelligence operations. The Court has reviewed the Floris declarations and finds that the particularized reasons given for the need to conceal information about the FBI's undercover training programs and the undercover employee's past or pending operations are persuasive. Accordingly, the Court finds that the government's need to protect the national security and maintain the confidentiality of this information far outweighs the limited helpfulness of such information to the defense's theory of the case.

      For the reasons stated above, the government's motion for a protective order is granted. Specific directions regarding the logistics of the undercover employee's appearance at trial and the accompanying protections will be set forth in a separate order.

**Date**: July 6, 2022

**Ronald A. Guzmán**
**United States District Judge**