# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| Plaintiff, | ) | |
| | ) | **No. 18 CR 611** |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| Ji Chaoqun, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motion in limine to preclude or limit the testimony of the government's anticipated expert witnesses [246] is denied.

## STATEMENT

The government served its expert disclosures on April 22, 2022, identifying four experts, including (1) unspecified FBI translators; (2) unspecified computer forensics witnesses; (3) Joe McReynolds; and (4) James Olson. Defendant seeks to preclude or limit the testimony of these witnesses.

With respect to the translators, Defendant does not move to bar any prospective translator at this time, but "brings to the Court's attention" that the government has not delivered final transcripts nor has specified which items of evidence were reviewed or generated by the translators. Defendant asks that the government identify any potential translator experts, make appropriate disclosures, and produce final transcripts to be used at trial. Regarding the computer forensics witnesses, Defendant asks that the government be required to identify any such experts and make the appropriate disclosures. Based on the government's representation in its response that it is in discussions with Defendant to provide the requested information, the Court defers ruling on these two issues.

Defendant's arguments with respect to McReynolds and Olson are twofold: (1) failure to comply with Federal Rule of Criminal Procedure ("Rule") 16; and (2) failure to satisfy Federal Rule of Evidence 702.

Rule 16(a)(1)(G) requires that "[a]t the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use [as expert testimony] during its case-in-chief at trial," which includes "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Defendant contends that the government failed to describe the actual opinions of McReynolds and Olson, including the bases and reasons for them, and instead listed general and broad topics on which the experts would opine. As set forth in Defendant's brief, the government provided a lengthy summary of McReynolds' opinions, which include, among other things, the following: the

structure of the People's Republic of China's ("PRC") Ministry of State Security ("MSS"); the MSS's development of a sophisticated technology-transfer program and use of traditional and cyber espionage; the PRC's deliberate, state-sponsored project to circumvent the costs of research and overcome cultural disadvantages by leveraging the creativity of other nations; the PRC's use of certain organizations through which the MSS operates; the PRC's use of Chinese universities and companies as state-directed instrumentalities; and relevant history related to the Chinese intelligence operation. (Gov't's 4/22/22 Letter, Dkt. # 248, at 2-4.)

As to the bases of McReynolds' opinions, the government states:

> The bases of Mr. McReynolds' opinions include his experience of over one decade in researching Chinese intelligence operations and industrial espionage in various forms, including the organizational structure and culture of the Ministry of State Security and affiliated organs, his serving as a lead editor and co-author of the book *China's Evolving Military Strategy*, which includes a chapter on the evolution of Chinese intelligence operations, and his Chinese-language research into the relevant institutions and organizations underlying this case. Although he holds a Top Secret security clearance through his employer, the SOSi Center for Intelligence Research and Analysis, his research work is conducted using open sources and none of the topics under consideration here touch on any classified knowledge he is privy to.

(*Id*. at 4.)

Regarding Olson, the government states that he "will testify regarding China's strategy with respect to economic espionage, the tradecraft used by the [MSS] to illicitly acquire technology from foreign entities, and the specific application of such tradecraft by the defendant, based on the evidence in this case." (*Id*. at 4-5.) The government then sets forth numerous topics on which Olson is expected to testify, including but not limited to, the role of the MSS as the principal external intelligence service for China; China's methods, tactics, and techniques for the illicit acquisition of technology from non-Chinese companies and countries; the MSS's use of aliases, covers, and science and technology associations in conducting espionage activities; the MSS's use of many of the same practices and techniques employed by case officers and intelligence services around the world; the MSS's aggressive use of Chinese travelers and ethnic Chinese who live and work abroad, and Chinese students studying abroad for espionage operations; and the MSS's recruitment of new sources (or agents) through a process termed "the recruitment cycle." (*Id*. at 5.)

The government further states that Olson will testify, among other things, regarding the MSS's tactics for technology acquisition and espionage tradecraft and will apply those techniques and tactics to the facts and evidence of the present case; as to how MSS officers without diplomatic immunity (e.g., Yanjun Xu) avoid operating inside the U.S. and how they use "access agents" and "co[-]optees" in the U.S. to do their spotting, assessing, and other tasks; as to the MSS's pattern of encouraging and directing co-optees to stay in the U.S., acquire citizenship, and eventually obtain a job (preferably with a clearance) in the U.S. government or the high-tech sector; and that hotel meetings are a standard clandestine practice. The government then states that it expects Olson to testify as certain other aspects of the instant case, including but not limited to how

Defendant was "courted" and recruited; why the payments by the MSS to Defendant were significant; his opinion on the meaning of the false statements by Defendant on government forms; and the lack of coercive behavior towards Defendant by the MSS.

While some of McReynolds' and Olson's testimony may take the form of general background and history of China's intelligence efforts, it remains opinion testimony and the government states that the testimony will be presented as such. The government has provided significant detail regarding the opinions to be offered, and the Court disagrees with Defendant's contention otherwise. As to McReynolds specifically, in addition to detailing his opinions, the government provided to the defense a copy of the trial testimony of James Mulvenon, who worked with McReynolds and testified at the October 2021 trial in *United States v. Xu*, No. 18 CR 43 (S.D. Ohio), on topics similar to those expected from McReynolds.

