IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 CR 611 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| **Ji Chaoqun,** | ) | |
| Defendant. | ) | |

## ORDER

For the reasons stated below, the government's *Santiago* proffer and motion to admit out-of-court statements [241] is granted in part and denied in part.

## STATEMENT

Currently before the Court is the government's April 22, 2022 *Santiago* proffer and motion to admit out-of-court statements. The Court assumes knowledge of the background facts and issues associated with this case; the background information that is relevant to the instant motion is set forth in the next three paragraphs.

Out-of-court statements by coconspirators may be admissible if the government convinces the Court, by a preponderance of the evidence, that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy. *United States v. Alviar*, 573 F.3d 526, 540 (7th Cir. 2009) (citing *United States v. Santiago*, 582 F.2d 1128, 1133-34 (7th Cir. 1978), *overruled in part on other grounds by Bourjaily v. United States*, 483 U.S. 171 (1987)). After the government filed its *Santiago* proffer, Defendant responded on May 9, 2022, and the government filed its reply on May 16, 2022. On May 17, 2022, Defendant filed a sur-reply. In a related matter, on May 18, 2022, the Court denied Defendant's motion to preclude recently tendered exhibits. In doing so, the Court addressed the two primary concerns raised by Defendant's motion to preclude: the timeliness of the government's disclosures and the relevance of its exhibits. The relevance issue hinged on the scope of the alleged conspiracy. In overruling Defendant's relevance objection, the Court determined that the government's indictment and *Santiago* proffer were sufficient to make a preliminary showing of the existence of a broader conspiracy, and that Ji must have known that by partnering with Yanjun Xu, a Chinese intelligence agent, he was becoming a member of a larger conspiracy on behalf of the Chinese government. At that point in the proceedings, however, the Court had not formally ruled on the government's *Santiago* proffer. At an in-court hearing on May 18, 2022, the Court directed the government to file a statement to further clarify the parameters of the alleged conspiracy. In its statement, the government maintains that the alleged conspiracy was to further the mission of the Ministry of State Security ("MSS") of the People's Republic of China ("PRC"), including through the gathering of intelligence and recruitment. The Court now issues

its formal ruling on the government's *Santiago* proffer.

The government's proffer identifies the following categories and pieces of evidence it wishes to introduce in its case-in-chief at trial: (1) communications among Ji, Xu, Zha Rong, and Geng Zhengjun (Dkt. # 241, at 26); (2) Xu's MSS appointment form (*id*., at 27); (3) Xu's calendar entries (*id*., at 27-28); (4) "recruitment communications" between Xu and other academics (*id*. at 28); (5) Xu's meeting with Aviation Industry Corporation of China ("AVIC") personnel (*id*., at 29); and (6) Xu's meeting with a professor from Nanjing University of Aeronautics and Astronautics ("NUAA"). (*Id*., at 30.) Defendant does not object to the admission of communications sent directly to or from him by or to any of the three MSS officers, Xu, Geng, and Zha, (Dkt. # 263, at 1-2), but he does object to admission of the other communications because "other than the extremely broad allegation that all of these actions implicate Chinese national interests and intelligence efforts," they have nothing to do with Defendant. (*Id*., at 2.)

In its reply, the government elected to withdraw its *Santiago* proffer of Xu's activities in contacting other possible sources, Xu's calendar entries, the photo of a "Registration Form for Personnel Working Overseas of the Ministry of State Security" recovered from Defendant's phone, and Xu's communications with academics at local Chinese universities and organizations, specifically AVIC and NUAA. For the statements in these categories, the government concedes that these proffers pose a closer call and proposes that the better approach is to see how the evidence and defenses develop at trial. The government wishes to reserve the right to move for the admission of these statements during the trial. Defendant objects to this procedure and urges a ruling on the *Santiago* proffer in its entirety before trial. The Court agrees with the defense that making provisional rulings pretrial is the most efficient procedure. *See United States v. Reyes,* No. 07 CR 126, 2008 WL 4686169, at *2 (N.D. Ill. May 8, 2008) (a *Santiago* proffer is the "preferred way for the government to make its preliminary 'coconspirator statements' factual showing"). Delaying rulings until trial can be disruptive of the flow of the trial and the efficient presentation of the facts in a manner that will allow jurors to readily understand and appreciate the importance of the evidence as it is presented. That said, however, *Santiago* proffer rulings, like any other pretrial evidentiary ruling, are subject to change depending on the evidence and issues that develop during the trial.

