IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **United States of America,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 18 CR 611** |
| v. | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **Ji Chaoqun,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

At the beginning of the second week of trial, the government sought to designate additional trial exhibits (314, 314T, 315, 315T, 316, 316T, 317, and 318), consisting of WeChat messages in July and August 2013 between Defendant and a person named Beatrice. According to defense counsel, Beatrice is Defendant's former girlfriend. In the text messages, Defendant describes to Beatrice his discussion with an organization offering him employment. Defendant states that he was given three years to think about an offer, with which he was "not very satisfied." (Ex. 314T.) Some of the more damaging statements to Defendant's defense, which relies in part on the assertion that he did not know he was being recruited by the PRC's Ministry of State Security ("MSS"), are these:

- "The 8th Bureau (Counterintelligence Investigation Bureau) is in charge of surveillance, investigation and arrest of foreign spies, etc." (Ex. 314T);
- "I thought I was asked to go to Nanjing – to work" (Ex. 315T);
- "He indicated that they wanted to train me to do things on their behalf…because they are not able to travel out of the country." (Ex. 315T).

The government wants to introduce these messages because they tend to show that Defendant was aware that he was being offered a position with the MSS and that Chinese intelligence wanted him to travel out of the country on its behalf. These facts support the elements of the offense in Count Two of the superseding indictment.

The original text messages are in Mandarin, and it is undisputed that the government turned them over to Defendant sometime in 2019. According to the government, it did not initially translate all messages before trial because of the large number of messages and the challenges associated with searching text in Mandarin. Defendant does not challenge the authenticity of the text messages; they are, after all, messages that he sent and were found on his iPhone. Defendant's argument is that he would not have presented to the jury the theory of defense that he did not know

he was being recruited by the MSS and therefore could not have agreed to conspire with it (Count One) or act as its agent (Count Two) had he known the government was intending to introduce these messages. In particular, defense counsel points to certain representations he made during opening statements and questions he asked of the government's expert witness, James Olson, supporting defense counsel's argument to the jury that Defendant did not know, at least as of August 2013, that he was communicating with MSS agents. According to defense counsel, he now "looks foolish" to the jury and "would not have spent all that time crossing Olson on that" if he had understood that the government would be introducing newly designated exhibits contradicting his contentions and questions. (9/20/22 Tr. at 1321.) Defense counsel asserts that "it's just not fair to [allow the government to supplement its trial exhibits] at this point of the game," especially after defense counsel had received confirmation from the government prior to trial that its exhibit designations were complete. (*Id*. at 1321-22.)

Federal Rule of Criminal Procedure ("Rule") 16 requires the government to "permit the defendant to inspect and to copy or photograph . . . papers, documents, data, . . . or copies or portions of any of these items" if, among other things, the government "intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E)(ii). The government made the appropriate disclosures, so a violation of Rule 16 is not at issue. Instead, the Court is faced with ascertaining whether the government's failure to abide by the Court's scheduling order, *see* Dkt. # 201 (government agreed to identify its trial exhibits 60 days before trial), and what Defendant contends were the government's misstatements to defense counsel several weeks before trial that its trial-exhibit designations were complete, require exclusion of those messages. Another court that addressed whether a late trial-exhibit designation by the government required exclusion of the exhibits considered the following factors:

> (1) the reasons for the government's delay in producing the materials, including whether it acted intentionally or in bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether the prejudice to the defendant can be cured with a less severe course of action, such as granting a continuance or a recess.

*United States v. Mann*, No. 3:16-CR-20, 2018 WL 9651889, at *2 (E.D. Tenn. Jan. 9, 2018) (citation omitted). The Court finds these factors helpful in guiding its analysis of the same issue.[1]

Defendant does not argue, and the Court cannot discern, any bad faith on the government's part. As with a previous discovery issue earlier this year, *see* 5/18/22 Order (Dkt. # 279), the late designation appears attributable, at least in part, to the significant volume of information at play in this case and the challenges associated with translating and searching documents written in a foreign language. Could the government have been more diligent? Absolutely. Was the late designation in bad faith? It does not appear so.

---

[1] While Defendant does not appear to have expressly moved to exclude the documents, the Court construes Defendant's objections as a motion to exclude.

Regarding prejudice, while the text messages are plainly harmful to Defendant's case, is the late designation sufficiently prejudicial to Defendant to require exclusion? The Court concludes no. As the *Mann* court stated:

> The Court recognizes the high degree of prejudice Defendant may suffer if the Government is allowed to introduce these two [late-designated] email chains, given Defendant's defense to date. The Court does not believe, however, this is the type of prejudice to support denial of the Government's motion. While the Court credits Defendant's assertion that she was not able to review all of the discovery in the case, Defendant has not claimed she never saw these particular emails. Defendant also states she designed her defense around the Government's case-in-chief designations. This is a fine course of action generally, but not necessarily when a party is aware of otherwise admissible evidence that runs directly counter to the line of defense the Defendant is choosing.

*Mann,* 2018 WL 9651889, at *3. Here, defense counsel states that he had not previously seen these text messages prior to the government's presenting them to him this week. But Beatrice is not an obscure witness about whom Defendant had no knowledge. She is a former girlfriend with whom Defendant must have known he had discussed an offer of employment, the "8th Bureau," and going to Nanjing. These would be obviously relevant, important conversations because they contained descriptions of his relationship to the Chinese intelligence apparatus – the central factual issue in this case. Under the circumstances, any fault for defense counsel's failure to take into account these conversations in fashioning his theory of the case lies as much with Defendant as it does with the government. Defendant ought to have informed his counsel of this significant evidence.

Even assuming arguendo that any prejudice exists, defense counsel has had several days to attempt to track Beatrice down, and the government indicates that, with the help of the FBI, it has attempted to locate Beatrice in China so that defense counsel may interview her and bring out any circumstances surrounding the text messages that might be helpful to the defense. This time frame and these efforts are acceptable means of allowing Defendant to cure any prejudice that might exist due to the late designation.

Additionally, it is important to note that any implication that Defendant has been denied a fair trial is not well taken given the proper Rule 16 disclosures by the government and Defendant's knowledge of the importance of his communications with Beatrice. The government timely disclosed this evidence in the same form as the government itself possessed it. Defendant's being fluent in Mandarin, he was available to translate his own conversations and thus, if anything, the information was more readily available to defense counsel than it was to the government. Finally, the government has the right to react to a defense theory that materializes in the course of a trial. Even if the government had possessed the translated versions of the conversations (which it did not) and failed to list them as exhibits, if during the trial and the presentation of an unanticipated specific theory of defense these conversations had taken on more importance, the government would be entitled to add the exhibits to its trial list as long as there had been a proper Rule 16 disclosure prior to trial.

      For these reasons, Defendant's objections to Exhibits 314, 314T, 315, 315T, 316, 316T, 317, and 318 are overruled and Defendant's motion, as construed, to exclude the exhibits is denied.

**Date**: September 21, 2022

                                                           */s/ Ronald A. Guzmán*
                                                 **Ronald A. Guzmán**
                                                 **United States District Judge**