**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 18 CR 611** |
| **v.** | ) | |
| | ) | **Judge Ronald A. Guzmán** |
| **Ji Chaoqun,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendant's motions for judgment of acquittal [377] and for a new trial [378] are denied.

## STATEMENT

On May 19, 2022, the grand jury returned a five-count superseding indictment charging Defendant with one count of engaging in a conspiracy to violate the laws of the United States in violation of 18 U.S.C. § 371 (Count One), one count of failing to register as a foreign agent in violation of 18 U.S.C. § 951(a) (Count Two), two counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts Three and Four), and one count of making a false statement in violation of 18 U.S.C. § 1001(a)(2) (Count Five).  After a September 2022 jury trial, the jury returned a verdict of not guilty as to the wire-fraud counts (Counts Three and Four) and a guilty verdict as to Counts One, Two, and Five.  In ruling on Defendant's post-trial motions, the Court assumes knowledge of the facts of the case, the evidence presented during trial, and the Court's prior rulings.  The Court addresses the issues in the order presented by the parties.

**Motion for Judgment of Acquittal**

Under Federal Rule of Criminal Procedure 29, where "the evidence presented at trial is insufficient to support a conviction, a district court must enter judgment of acquittal either after the government has closed its evidence or after a jury has rendered a verdict or been discharged." *United States v. Moreno*, 922 F.3d 787, 793 (7th Cir. 2019) (internal quotation marks omitted). In reviewing a motion for judgment of acquittal, the district court must "view the evidence in the light most favorable to the government and draw all reasonable inferences in the government's favor." *Id.* (internal quotation marks omitted).  Furthermore, "any challenge to the sufficiency of the evidence comes with a heavy, indeed, nearly insurmountable burden" and courts will "reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

A.    Count Two

As to Count Two of the superseding indictment, Defendant was convicted of violating 18 U.S.C. § 951, which makes it a crime to knowingly act as an agent of a foreign government without prior notification to the Attorney General.  The government's evidence in support of this count, i.e., Defendant's "actions," were (1) the purchase and transfer of background reports; (2) a January 20, 2014 email conversation with Defendant's friend, Yu Wenzhi, and (3) Defendant's application to the FBI Honors Internship Program.

Background Reports.  Defendant contends that the purchase and transfer of the background reports falls under the legal commercial transaction exception in § 951 because the purchase of the reports was "100% legal," Xu Yanjun's request for the reports was characterized as a "favor" so Defendant's purchase and transmission of the reports was not undertaken in his capacity as an unregistered foreign agent, and the timing of Xu's request indicates that it was "a test in order to bring [Defendant] into the fold, not the qualifying action of an already committed participant." (Def.'s Mot. Acquittal, Dkt. # 377, at 5.)  The Court has already rejected Defendant's attempted reliance on the legal commercial transaction exception (Dkt. # 368) and can discern no basis on which to revisit its ruling.

The Court also rejects Defendant's assertion that Xu's request for background reports was only a "favor" and thus falls outside the parameters of the statute.  While Xu stated he was asking Defendant for a favor, the jury also heard that Xu directed Defendant to "query information" about certain people and send the reports to Xu's QQ account in a compressed, password-protected format.  Xu further directed Defendant to bill him for the costs.  Viewing the evidence in a light most favorable to the government, the jury's finding that Defendant's purchase and transmission of the reports fell within § 951 is supported by the evidence, particularly in light of James Olson's expert testimony that Xu's request for the background reports was an order that Defendant was obligated to satisfy.

Nor is the Court convinced by Defendant's argument that the purchase and sale of the reports was just a "test" that fell "prior to" the three-year "window" of time in which Defendant was given to consider whether to join the MSS.  According to Defendant, he had until July 2016 to indicate whether he was going to join the MSS and because the purchase and sale of the background reports occurred before that date, the conduct could not have been considered as having been undertaken at the direction of the MSS.  Even assuming Defendant's text messages with his then-girlfriend support a finding that he had three years from July 2013 to indicate whether he was joining the MSS, the jury was entitled to find that Defendant made the decision to do so when he complied with Xu's directive to purchase the background reports in August 2015, particularly given the government's evidence that Defendant was given the MSS registration form and $6,000.00 cash in January 2014.  Furthermore, Defendant need not have made a decision to "join" the MSS as a permanent operative, as the registration form required, in order to agree to commit a specific act or acts under the direction of the MSS in violation of § 951.