Nor is Defendant's assertion that the government failed to provide the "bases and reasons" for McReynolds' or Olson's testimony well-taken. The government indicates that the bases for the opinions are the witnesses' education and work history. *See United States v. Jackson*, 51 F.3d 646, 651 (7th Cir. 1995) (government's disclosure of bases and reasons was sufficient when it stated that "the officers' testimony would, in part, be based on the use of beepers, firearms, walkie-talkies and wire transfers," and that the officers "would 'base their testimony on their years of training and experience in the area of drug investigations'"). The Court concludes that the government's disclosures regarding McReynolds and Olson comply with Rule 16.

With respect to the witnesses' qualifications, "Federal Rule of Evidence 702 allows an expert qualified by knowledge, skill, experience, training, or education to opine on relevant matters that assist the jury in determining a fact at issue." *Narsimhan v. Lowe's Home Centers, LLC*, No. 19 CV 1255, 2022 WL 952443, at *4 (N.D. Ill. Mar. 30, 2022). "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (noting that "'extensive academic and practical expertise' in an area is certainly sufficient to qualify a potential witness as an expert") (citation omitted); *see also United States v. Parkhurst*, 865 F.3d 509, 516 (7th Cir. 2017), *modified on different grounds, United States v. Jett*, 908 F.3d 252 (7th Cir. 2018) (stating that the defendant's "focus on scientific-reliability factors is misplaced" when the detective's "expert testimony was based on his extensive training and experience . . . . [which] are proper foundations for expert testimony"). "A *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Moreover, the Supreme Court has noted that "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable," and "should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of expert testimony." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999). "Rule 702 grants the district judge the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case." *Id*. at 158.

Given its knowledge of the facts of the case and the charges alleged and having reviewed the opinions to be offered by McReynolds and Olson, the Court concludes that these experts' anticipated testimony will assist the jury. While not scientific, the topics on which McReynolds

and Olson intend to testify--including but not limited to the history and structure of the MSS and its recruitment schemes, and China's methods for the illicit acquisition of technology--are not within a typical juror's base of knowledge.

Moreover, the Court has reviewed the witnesses' curriculum vitae, which include the witnesses' educational and professional work histories, and concludes that both McReynolds' and Olson's education and work experience qualifies them to provide reliable testimony to the jury. McReynolds attended the Georgetown School of Foreign Service, where he received a Bachelor of Science in Foreign Service and a Master of Arts in Security Studies. He is currently the Chief for Global Information Operations and Cyber at SOSi LLC's Center for Intelligence Research and Analysis, the China Security Studies Fellow at the Jamestown Foundation, and a co-founder of the China Cyber and Intelligence Studies Institute. He is the lead editor and co-author of a book entitled *China's Evolving Military Strategy* (Brookings Press, 2016), and the upcoming *Chinese Information Warfare* (2022). According to his curriculum vitae, "[h]e has expertise in a range of Sino-American national security issues, including China's illicit technology infiltration efforts, information warfare operations, defense science and technology development, and IT sector civil-military integration" and served as a foreign policy advisor to the Clinton 2016 and Biden 2020 presidential campaigns. McReynolds is fluent in Mandarin, which the government notes, "allows him to review primary sources for his research." (Gov't's Resp., Dkt. # 265, at 9.) Olson obtained both his Bachelor of Arts in Mathematics and Economics and Juris Doctorate from the University of Iowa and attained the rank of Lieutenant Commander in the U.S. Navy. He was a career officer in the Directorate of Operations of the Central Intelligence Agency ("CIA"), where he served mostly overseas in clandestine operations and acted as the Chief of Counterintelligence at CIA Headquarters in Langley, Virginia. He is the author of a book entitled "To Catch a Spy: The Art of Counterintelligence." Olson testified as an expert witness in the *Xu* trial in the Southern District of Ohio.

Defendant contends that McReynolds is not qualified because the chapter he authored in *China's Evolving Military Strategy* is named "China's Military Strategy for Network Warfare," a topic that is not at issue in this case, and even considering the entire book, it has "no specific nexus to the proffered opinions or testimony." (Def's. Reply, Dkt. # 276, at 5.) The government contends that the book includes a discussion of MSS's operations, which will be addressed at length during the trial. While the specific chapter McReynolds wrote may not directly apply to every topic on which McReynolds testifies, portions of the book are relevant to the instant case. As for Olson, Defendant asserts that he should not be allowed to testify to Defendant's state of mind and cites to another case in this district in which the judge excluded an expert's opinion that, based upon the expert's review of "red flags" in the relevant materials, the defendant in that case "willingly and knowingly engaged in activities to obtain substances through fraudulent means." (Def.'s Reply, Dkt. # 276, at 6) (citing *United States v. Stelmachowski*, No. 15 CR 339, Dkt. # 121). The government contends that it does not anticipate that Olson will testify as to Defendant's state of mind, as described in Federal Rule of Evidence 704(b), and asserts that any testimony about Defendant's "use of deceptive practices, consistent with a co-optee's behavior," is not about Defendant's mental state. (Gov't's Resp., Dkt. # 265, at 13.) The Court sees no basis at this time on which to exclude all testimony by Olson that certain behavior by Defendant aligns with the type of conduct exhibited by individuals who are attempting to deceive or avoid detection in the espionage or intelligence context. Defendant's objection under Rules 704(b) is, therefore, denied

4

at this juncture. The Court will address any specific objections, including hearsay objections and those under Federal Rules of Evidence 403 and 704(b), in the context of trial.

To the extent Defendant believes that the government's expert witnesses' qualifications are thin or irrelevant, Defendant is free to cross-examine them in this regard. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

**Date:** July 18, 2022

**Ronald A. Guzmán**
**United States District Judge**