To establish a violation of 18 U.S.C. § 951, the government must prove that Defendant acted as an agent of a foreign government without first notifying the Attorney General. An "agent of a foreign government" is an individual who agrees to operate within the United States subject to the direction or control of a foreign government. 18 U.S.C. § 951(d). According to the government, the alleged conspiracy had as its goals:

- To "strictly execute the [MSS's] decisions" and to "strive for the cause of national security" (Gov't's Decl., Dkt. # 288, at 1);
- To assist in gathering such intelligence, including stealing commercial information (*id*., at 2);
- To gather any information that could be beneficial to the MSS, such as photos of American aircraft carriers, information about military bases, and classified information from government agencies (*id*.); and
- To recruit other individuals who could assist the MSS. (*id*., at 2-3.)

In sum, the alleged conspiracy, according to the government, was to further the mission of the MSS through the gathering of intelligence and recruitment. This description of the conspiracy is not particularly helpful, however, because taken together, the assertions are so broad as to allow almost anything said by any agent of the MSS in pursuit of any of its goals to be a statement in furtherance of the conspiracy. An announcement of willingness to further the goals of a broad organization is evidence of willingness or intent to enter into a conspiracy or agreement but does not itself constitute a conspiracy. The registration-form photo found in Defendant's phone, for example, is certainly an indication of Defendant's willingness to act as an agent of the MSS, but this expression of intent does not constitute an agreement to perform a specific act or series of acts. One portion of the government's broad conspiracy outline specifies that the conspiracy included "gathering science and technology intelligence," which provides a more precise and manageable description of the conspiracy. (Gov't's *Santiago* Proffer, Dkt. # 241, at 3.) According to the government, Defendant, in coordination with his coconspirators, agreed to be an agent of the PRC for the purpose of purchasing and obtaining background reports of naturalized United States' citizens born in Taiwan or China who worked at companies in the science and technology industry.[1] This allegation, in addition to the government's assertion that Defendant met and communicated with Xu, Geng and Zha, demonstrates that, when he agreed to join the conspiracy, Defendant knew that the mission of the MSS included, at the very least, the recruitment of certain targeted persons with access to secret technological and scientific information for the benefit of the PRC, which he agreed to undertake with Xu, Geng, and Zha. Defendant's willingness to cooperate and share his plans with the undercover employee implies that he believed his agreement also included cooperation with other MSS intelligence officers beyond Xu, Geng and Zha.

---

[1] As noted in the government's *Santiago* proffer, in addition to the background reports that Xu tasked Defendant to obtain, Defendant volunteered to act as the PRC's agent to gather information that would be made accessible to him because of his acceptance into the U.S. Army's Military Accessions Vital to the National Interest ("MAVNI") program and his United States citizenship. Defendant, on his own initiative, obtained and turned over to the undercover employee, who he believed was an MSS officer, certain documents, including his application to gain access to top secret clearance, and ones detailing the MAVNI program. Defendant explained that the Army did not check China-based references as part of the background investigation and only checked references based in the United States. Defendant offered to help assess and target other Chinese enlistees in the MAVNI program who might become agents and informed the undercover employee that he had access to all military bases with his military identification and volunteered, without prompting, to take pictures of aircraft carriers for the benefit of the MSS. Defendant further stated that he planned to look for jobs with secret clearance and access sensitive databases at the FBI and NASA and explained that he could travel to China secretly to meet with intelligence officers by flying first to Japan with his United States passport and then flying from Japan to China using his Chinese passport. In addition, Defendant explained to the undercover agent that he planned to work for General Electric ("GE") if he stayed in Chicago, or for NASA, if he did not. GE and NASA are active in aeronautics and astronautics engineering. Defendant stated that he wanted to work on cybersecurity at NASA because he would be responsible for database security, which would give him access to "all" the databases at NASA. Defendant was not specifically tasked to do any of these activities, and thus no larger conspiracy was formed merely by Defendant's self-created aspirations to assist the MSS.

As noted above, Defendant does not object to the admission of communications sent directly to or from him, (Def.'s Resp. *Santiago* Proffer, Dkt. # 263, at 1), but Defendant does object to evidence of Xu's activities in contacting possible sources of aeronautical and commercial intelligence who had been discovered by agents other than Defendant. Insufficient evidence exists to support the conclusion that Defendant's agreement was intended to extend to all intelligence activities other MSS agents might have been involved in at the time he was recruited but in which he was not a participant or otherwise closely associated. Accordingly, Defendant's objection to evidence of Xu's recruitment and communications with others targeted as potential agents is sustained.