Yu Wenzhi Conversation, FBI Honors Internship Application, and Joining the Army. Defendant asserts that because the MSS registration form required Defendant to keep secret the PRC's intelligence work, Defendant could not have been acting in his capacity as an unregistered

foreign agent by disclosing his involvement with the MSS to Yu Wenzhi, particularly in a "bragging, joking, and teasing manner." (Def.'s Mot. J. Acquittal, Dkt. # 377, at 5). Defendant further argues that there is no evidence that the PRC government instructed, demanded, or requested Defendant to make the revelations to Yu Wenzhi, apply to the FBI Honors Internship Program, or join the Army.

The jury heard evidence that Defendant sent a photo of the MSS registration form to Yu Wenzhi and asked him to identify other students in aircraft engineering or design who might be of assistance to the MSS and PRC. Joseph McReynolds testified on behalf of the government that aviation and aerospace technology was a "major focus" of China's industrial espionage. (Tr. at 97.) In the text messages the jury saw between Defendant and his then-girlfriend, Defendant indicated that he was asked to write an article of his "understanding of the Science and Technology intelligence work" and his "takeaway from the training." Defendant's assertion that certain of Defendant's particular acts were not expressly directed by the MSS is unpersuasive. *See United States v. Rafiekian*, 991 F.3d 529, 540 (4th Cir. 2021) ("The line between an 'agent' who works under a foreign government's 'control' and one who, instead, agrees to operate subject to a more hands-off form of 'direction'—as an agent-independent contractor could—might be a hazy one. Still, we find no reason to believe that Congress sought to exclude the latter variety of agency from § 951's reach."). The jury was entitled to conclude that by soliciting Yu Wenzhi's help in recruiting potential future agents or sources of information, Defendant was acting at the direction of the MSS. Further, while Defendant may have violated his oath of secrecy by forwarding the photograph of the registration form, as James Olson testified, simply because an agent does something "stupid" does not make him less of an agent. (Tr. at 650); *see United States v. Angwang*, No. 20-CR-442(EK), 2022 WL 3223187, at *2 (E.D.N.Y. Aug. 8, 2022) ("Section 951(a) does not require that an 'agent' be effective or successful, or that he act out of any particular motive--only that he be subject to a foreign government's 'direction or control.'").

The Court reaches the same conclusion with respect to Defendant's application to the FBI Honors Internship Program. While the government did not present evidence that Defendant had been specifically directed to fill out the application, the jury heard Defendant tell the FBI undercover employee that Defendant could "get FBI stuff" if he was "able to apply for its open positions" and that he wanted to "get in" the FBI to be able to access its database. (Tr. at 877.) The government presented sufficient evidence for the jury to conclude that Defendant's application to the Honors Internship Program was done at the direction of the MSS. *See United States v. Latchin*, 554 F.3d 709, 715 (7th Cir. 2009) ("There may not have been direct evidence of acts on behalf of Iraq, but the circumstantial evidence was strong. In addition to receiving sums of money from IIS personnel at international locations, Latchin placed 39 phone calls to IIS agent "Khalil"— second in command of the sleeper program—in Baghdad between June 2001 and May 2004. It's hard to believe that Latchin was just calling to chat, or that this was all done in connection with his IIS "pension plan." Whether Latchin actually spied on Iraqi Christians in the United States may be another matter altogether. But the jury did not have to find that he did to convict him under § 951.").[1]

---

[1] Similarly, the jury heard evidence that Defendant had numerous communications with and received sums of cash from members of the MSS and joined the Army in order to aid the MSS.

As for joining the Army, the government presented evidence that Defendant told the undercover FBI employee that Defendant had informed the MSS that he had joined the Army. (Tr. at 712) (in speaking to the undercover employee, Defendant states, "I need to attend to [Army] training in a minute. Nanjing people should know that, too.") Based on the evidence elicited at trial, the reference to "Nanjing people" is a reference to Defendant's MSS contacts. Defendant further told the undercover employee that by doing so, he could obtain citizenship faster, would be allowed admission onto Army bases, and could procure security clearances and "apply for all kinds of jobs, such as NASA, etc." (*Id.* at 879.) It is not the Court's province to reconsider the jury's reasonable conclusion from the evidence evinced that Defendant was acting as an agent of the MSS in joining the Army.

The motion for judgment of acquittal as to Count Two is denied.