The government proffers what it refers to as Xu's calendar, taken from Xu's phone, which comprises a variety of entries reflecting Xu's work at the MSS and with Defendant in particular. Calendar or diary entries that help to organize or otherwise execute a conspiracy are admissible because the keeping of such records generally aids the conspirator in his execution of the conspiracy. *See United States v. McPartlin,* 595 F.2d 1321, 1351 (7th Cir. 1979) ("[T]hese calendars would also be admissible under [Federal Rule of Evidence ("Rule")] 801(d)(2)(E) as statements 'by a coconspirator of a party during the course and in furtherance of the conspiracy.' Since these entries were made so that [an unindicted coconspirator] could rely on them in carrying out his scheme, they aided and were 'in furtherance of' the conspiracy."). While the government notes that many of the calendar entries are designated as "work" entries, Defendant points out that only one entry mentions him; accordingly, he seeks to limit admissions from this calendar to communications with or about Defendant. The government's theory appears to be that anything that has to do with Xu's work as an MSS agent is in furtherance of the conspiracy to aid the MSS in accomplishing its goals. As briefly discussed above, this description of the conspiracy casts too broad a net, and an example demonstrates why. The government offers a work entry for October 20, 2017, which states, "Morning, Personnel review, Division Director Zha passed probation." While this entry/statement serves to identify Zha as the director of Xu's division, the Court fails to see how it furthers the conspiracy; it is not a statement made to any of the coconspirators and does not bear directly on any aspect of the conspiracy. Another entry offered consists of a work entry for March 20, 2017, which states, "Training for Deputy Division Director position at Beijing. Attended with Jiang Xiaojian." The government's justification for admitting this entry is that it corroborates that Xu was a Deputy Division Director in the MSS. But this statement was not made to any of the other coconspirators and is not substantially related to the subject matter of the conspiracy that Defendant envisioned when he joined. These two entries from 2017 entries appear to be more documentation of Xu's career in the MSS than planning or execution of the conspiracy. Only calendar entries that mention Defendant, are otherwise about Defendant, or demonstrate the agreement with Defendant will be allowed as statements in furtherance of the conspiracy.

Communications between Defendant, Zha, and Geng during Defendant's recruitment are admissible, including Geng's narration of the famous Long-Tan-San-Jie intelligence operation. *See United States v. Cruz-Rea*, 626 F.3d 929, 937-38 (7th Cir. 2010) (statements by coconspirator that were made to possibly entice another individual into the conspiracy were admissible); *United States v. Haynes*, 582 F.3d 686, 705 (7th Cir. 2009), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516 (7th Cir. 2012). The text messages in August 2013 between Defendant and Geng, which discuss Defendant's plan to go to the United States and in which Geng offers money for expenses and asks for information about the school semester and tuition, are all admissible as statements of planning and executing the conspiracy. Communications regarding the December

2013 meetings among Defendant, Xu, Zha and Geng (including the communications between Xu and Geng alone) are admissible as planning and logistics discussions made in furtherance of the conspiracy. Communications between Defendant and Xu coordinating their January 10, 2014 meeting are admissible as having been made in furtherance of the conspiracy. QQ messages[2] between Defendant and Xu retrieved from Defendant's hard drive, which show Xu directing Defendant to obtain background, age, and place-of-employment information for eight individuals and explaining the precise method for doing so, also are admissible as statements made during and in furtherance of the conspiracy.

Found on Defendant's phone is a photo of an unsigned "Registration Form for Personnel Working Overseas of the Ministry of State Security." The form is marked "top secret" and contains instructions on how to speak to the FBI if approached at school; a section entitled "Knowledge and Experience of Training in Science and Technology Intelligence Work"; and a declaration of volunteering "to work for the [MSS], keep [its] secrets, abide [by its] disciplines, strictly execute [its] decisions . . . and . . . strive for the cause of national security all my life." The initial part of this document giving specific instructions as to how to speak to the FBI, if shown to be a statement by the MSS, is in furtherance of the conspiracy to have Defendant covertly act as an agent of the MSS. The broad statement that Defendant will "strive for the cause of national security all [his] life," while probative of the declarant's intent or willingness to enter into agreements, is not itself sufficiently specific to constitute a statement in furtherance of a conspiracy. However, the other declarations, including the "Knowledge and Experience Section" and declaration of volunteering "to work for the [MSS], keep [its] secrets, abide [by its] disciplines, [and] strictly execute [its] decisions," are admissible as statements in furtherance of the conspiracy. Moreover, the form itself is relevant because it is evidence of Defendant's intent to act as an agent of the MSS. Although the form is not signed, the government may offer sufficient circumstantial evidence that Defendant has adopted the statement; if so, the entire contents would be admissible as an admission. *See* Fed R. Evid. 801(d)(2).