B.     Count One

Count One of the superseding indictment charged Defendant with conspiracy to violate 18 U.S.C. § 951. Defendant contends that he "did nothing at the direction and control of any of the [MSS] officers." (Def.'s Motion J. Acquittal, Dkt. # 377, at 7.) According to Defendant, the government's evidence showed that "aside from sporadic holiday greetings, [Defendant] lost contact with Mr. Geng and Mr. Zha nearly entirely"; "by independently joining the MAVNI program, given its requirement of limited significant absences from the United States, [Defendant] positioned himself in a situation where he was unable to have face-to-face contact"; and he never told Xu about the Yu Wenzhi conversation or the FBI application and "even lied to [Xu] about being employed [with] Motorola." (*Id.*)

The evidence presented at trial, including the conduct discussed in the previous sections of this order, contradicts Defendant's contention that he committed no acts at the direction of the MSS. Moreover, as the government notes, to be convicted of conspiracy, Defendant did not have to take any acts at the direction of the MSS, he only had to agree to do so. Defendant's registration as an MSS agent, including his oath of lifelong loyalty to the MSS, is sufficient evidence from which the jury could conclude that Defendant agreed to knowingly act as an agent of the PRC. In addition, the relevant overt acts could have been taken by any member of the conspiracy (i.e., Xu's messages to Defendant to purchase the background reports), not just Defendant.

The motion for judgment of acquittal as to Count One is denied.

C.     Count Five

Count Five of the superseding indictment charged Defendant with making a false statement to the federal government by lying on his SF-86 form to the U.S. Army regarding his contacts with a foreign government; the jury convicted him of this count. Defendant asserts that "it is not even clear if [he] filled out the SF-86, and the government's own evidence suggests the opposite conclusion." (*Id.* at 8.) The government presented testimony from Sergeant Andrew Crandall, who conducted Defendant's MAVNI interview, that Crandall understood from Defendant's responses to Crandall's questions that Defendant filled out the MAVNI forms, and that they were only reviewed (not filled out) by Defendant's recruiter. (Tr. at 1488-89.) In addition, Kendra

Martin, who reviewed Defendant's SF-86 for the U.S. Army, testified that she could usually tell if a recruiter filled out the program form for a recruit and that "there was no indication . . . from [Defendant]—that he did not fill out this form." (*Id*. at 1658.) In any event, Defendant certified that his statements, even if written by someone else, were true, complete, and correct (which, of course, they were not) and that a willful false statement could be punished by fine or imprisonment.

Defendant's motion for judgment of acquittal on Count Five is denied.

**Motion for a New Trial**

Under Rule 33, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "The rule is 'reserved for only the most extreme cases,'" and the Court "'approach[es] such motions with great caution and [is] wary of second-guessing the determinations of both judge and jury.'" *United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (citations omitted).

A.      Denial of Motion to Dismiss Count One on Multiplicity Grounds

This issue was initially raised in one of Defendant's pretrial motions, which the Court denied. "Multiplicity is the charging of a single offense in separate counts of an indictment." *United States v. Starks*, 472 F.3d 466, 468-69 (7th Cir. 2006). "Multiplicity in an indictment exposes a defendant to the threat of receiving multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment." *Id*. at 469. According to Defendant, an agreement is already incorporated into the elements of the § 951 charge because the definition of "agent of a foreign government" is one who agrees to act at the direction or control of the foreign government. Thus, Defendant asserts, because a conspiracy is "in essence a criminal agreement," (Def.'s Mot. J. Acquittal, Dkt. # 378, at 3), the elements of the substantive § 951 charge and the conspiracy charge merge and become multiplicitous. Defendant further asserts that the "problem is exacerbated [here] given that the only facts alleged in the 'speaking' indictment spoke directly to the purchase and transfer of the background reports," (*id*.), and no other acts, yet the government argued additional acts at trial. According to Defendant, "[h]ad the jury been told that it was required to make additional factual findings to cure any [multiplicity] issue—such as facts alleged as part of the conspiracy that would have made the conspiracy charged and found to be proven in [C]ount [O]ne something other than simply the purchase and transfer of the background reports . . . the problem could have been potentially remedied or at least mitigated." *Id*. Defendant asks the Court to vacate the judgment of conviction as to Counts One and Two.