Xu's communications with academics at local Chinese universities and organizations, specifically AVIC and NUAA, while likely undertaken for the purpose of becoming a more knowledgeable and better-prepared intelligence gatherer for the PRC, do not appear to be sufficiently related to his agreement with Defendant, and instead seem to be properly attributable to Xu's efforts to make himself a more efficient MSS agent. At this time, there is insufficient evidence to qualify the statements as statements in furtherance of the conspiracy with Defendant.

The government also proffers Xu's MSS Cadre Appointment form/card as a statement in furtherance of the conspiracy. As the Court understands it, the government contends that the form contains Xu's statements relating to his appointment, which facilitated the conspiracy by perpetuating it and thus making it possible for Xu, Geng, and Zha to continue working towards the goals of the MSS. This reasoning is problematic because it is unclear that the form constitutes a statement by Xu. The Court's version of the exhibit is a one-page photocopy of what appears to be the front and back of a card. The form's title--Cadre Appointment/Dismissal Evaluation Form--makes it unlikely that this document is Xu's statement; it is improbable that Xu would be appointing, dismissing, or evaluating himself. On its face, however, the document appears to be an extension of

---

[2] QQ messages are communications sent via an instant-messaging software service and web portal developed by a Chinese technology company.

authority by the MSS by which it appoints Xu to the post of Deputy Division Director of the Sixth Bureau of Jiangsu State Security Department.[3] If so, the document would not be hearsay at all, but a verbal act, words by which authority was vested in Xu to fulfill the functions of an officer of the MSS. *See Schindler v. Seiler*, 474 F.3d 1008, 1010-11 (7th Cir. 2007) ("Statements that constitute verbal acts (e.g., words of contract or slander) are not hearsay because they are not offered for their truth.") (citing Fed. R. Evid. 801(c) advisory committee note to 1972 proposed rules (noting that Rule 801(c) excludes from the definition of hearsay "verbal acts" and "verbal parts of an act" in which the "statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights")). The relevance of the document cannot be doubted. The indictment accuses Defendant of conspiring to act as an agent of the PRC, so proving that one of Defendant's coconspirators was an employee and/or agent of the PRC would therefore be required. It is not necessary, as the government points out, to establish with certainty the author of the document so long as the government produces sufficient evidence, direct or circumstantial, that the document is what it purports to be–an extension or confirmation of Xu's authority to carry out intelligence operations on behalf of the PRC. Xu's activities throughout the conspiracy, e.g., providing Defendant with money, hotel rooms, assignments, and explicit directions, tend to support the conclusion that he is an authorized agent of the MSS, and as such, of the PRC, but the determination as to the sufficiency of the authentication foundation must be made at trial.

For the reasons given above, the government's *Santiago* proffer is granted in part and denied in part as follows: communications among Defendant, Xu, Zha, and Geng are admissible as statements in furtherance of the conspiracy; the registration-form photo found on Defendant's phone, if properly authenticated, is admissible in part as a statement in furtherance of the conspiracy and may be admissible in its entirety as an admission by a party opponent under Rule 801(d)(2); evidence of Xu's recruitment and communications with others targeted as potential agents is not admissible as a statement in furtherance of the conspiracy; only Xu's calendar entries that mention Defendant, or are otherwise about Defendant or the agreement with him, are admissible as statements in furtherance of the conspiracy; statements of Xu's meeting with AVIC personnel and an NUAA professor are not admissible as statements in furtherance of the conspiracy; and Xu's MSS Cadre Appointment form/card is not admissible as a statement in furtherance of the conspiracy, but may be admissible as a verbal act under Rule 801(c).

**Date**: July 19, 2022

**Ronald A. Guzmán**
**United States District Judge**

---

[3] The document contains a history of Xu's employment with the MSS and educational and biographical information.