"The traditional test of multiplicity determines whether each count requires proof of a fact which the other does not." *Starks*, 472 F.3d at 469. "If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *Id*. Here, as the government notes, § 951 required that Defendant himself "act" while the conspiracy count required only an action by a co-conspirator.[2] *See United States v.*

---

[2]  Moreover, the Court notes that "'[a]iding and abetting liability and *Pinkerton* liability—under which defendants are held responsible for foreseeable acts taken in furtherance of the conspiracy by their co-conspirators—are always alternate theories under which a defendant may be convicted

*Duran*, 407 F.3d 828, 835 (7th Cir. 2005) ("'[W]here there is one agreement, a defendant who agrees to conspire will be held liable for those acts of co-conspirators that were in furtherance of the conspiracy . . . . even if the acts in furtherance of the conspiracy were committed before the defendant/co-conspirator joined the conspiracy; even if the defendant/co-conspirator did not know the person performing the acts that furthered the conspiracy, and . . . even if the defendant/co-conspirator did not know specifically that the acts were going to be performed.'") (citations omitted). In light of the law of conspiracy, Defendant's contention that under the facts of this case, the conspiracy alleged "was co-extensive in all material respects with the [§ 951] count" and must be dismissed as multiplicitous is without merit. In addition, Defendant's acts supporting the § 951 conviction were done by him at the direction of Xu, while Count Two addressed Defendant's participation in a conspiracy not just with Xu but also other members of the MSS, including Zha and Geng. Accordingly, Defendant's motion for a new trial on multiplicity grounds is denied. *See United States v. Dumeisi*, 424 F.3d 566 (7th Cir. 2006) (affirming a conviction for a substantive violation of § 951 and a § 371 conspiracy to violate § 951).

B.       Denial of Defendant's Motion to Dismiss Count Two

On June 4, 2021, the Court denied Defendant's motion to dismiss Count Two, the § 951 charge, in which Defendant argued that the indictment should be dismissed because of defects in the grand-jury presentation, the indictment's failure to allege venue or a qualifying act, and the indictment's failure to exclude legal commercial transactions. The Court denied the motion. Defendant asserts that the motion was improperly denied and asks the Court to vacate his conviction on Count Two but presents no new reasoning. The Court denies the motion for the reasons stated in its order of June 4, 2021. (Dkt. # 141.)

C.       Granting of the Government's Motion to Bar the Legal Commercial Transaction Defense

Defendant asserts that the Court's granting of the government's motion to bar the legal commercial transaction defense to § 951 deprived him of his ability to present a defense, assumed until the verdict was returned that he was a spy, and was based on an incorrect reading of the statute. The Court explained its reasons for granting the government's motion to bar in its September 22, 2022 order, (Dkt. # 368), and Defendant identifies no basis on which the Court should revisit its decision. This request for relief is denied.

D.       Denial of Defendant's Motion Regarding Purported Constructive Amendment of the Superseding Indictment

Defendant contends that in proving the § 951 charge, it was improper for the government to rely on acts other than the one identified in the original and superseding indictments (i.e., the purchase and transfer of commercial background reports). Defendant takes issue with the government stating for the first time less than one month before trial that it also would be relying on Defendant's January 20, 2014 email communication with Yu Wenzhi and Defendant's 2015

---

of a charged offense at trial, and neither must be alleged in the indictment.'" *United States v. Agee*, No. 119CR00103TWPDLP, 2019 WL 6213166, at *8 (S.D. Ind. Nov. 21, 2019) (citation omitted).

FBI Honors Internship application as "acts" supporting the § 951 charge. Then, at trial, the government also included Defendant's purchasing the fake Findream job and joining the Army.[3]

"'A constructive amendment of an indictment occurs when the evidence at trial goes beyond the parameters of the indictment in that it establishes offenses different from or in addition to those charged by the grand jury.'" *United States v. Shields*, 789 F.3d 733, 742 (7th Cir. 2015) (citation omitted). "'[N]ot all variations in proof that contradict or supplement verbiage in the indictment rise to the level of constructive amendments.'" *United States v. Phillips*, 745 F.3d 829, 832 (7th Cir. 2014) (citation omitted). "Instead, the crime charged in the indictment must be 'materially different or substantially altered at trial, [so that] it is impossible to know whether the grand jury would have indicted for the crime actually proved.'" *Id*. (citation omitted and alteration in *Phillips*). As an initial matter, the charging language used in Count Two broadly refers to unspecified acts between August 28, 2013 and September 25, 2018, a period of over five years. Moreover, that evidence of additional acts elicited at trial was not presented to the grand jury does not alter the Court's conclusion that no constructive amendment occurred because not every fact in support of the government's case must be presented to the grand jury. *See United States v. Walker*, 207 F. App'x 673, 676 (7th Cir. 2006) ("[Defendant] points to the fact that the wiretap evidence was never presented to the grand jury. This, of course, is of no consequence, as the burden of proof at trial frequently requires the presentation of more evidence than was presented to a grand jury. The fact that testimony at trial was not presented to the grand jury does not make an otherwise valid indictment constitutionally infirm."). Moreover, Count Two's incorporation of Count One's language does not necessarily restrict the government to presenting evidence of the acts discussed in Count One. *See United States v. Tello*, 687 F.3d 785, 795 (7th Cir. 2012) (rejecting constructive amendment and noting that while "the opening paragraph of Count Two incorporated by reference the allegations of Count One, the substantive section 1962(c) charge, . . . that boilerplate did not by itself alter the nature of Count Two's conspiracy charge to demand proof that [the defendant] committed any of the specific predicate acts set forth in Count One.")

Defendant refers in a footnote to an "additional layer of concern" because an FBI agent testified before the grand jury that Defendant was not expressly directed by the MSS to join the U.S. Army. (Def.'s Mot. J. Acquittal, Dkt. # 378, at 6 n.3.)[4] In his reply, Defendant clarifies that the "'added layer of concern' the grand jury testimony presents is that it demonstrates the government's knowledge and awareness of the fact that joining the Army could not legally be used

---

[3] It is worth noting that all of the government's "acts" evidence at trial was included in the government's pretrial disclosures to Defendant.

[4] Defendant points to the following exchange with the FBI agent before the grand jury:

> Q: In addition to what you testified about previously, is it true that during this meeting that Ji explained that it was, in fact, his idea to join the Army via the MAVNI program because it was the fastest way to obtain citizenship in the United States?
> A: Yes.
> Q: So he was not directed to do that by his intelligence officer handlers, is that right?
> A: Correct.

(Def.'s Reply, Dkt. # 382, at 4.)

for purposes of [the § 951] count . . . , yet it chose to argue that point to the jury and attempt to persuade it to use it as a qualifying 'act,' even though it was well aware it could not properly do so." (Def.'s Reply, Dkt. # 382, at 4.)  For the reasons stated above in the discussion on Defendant's motion for judgment of acquittal on Count Two, the Court disagrees with Defendant's contention that the agent's grand-jury testimony precluded the government from arguing to the jury that Defendant "acted" at the behest of the MSS for purposes of § 951 when he joined the MAVNI program.  To the extent Defendant is arguing an error before the grand jury, "any alleged federal constitutional error during the charging and grand jury process would be harmless because [Defendant] was found guilty beyond a reasonable doubt at trial."  *Watkins v. Garnett*, No. 19 C 2878, 2022 WL 4465712, at *3 (N.D. Ill. Sept. 26, 2022).

Defendant's assertion of error based on a purported constructive amendment is denied.

E.     Denial of Evidence and Testimony Concerning the Nature of the PRC and the MSS

It appears that Defendant may be asserting error based on the Court's preclusion of a defense that he was manipulated and deceived by the PRC.  (Def.'s Mot. J. Acquittal, Dkt. # 378, at 7-8) ("The defense . . . was that [Defendant] would not have known and appreciated the full nature of the situation he was becoming involved in—at least not until sometime during his second trip back to China.  And going forward from this point, when the "big reveal" occurred, over the remaining four or so years of the conspiracy, he did not do anything for the MSS. . . . [and] all but lost contact with the intelligence officers outside of sporadic holiday greetings, and transfer of the commercial background reports.").  Defendant then states that "[p]roving how the PRC functions and operates in this context was therefore critical to the defense."  *Id*. at 8.

The government interprets Defendant's motion to be asserting error with respect to the Court's excluding the testimony of Defendant's proposed expert, Donald Clarke, who would have testified, among other things, that "PRC black-letter law expressly requires Chinese citizens to cooperate and assist in national intelligence work when asked."  (Gov't's Resp. Def.'s Mot. J. Acquittal, Dkt. # 381, at 6) (citing Def.'s Mot. J. Acquittal, Dkt. # 378, at 8).  The Court fully addressed Defendant's arguments as to Professor Clarke's proposed testimony in its August 3, 2022 order, (Dkt. # 311), and Defendant offers no basis to revisit that ruling.  This basis for relief is denied.

Defendant also argues that he was improperly precluded from asking the government's expert, Joseph McReynolds, "specific questions regarding the PRC's formal programs to repatriate overseas citizens through the use of deception, coercion, and the threat of force, violence, and the other sanctions."  (Def.'s Mot. J. Acquittal, Dkt. # 378, at 8.)  Defendant points to no evidence regarding repatriation or a threat of repatriation in this case; the Court finds no error in excluding questions on an irrelevant topic.  Defendant also asserts that he should have been permitted to ask Special Agent Bradley Hull and James Olson about MSS members' "efforts to further their various agendas, often through subterfuge, deception, manipulation and the like."  (*Id*.)  "A defendant is entitled to a new trial only if there is a reasonable possibility that the trial error had a prejudicial effect on the jury's verdict."  *United States v. Flournoy*, 842 F.3d 524, 530 (7th Cir. 2016).  Even assuming it was error to exclude Professor Clarke's testimony or preclude Defendant from questioning witnesses regarding the MSS's tactics regarding deception and subterfuge, the Court

finds it did not have a prejudicial effect on the jury's verdict. The evidence at trial, including Defendant's boastful January 20, 2014 email conversation with his friend, Yu Wenzhi, and his 2013 WeChat messages to his then-girlfriend, Beatrice (discussed below), clearly demonstrated that Defendant understood at some point in time that Xu, Geng, and Zha were members of the MSS, and he willingly carried out tasks on its behalf, including purchasing background reports and recruiting potential sources of scientific and technical information.

F.     Denial of Defendant's Motion to Exclude Late-Discovered Exhibits

In a written ruling issued September 21, 2022 (Dkt. # 365), the Court overruled Defendant's objection to the government's introducing late-disclosed WeChat messages, purportedly between Defendant and his then-girlfriend, Beatrice, from July and August 2013. (Gov't's Exs. 314, 314T, 315, 315T, 316, 316T, 317, and 318). Defendant asserts that "for all the reasons previously argued and discussed, and as has been further argued," the Court erred in allowing the government to admit the messages because the ruling constituted an abuse of discretion and violated Defendant's right to a fair trial, and the late disclosure violated Federal Rule of Criminal Procedure 16.

For all the reasons contained in the Court's September 21, 2022 order, Defendant's assertion of error is rejected. The Court concluded there was no Rule 16 violation because the government made the appropriate disclosures to Defendant long before the WeChat messages were added to the government's list of trial exhibits. The defense knew since sometime in 2019 of the existence of the WeChat messages, which directly undermined any argument that Defendant was tricked into or was otherwise unaware of the fact that he was being solicited by the MSS. Defendant nevertheless chose to include this assertion in his defense. That the government would respond with contrary evidence could not have been a surprise. Even assuming the late amendment to the government's trial exhibits somehow undermined Defendant's initial argument to the jury that Defendant did not know who the MSS officers were when Defendant was originally courted by the MSS, Defendant had access to the same WeChat messages.[5] As the Court noted, because Defendant speaks Mandarin, "the information was more readily available to defense counsel than it was to the government." (9/21/22 Order, Dkt. # 365, at 3).

In any event, the evidence clearly showed that at some point (at least as early as July 2013), Defendant knew he was dealing with MSS members. Defendant does not specifically identify how admission of the exhibits denied him his due process rights or his right to a fair trial or undermined the interests of justice. Defendant's motion for a new trial based on the Court's overruling his objection to the admission of the WeChat messages is therefore denied. *See United States v. Isaacs*, 593 F.3d 517, 527 (7th Cir. 2010) (district court did not abuse its discretion by admitting government's summary exhibits when the government turned over a new set of CDs containing underlying data three days before trial because "the government produced [an] earlier set of CDs containing the underlying data used to create the summary exhibits to [the defendant] in 2006," so the defendant "had at least fifteen months to review the data and compare it to the summary exhibits to determine if there were any inaccuracies").

---

[5] Indeed, the government's initial failure to designate the emails as exhibits stemmed in part from its difficulty in obtaining translations of voluminous materials from Mandarin to English.

For the reasons provided, Defendant's motions for judgment of acquittal and for a new trial are denied.

**Date:** January 5, 2023

Ronald A. Guzmán
**Ronald A. Guzmán**
**United States District Judge**